**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LIONRA TECHNOLOGIES LIMITED,<br><br>v.<br><br>FORTINET, INC. | CASE NO. 2:22-cv-00322-JRG-RSP<br>(Lead Case) |
| LIONRA TECHNOLOGIES LIMITED<br><br>v.<br><br>CISCO SYSTEMS, INC. | CASE NO. 2:22-cv-00305-JRG-RSP<br>(Member Case) |
| LIONRA TECHNOLOGIES LIMITED<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE<br>COMPANY, et al | CASE NO. 2:22-cv-00319-JRG-RSP<br>(Member Case) |
| LIONRA TECHNOLOGIES LIMITED<br><br>v.<br><br>PALO ALTO NETWORKS, INC. | CASE NO. 2:22-cv-00334-JRG-RSP<br>(Member Case) |

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM OF U.S. PATENT NO. 7,921,323**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................2

    A.    The '323 Patent ........................................................................................2

    B.    The Accused Products.................................................................................6

    C.    Lionra's Allegations...................................................................................7

III.    LEGAL STANDARD.........................................................................................7

IV.    ARGUMENT ......................................................................................................9

V.    CONCLUSION .................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Arsus, LLC v. Tesla Motors, Inc.*,
  No. 20-cv-00313, 2020 WL 5552868 (N.D. Cal. Aug. 14, 2020) ...........................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................8

*Bennett v. Schmidt*,
  153 F.3d 519 (7th. Cir. 1998) ..................................................................................................8

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ...........................................................................1, 2, 8, 14, 15

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ...................................................................................................8

*Demodulation, Inc. v. United States*,
  126 Fed. Cl. 499 (2016) ...........................................................................................................7

*In re Electronic Data Systems Corp.*,
  305 F. Supp. 2d 658 (E.D. Tex. 2004)....................................................................................9

*Integrated Technological Sys., Inc. v. First Internet Bank of Indiana*,
  No. 2:16-cv-417, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017) ..............................................4

*McKeown v. City of Chicago*,
  20 F. App'x 856 (Fed. Cir. 2001)............................................................................................8

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  No. 2:20-cv-04556, 2020 WL 5640233 (C.D. Cal. Sept. 3, 2020).........................................9

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
  No. 4:19-cv-876, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020).......................................1, 8

*Superior Indus., L.L.C. v. Thor Glob. Enterprises Ltd.*,
  No. 10-2524, 2011 WL 601217 (D. Minn. Feb. 11, 2011).......................................................7

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002)...................................................................................................................9

*Thompson v. City of Waco*,
  764 F.3d 500 (5th Cir. 2014) ...............................................................................................7, 8

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Vervain, LLC v. Micron Technology, Inc.*,
  No. 6:21-cv-487, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022)..........................................5, 9, 14

### OTHER AUTHORITIES

https://community.arubanetworks.com/HigherLogic/System/DownloadDocument
  File.ashx? DocumentFileKey=d63ab2c09c5a4d489c95 ..........................................................6

https://www.arubanetworks.com/assets/ds/DS_8400Series.pdf.......................................................6

https://www.arubanetworks.com/techdocs/VSG/docs/040-dc-
  design/Media/PDF/Aruba_VSG_Data-Center-Design.pdf........................................................6

https://www.youtube.com/watch?v=UF5b2o5o6RE ............................................................10, 11

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| '323 Patent | U.S. Patent No. 7,921,323 |
| HPE | Hewlett Packard Enterprise Co. and Aruba Networks, LLC |
| Lionra | Lionra Technologies Limited |

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---------|----------|
| A | '323 Patent |
| B | Excerpt of the File History for the '323 Patent |
| C | Aruba VSG Data Center Design |
| D | Aruba CX 8400 Switch Series |
| E | Introduction to Aruba 8400 |

## I.      INTRODUCTION

Courts across the country, including this Court, recognize that while the Federal Rules impose a "lenient" standard by which a plaintiff must plead its claim, "litigants may nonetheless plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-cv-876, 2020 WL 6781566, at *3 (E.D. Tex. Nov. 17, 2020) (quotations omitted); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  That is what Plaintiff Lionra Technologies Limited ("Lionra") has done here.  As the Federal Circuit explained in *Bot M8,* the issue is not whether the Complaint contains enough information to support the claim of infringement; instead, Lionra's Complaint "contains too much rather than too little, to the point that [Lionra] has essentially pleaded itself out of court."  *Id.*  Lionra has done so by relying on documents in its Complaint that visibly contradict claim limitations—limitations added by the applicants during prosecution to overcome rejections by the Patent Examiner.  Those clear contradictions show that Lionra has no plausible claim of infringement and thus require dismissal of this patent.

More specifically, Lionra asserts that Defendants Hewlett Packard Enterprise Company and Aruba Networks LLC infringe U.S. Patent No. 7,921,323 ("the '323 patent").  In its Complaint, Lionra alleges that HPE's Aruba CX 8400 switch series infringes at least claim 27 of the '323 patent.  That claim requires multiple signal processing circuits, with each signal processing circuit including multiple ASIC devices.  The claim further requires that each of the ASIC devices of each of the signal processing circuits be coupled through common interfaces and "an intervening high speed optical link."  And, finally, the claim requires that there be "***no*** other processing device intervening between the high speed optical link and said ASIC devices."  But documents cited by Lionra in its Complaint show the opposite in the accused CX 8400 switch:  Those documents show, for example, that the CX 8400 switch includes an intervening processing device—called a

"fabric card"—between the components Lionra identifies as the requisite ASIC devices, which "is fatal to [Lionra's] infringement case with respect to the ['323 patent." *Bot M8*, 4 F.4th at 1354.

Having alleged in its Complaint that these documents accurately illustrate the configuration of the accused product, the Court must take those allegations as true. Lionra cannot cure this fatal flaw in its pleading by amending its Complaint, retracting its reliance on these documents and replacing the detailed documents with less-detailed documents. Lionra has defined the playing field, and, at this point in the case, it must play on that field.

This Court and the Federal Circuit have affirmed dismissal on the pleadings in situations like these where the plaintiff pleads itself out of court. Defendants therefore respectfully request dismissal of count 2 of the Complaint with prejudice.

## II.    BACKGROUND

### A.    The '323 Patent

The '323 patent relates generally to the interconnection of multiple ASIC devices, like FPGAs (field programmable gate arrays) and other integrated circuits with more than one ASIC. '323 patent, 1:14–17. During prosecution, the applicants confirmed that FPGAs are a type of ASIC device. [1]   According to the background of the patent, separate ASIC devices are often interconnected and that interconnection may be done in multiple ways. Where multiple FPGA devices are interconnected on a single circuit card, they may be interconnected using point-to-point parallel wiring connections—i.e., multiple wires connect the FPGA devices. *Id.*, 1:19–32, 1:51–59. Alternatively, the '323 patent alleges that in the prior art where FPGA devices are connected across multiple cards, additional parallel wiring between those cards is used. *Id.*, 1:33–50.

---

[1] Ex. B (Nov. 1, 2010 Amendment and Remarks) at 17.

The patent explains that, in large systems, "FPGA and other high-performance computing devices are often difficult to access for general use" due to the large amounts of parallel wirings required to interconnect multiple ASIC devices.  *Id*., 1:60–64.  According to the patent, the difficulty in accessing interconnected ASIC devices eliminates the benefits from using reconfigurable circuits, particularly those involving computation-intensive applications—e.g., medical imaging applications, pharmaceutical and biotech-related applications, and special effects applications.  *Id*., 1:63–2:37.  To solve this alleged deficiency, the patent describes connecting multiple ASIC devices—like FPGAs—using a *high-speed optical connection* to connect each of the ASIC devices together, instead of multiple parallel wirings.  Figure 15 of the '323 patent illustrates such a configuration.



FIG. 15

As depicted in the figure, the '323 patent describes interconnecting separate signal processing circuits 1310, 1314, and 1316.  These signal processing units include "ASIC devices" or FPGAs labeled with an "F" as well as the numerical designation 1320.  The separate signal processing devices are connected via a high-speed interconnection medium 1350, e.g., an optical link.  There is also an interface 1510 through which each of the ASICs connect to the high-speed interconnection medium 1350.  *Id*., 21:17–60.  Notably, as Figure 15 shows, ASICs 1520 are

directly connected to one another, with no intervening circuit between connections, and signal processing circuits 1310, 1314, and 1316 are also directly connected—with no intervening circuit—through the high-speed connection 1350.

The complaint asserts claim 27, which is representative:

A communications infrastructure, comprising

> two or more separate signal processing circuits,
>
> each one of said two or more signal processing circuits including multiple ASIC devices that each itself includes a packet router,
>
> said packet router of each one of said ASIC devices of each given one of said respective two or more signal processing circuits being coupled through respective first and second common interfaces and
>
> an intervening high speed serial optical link to a respective packet router of each of the ASIC devices of each other of said two or more signal processing circuits
>
> with **no other processing device intervening between the high speed optical link and said ASIC devices of each of said two or more signal processing circuits**.

*Id*., cl. 27.  In sum, the claims require:  (1) two or more separate signal processing circuits; (2) each of those signal processing circuits has "multiple ASIC devices"; (3) each of the ASIC devices includes a packet router and are connected via a common interface and a high-speed serial optical link; and (4) **there are no other processing devices between the optical link and the ASIC devices**.

The bolded portion of the claims above (specifying that there is no processing device between the optical link and the ASIC devices) was added during prosecution to overcome a prior art rejection.  Ex. B (Nov. 1, 2010 Amendment and Remarks) at 13–14.[2]  Specifically, the

---

[2] *See Integrated Technological Sys., Inc. v. First Internet Bank of Indiana*, No. 2:16-cv-417, 2017 WL 631195, at * 2 (E.D. Tex. Jan. 30, 2017) ("Courts evaluating patent-eligibility at the pleading stage nevertheless consider the asserted patent and relevant prosecution history as matters of public record appropriate for judicial notice.").

Examiner relied on U.S. Patent No. 7,506,297 to Mukherjee ("Mukherjee") as the basis of an obviousness rejection.  In response, the applicant pointed the Examiner to Figure 2 of Mukherjee (reproduced below), explaining:

> [E]ach of the nodes of Mukherjee's network 12 requires an **intervening "host machine 22"** which connects the node to the network 12 (*see* Figure 2) and which further requires that "one of the nodes 22" functions as a **master server 20** in that it provides the interconnection point between the network 12 and the SPM tool 14.



*Fig. 2*

Given this configuration, the applicants argued:

> Thus Mukherjee actually *teaches away* from the recitation of amended claim 1, which relates to a method in which *the respective ASIC devices* of each one of the two or more signal processing circuits *are directly coupled to* the high bandwidth interconnection medium *with <u>no other processing device intervening between</u>* the high bandwidth interconnection and the respective ASIC devices.  (Emphasis in original).

*Id*., 20-21.  This added limitation, thus, was material to the alleged novelty and non-obviousness of the claimed invention.  And at least one court has held in such cases "a higher level of detail in pleading infringement may . . . be demanded for elements clearly 'material' to novelty and non-obviousness."  *Vervain, LLC v. Micron Technology, Inc*., No. 6:21-cv-487, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022).

### B.     The Accused Products

In its Complaint in this case, Lionra asserts that the "Aruba CX 8400 switch series" infringes claim 27 of the '323 patent.  Compl., ¶ 27.  Unlike the FPGA/integrated circuit systems for computation-specific applications (like medical imaging and special effects) disclosed in the patent, the documents cited in the Complaint show that the accused CX 8400 switches are configurable network switches used to distribute data traffic through a computer network—like the internet.  *See* Compl., ¶ 28, citing to https://www.arubanetworks.com/techdocs/VSG/docs/040-dc-design/Media/PDF/Aruba_VSG_Data-Center-Design.pdf, which is attached as Ex. C hereto ("Aruba VSG Data Center Design").  The CX 8400 switches support up to 8 line cards in a single switch.  The line cards include network ports that handle normal network traffic using network cables.  *See* Compl., ¶ 30, citing to https://www.arubanetworks.com/assets/ds/DS_8400Series.pdf, which is attached as Ex. D hereto ("Aruba CX 8400 Switch Series") at 2.  In addition, the CX 8400 switches support up to 3 fabric card slots.



*See* Compl., ¶ 33, citing to https://community.arubanetworks.com/HigherLogic/System/DownloadDocumentFile.ashx?_DocumentFileKey=d63ab2c09c5a4d489c95, which is attached as Ex. E hereto ("Introduction to Aruba 8400") at 5–6.  As explained below, the line cards are connected to

the fabric cards, and this connection undermines the plausibility of Lionra's infringement allegations.

### C.      Lionra's Allegations

Although Lionra's precise allegations are not clear from the Complaint, Lionra appears to allege that the entire CX 8400 switch is itself a signal processing circuit.  *Id.*, ¶¶ 29, 33 (each icon boxed in red is a separate switch).  Lionra then alleges that each Aruba CX 8400 series includes up to 8 ASIC devices, which it alleges to be the ASIC on the line cards.  *Id.*, ¶ 30.  In other words, Lionra equates the line cards with the claimed "ASIC devices."  Lionra asserts that each of the multiple ASIC devices (the line cards) found in the Aruba CX 8400 switch include "a packet router." *Id.*, ¶ 31, citing to U.S. Patent No. 8,059,650, attached as Ex. F.  Notably, Lionra does not allege that the '650 patent identifies the CX 8400 switch (it does not); nor does Lionra allege that defendants mark the CX 8400 with the '650 patent (they do not).[3]  Lionra further contends that Aruba CX 8400 switches can be connected via VSX (virtual switch extension) links, which Lionra alleges are optical links between ASIC devices. *Id.*, ¶ 33.  With respect to the claimed requirement that there be no other processing device intervening between the high-speed optical link and the ASIC devices, Lionra is silent—other than to merely parrot the claim language.  *Id.*, ¶ 33.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state facts making the plaintiff's claim to relief plausible on its face.  *Thompson v. City of*

---

[3]  "[T]he existence of a patent is no guarantee of the existence of a corresponding product." *Demodulation, Inc. v. United States*, 126 Fed. Cl. 499, 507 (2016); *Superior Indus., L.L.C. v. Thor Glob. Enterprises Ltd.*, No. 10-2524, 2011 WL 601217, at \*1–2 (D. Minn. Feb. 11, 2011) (dismissing claim where plaintiff supported its infringement allegations with only the defendants' pending patent application).  Indeed, the '650 patent was filed about 10 years before HPE introduced the CX 8400 switch series.  Thus, Lionra's arbitrary citation to the '650 patent does not establish a plausible claim of infringement.

*Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads enough facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The court accepts well-pleaded facts as true, views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true.  *Id.*

The court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  However, documents attached to a defendants' motion to dismiss are considered a part of the pleadings if they are referred to in the complaint and are central to the claim.  *Id.* at 498–99.

According to the Federal Circuit, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken a true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353.  In *Bot M8*, the court explained that to support a "plausible claim," "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* Furthermore, "[w]here, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim." *Id*. at 1354; *Qwikcash LLC*, 2020 WL 6781566, at *3 ("While the 'fair notice' standard is lenient, litigants may nonetheless 'plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.'") (quoting *Bennett v. Schmidt*, 153 F.3d 519 (7th. Cir. 1998) and citing *McKeown v. City of Chicago*,

20 F. App'x 856, 858 (Fed. Cir. 2001)); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556, 2020 WL 5640233, at *4–5 (C.D. Cal. Sept. 3, 2020); *Arsus, LLC v. Tesla Motors, Inc.*, No. 20-cv-00313, 2020 WL 5552868, at *2 (N.D. Cal. Aug. 14, 2020); *see also In re Electronic Data Systems Corp.*, 305 F. Supp. 2d 658, 678 (E.D. Tex. 2004) ("When a court construes those facts as true and finds that the facts affirmatively pled preclude plaintiffs' recovery, the court may appropriately find that 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'") (quoting, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14 (2002)); *Vervain, LLC v. Micron Technology, Inc.*, No. 6:21-cv-487, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022).

## IV.    ARGUMENT

Lionra's factual allegation as to the '323 patent, including the documents cited in the complaint, are inconsistent with and contradict the requirements of asserted claim 27 of the '323 patent.  Lionra's allegations are therefore insufficient to state a plausible claim under Federal Circuit precedent and Count 2 as to the '323 patent should be dismissed.

As explained above, in its Complaint, Lionra alleges that the claimed ASIC devices in the accused CX 8400 switch series devices are the ASICs located on the line cards, as indicated by the red box Lionra added below:



Compl., ¶ 30.  Lionra attributes this figure to a YouTube video and identifies the time at which

this image appears (3:27).  *Id.* (https://www.youtube.com/watch?v=UF5b2o5o6RE).  Although the

diagram above refers to both line and fabric cards, Lionra focuses its allegations on only the line

cards, which (again) Lionra contends include the ASICs required by the claim.  *See* Compl., ¶ 30

("The router is in the line card.").  But Lionra fails to refer the Court to what the video discloses a

few minutes later wherein the connection between the line cards—the alleged ASICs—and the

fabric cards is explained.  Indeed, at time 5:40 of the YouTube video, the following image appears:



As the image reveals, the line cards (again the alleged ASICs required by the claim) are all connected to one another through the fabric cards.  The following figure from later in the video reinforces the fact that fabric cards intervene between line card connections.  As shown on the image below (also from the video), the line cards of a switch (seen on the left in blue) are connected to other the line cards (shown in beige on the right) through fabric cards (shown in green).



https://www.youtube.com/watch?v=UF5b2o5o6RE at 8:09.  Thus, no line card, i.e., no ASIC, is connected to another line card *without* an intervening processing device therebetween as the claim requires.  The fabric card sits between each of the line cards.  In fact, the narrator explains that the

fabric cards "provide and allow traffic to move from one line card to another . . . [the fabric cards] ensure high performance communication between line cards."  YouTube video at time 5:50–6:00. In other words, the fabric cards, contrary to the claim language, process the traffic between line cards.

As explained above, claim 27 of the '323 patent requires a "high speed optical link" to connect each of the ASIC devices of each of the signal processing circuits.  In its Complaint, Lionra asserts that a VSX link, shown in the figure below between two CX 8400 switches (the switches shown by red boxes and the VSX link by the blue arrow, both of which Lionra added to the figure), satisfies the optical-link requirement of the claim.



Compl., ¶ 33.  But this allegation and this figure also contradict the language of the claim: Asserted claim 27 requires that "an intervening high speed optical link" couple "***each*** of the ASIC devices of each other of said two or more signal processing circuits."  '323 patent, cl. 27 (emphasis added). In other words, the intervening high-speed optical link connects ***all*** of the ASIC devices of all of

the signal processing circuits together.  The VSX links do not do that.

As the figure below shows, a VSX link simply connects one line card of one switch to one line card of another switch; there is no VSX link that connects each of the line cards (again, the alleged ASIC devices of the claim) to every other line card (an alleged "ASIC device") of every other switch (an alleged "signal processing circuit").  This is demonstrated by the line cards shown in paragraph 33 of the Complaint, which depict the individual ports into which links can be plugged:



Each port permits a single point-to-point connection of one line card of one switch to a line card of another switch.  But contrary to the claim language, these documents cited by Lionra in its Complaint show that *no* intervening link (optical or otherwise) couples each one of the line cards (alleged ASIC devices) of one switch (an alleged "signal processing circuit") to "each of the ASIC devices of each other of said two or more signal processing circuits" (other line cards of other switches).  Instead, and as the '323 patent credits to the prior art, connections between CX 8400 switches use a "point-to-point or bussed parallel wiring configuration[]."  '323 patent, 1:19–21; *see also* 1:33-50 ("Additional parallel wiring is typically employed when a FPGA array is used to implement multiple card-level interfaces and embedded processor nodes, further increasing circuit complexity.").  In other words, the documents relied on by Lionra in its Complaint show that the accused HPE switch operates exactly as the patent distinguishes in the prior art.  Lionra has pleaded

itself out of Court.

The Federal Circuit recently affirmed the dismissal of a complaint on strikingly similar facts.  In *Bot M8*, the claims of one patent required two programs to "be stored together, ***separately*** from the motherboard," but documents cited in the complaint showed that one of those programs was, contrary to the claim, located on the motherboard.  4 F.4th at 1354.  The Federal Circuit explained that, "[w]here, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim."  *Id*.  That is the case here.  The claims require that (1) there be no intervening devices between the alleged ASIC device and the alleged optical link and (2) that the optical link connect each of the ASIC devices of each of the signal processing circuits to each of the ASIC devices of each of the other signal processing circuits.  The very documents cited by and therefore incorporated into the Complaint show that the accused switch does not satisfy either requirement.  Lionra has failed to present a plausible claim of infringement, and like *Bot M8*, Lionra's infringement allegations as to the '323 patent should be dismissed.

Furthermore, because this lack of intervening processing device was the alleged point of novelty during prosecution, some courts have required "a higher level of detail in pleading infringement."  *See, e.g., Vervain, LLC*, 2022 WL 23469, at *5.  In *Vervain*, the court dismissed a complaint that simply attached photos of the accused products and summarily alleged that each limitation was satisfied, including the limitation that lay at the point of novelty.  The *Vervain* court reasoned that: "[a] plaintiff cannot establish why it is plausible that the accused product infringes the patent claim, by merely articulating why it is plausible that the accused product practices the prior art.  Pleading only the latter begs the obvious alternative explanation' that the accused infringer is merely practicing the prior art."  *Id*. (citing *Bot M8*, 4 F. 4th at 1353) (internal

quotations omitted).

The same reasoning applies here.  Lionra cannot plausibly plead infringement when the documents it cites in its Complaint show that HPE is just practicing the prior art.  *See id*.  For example, here, Lionra is accusing CX 8400 switches (which contain line cards that allegedly contain ASIC devices) that are connected together.  This configuration is the same as the prior art Mukhurjee reference that the applicant distinguished during prosecution.  In Mukhurjee, the "host machines 22" (which included ASIC devices 24) were connected to each other and the applicant argued that the host machines 22 were the intervening processing device.  Ex. B (Nov. 1, 2010 Amendment and Remarks) at 20–21.  Similarly, here, within each accused CX 8400 switch, the fabric cards are processing devices that intervene between each of line cards, i.e., ASIC devices.

Any amendment of the Complaint by Lionra, moreover, would be futile.  Lionra has presented this Court with documents that it has represented show the operation of the accused device.  It cannot now take back that representation and attempt to refer to different documents that lack the images that contradict the patent.  Lionra has "pleaded itself out of court."  *Id.*  HPE therefore respectfully requests dismissal of Count 2 as to the '323 patent with prejudice.

## V.     CONCLUSION

For the foregoing reasons, Cisco respectfully moves that the Court hold that Lionra failed to state a claim as to the '323 patent and dismiss Lionra's Count 2 with prejudice.

Date:  October 28, 2022

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Mark N. Reiter*
Veronica Smith Moyé (24000092)
VMoye@gibsondunn.com
Mark N. Reiter (16759900)
mreiter@gibsondunn.com
Ashbey N. Morgan (24106339)
anmorgan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
Telephone: (214) 698-3100
Facsimile: (214) 571-2900

**HALTOM & DOAN**

Jennifer Haltom Doan
jdoan@haltomdoan.com
Kyle Randall Akin
kakin@haltomdoan.com
6500 Summerhill Road
Crown Executive Center Suite 100
Texarkana, Tx 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800

*Attorney for Defendants Hewlett Packard*
*Enterprise Company and Aruba Networks,*
*LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, the foregoing was electronically in compliance with Local Rules and served via the Court's electronic filing system on all counsel who have consented to electronic service.

*/s/ Mark N. Reiter*
**Mark N. Reiter**