**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LIONRA TECHNOLOGIES LIMITED, <br><br> v. <br><br> FORTINET, INC. | CASE NO. 2:22-cv-00322-JRG-RSP <br> (Lead Case) |
| LIONRA TECHNOLOGIES LIMITED <br><br> v. <br><br> CISCO SYSTEMS, INC. | CASE NO. 2:22-cv-00305-JRG-RSP <br> (Member Case) |
| LIONRA TECHNOLOGIES LIMITED <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY, et al | CASE NO. 2:22-cv-00319-JRG-RSP <br> (Member Case) |
| LIONRA TECHNOLOGIES LIMITED <br><br> v. <br><br> PALO ALTO NETWORKS, INC. | CASE NO. 2:22-cv-00334-JRG-RSP <br> (Member Case) |

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM OF U.S. PATENT NO. 7,921,323**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................3

        A.      The '323 Patent ......................................................................................3

        B.      The Accused Products.............................................................................6

        C.      Lionra's Allegations...............................................................................7

III.    LEGAL STANDARD............................................................................................9

IV.     ARGUMENT .....................................................................................................10

        A.      Lionra's First Infringement Theory Contradicts the Claim Language .................11

        B.      Lionra's Second Infringement Theory Contradicts the Claim Language.............12

        C.      Lionra Has Plead Itself Out of Court ....................................................14

V.      CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arsus, LLC v. Tesla Motors, Inc.*,
  No. 20-cv-00313, 2020 WL 5552868 (N.D. Cal. Aug. 14, 2020) ..........................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................9

*Bennett v. Schmidt*,
  153 F.3d 519 (7th. Cir. 1998) ...........................................................................................10

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ............................................................1, 2, 9, 12, 14, 15

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ..............................................................................................9

*In re Electronic Data Systems Corp.*,
  305 F. Supp. 2d 658 (E.D. Tex. 2004)...............................................................................10

*Integrated Technological Sys., Inc. v. First Internet Bank of Indiana*,
  No. 2:16-cv-417, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017) ...................................5

*McKeown v. City of Chicago*,
  20 F. App'x 856 (Fed. Cir. 2001) ......................................................................................10

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  No. 2:20-cv-04556, 2020 WL 5640233 (C.D. Cal. Sept. 3, 2020)..........................10

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
  No. 4:19-cv-876, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020).........................1, 9

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002).........................................................................................................10

*Thompson v. City of Waco*,
  764 F.3d 500 (5th Cir. 2014) ..............................................................................................9

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.*,
  No. 2:17-CV-00042-RWS-RSP, 2017 WL 6559256 (E.D. Tex. Dec. 21, 2017).....................6

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*UltimatePointer, LLC v. Nintendo Co.*,
  No. 6:11-CV-496, 2013 WL 12140173 (E.D. Tex. May 28, 2013)...........................................6

*Vervain, LLC v. Micron Technology, Inc.*,
  No. 6:21-cv-487, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022).................................6, 10, 14, 15

### RULES

Patent L.R. 3-1(c)......................................................................................................................7

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '323 Patent | U.S. Patent No. 7,921,323 |
| HPE | Defendants Hewlett Packard Enterprise Co. and Aruba Networks, LLC |
| Lionra | Lionra Technologies Limited |

## TABLE OF EXHIBITS

| Exhibit | Document |
|---------|----------|
| A | '323 Patent |
| B | Excerpt of the File History for the '323 Patent |
| C | Aruba CX 8400 Switch Series |
| D | Aruba Campus Switches |

## I.    INTRODUCTION

Plaintiff Lionra Technologies Limited's ("Lionra") Original Complaint included factual allegations and cited to documents in support of those allegations that contradicted requirements of one of the patents—U.S. Patent No. 7,921,323 ("the '323 patent")—asserted by Lionra against Defendants Hewlett Packard Enterprise Company ("HPE") and Aruba Networks, LLC ("Aruba"). As the cases explain, Lionra "pleaded itself out of court," and, as a result, Defendants moved to dismiss (Dkt. 27) Lionra's infringement allegations premised upon the '323 patent.

Rather than address Defendants' motion, Lionra simply filed an Amended Complaint (Dkt. 53).  In the Amended Complaint, Lionra did not change its contradictory infringement allegations or add specificity to clarify its infringement allegations.  Instead, Lionra removed detail and cited some—not all—different documents in its Amended Complaint.  But whether cited in the Amended Complaint or not, the documents originally identified and relied on by Lionra still exist; Lionra's amendment does not erase what those documents say or that Lionra originally sought to support its claims with those documents.  Even so, the documents Lionra now cites in its Amended Complaint continue to demonstrate that no plausible infringement claim exists.  Courts across the country, including this Court, recognize that, while the Federal Rules impose a "lenient" standard by which a plaintiff must plead its claim, "litigants may nonetheless plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-cv-876, 2020 WL 6781566, at *3 (E.D. Tex. Nov. 17, 2020) (quotations omitted); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  That is precisely what Lionra has done here—plead itself out of court.

As the Federal Circuit explained in *Bot M8*, the issue is not whether the Complaint contains enough information to support the claim of infringement; instead, Lionra's Amended Complaint, like its Original Complaint, "contains too much rather than too little, to the point that [Lionra] has

essentially pleaded itself out of court."  *Id.*  Lionra has done so by relying on documents that expressly contradict claim limitations—limitations added by the applicants during prosecution to overcome rejections by the Patent Examiner.  Those clear contradictions show that Lionra has no plausible claim of infringement and thus require dismissal of the '323 patent.

More specifically, in the Amended Complaint, Lionra asserts that certain of HPE's switches infringe claims 27, 28, 31, and 33 of the '323 patent.  All of these claims require multiple signal processing circuits, with each signal processing circuit including multiple ASIC devices.  The claims further require that each of the ASIC devices of each of the signal processing circuits be coupled through common interfaces and "an intervening high speed optical link."  And finally, the claims require that there be "***no*** other processing device intervening between the high speed optical link and said ASIC devices."  But, just as with the Original Complaint, documents now cited by Lionra in its Amended Complaint show the opposite.  Those documents show, for example, that the accused CX 8400 switch includes an intervening processing device—called a "fabric card"—between the components Lionra identifies as the requisite ASIC devices; the documents also show that whatever Lionra points to as a "signal processing circuit," all of those circuits are not connected together by an optical link.  Lionra cannot remove the presence of this intervening processing device or create additional optical links by swapping out documents cited in the complaint.  These facts, borne out by documents relied on by Lionra, are "fatal to [Lionra's] infringement case with respect to the ['323] patent."  *Bot M8*, 4 F.4th at 1354.

Lionra has not cured—and cannot cure—this fatal flaw in its pleading.  Indeed, the Amended Complaint, while difficult to decipher, relies on the same set of information as did the Original Complaint.  Lionra has now twice defined the playing field, and it must play on that field.  This Court and the Federal Circuit have affirmed dismissal on the pleadings in situations like this

where the plaintiff pleads itself out of court.  Defendants, therefore, respectfully request dismissal of count 2 of the Amended Complaint with prejudice.

## II.    BACKGROUND

### A.    The '323 Patent

The '323 patent relates generally to the interconnection of multiple ASIC devices, like FPGAs (field programmable gate arrays) and other integrated circuits with more than one ASIC. '323 patent, 1:14–17.  According to the background of the patent, separate ASIC devices, which, during prosecution, the applicants asserted include FPGAs,[1] are often interconnected in one of multiple ways.  For example, where multiple FPGA devices are interconnected on a single circuit card, they may be interconnected using point-to-point parallel wiring connections—i.e., multiple wires connect the FPGA devices.  *Id*., 1:19–32, 1:51–59.  Alternatively, the '323 patent alleges that in the prior art where FPGA devices are connected across multiple cards, additional parallel wiring between those cards is used.  *Id*., 1:33–50.

The patent contends that, in large systems, "FPGA and other high-performance computing devices are often difficult to access for general use" due to the large amounts of parallel wirings required to interconnect multiple ASIC devices.  *Id*., 1:60–64.  According to the patent, the difficulty in accessing interconnected ASIC devices eliminates the benefits from using reconfigurable circuits, particularly those involving computation-intensive applications—e.g., medical imaging applications, pharmaceutical and biotech-related applications, and special effects applications.  *Id*., 1:63–2:37.  To solve this alleged deficiency, the patent describes connecting multiple ASIC devices—like FPGAs—using a single *high-speed optical connection* to connect

---

[1] Ex. B (Nov. 1, 2010 Amendment and Remarks) at 17.

each of the ASIC devices together, instead of multiple parallel wirings.  Figure 15 of the '323 patent illustrates such a configuration.

As depicted in Figure 15, the '323 patent describes interconnecting separate signal processing circuits 1310, 1314, and 1316.  These signal processing units include "ASIC devices" or FPGAs labeled with an "F" as well as the numerical designation 1320.  All of the separate signal processing devices are connected via a high-speed interconnection medium 1350, e.g., an optical link.  There is also an interface 1510 through which each of the ASICs connect to the high-speed interconnection medium 1350.  *Id.*, 21:17–60.  Notably, as Figure 15 shows, ASICs 1520 are directly connected to one another, with no intervening circuit between connections, and signal processing circuits 1310, 1314, and 1316 are also directly connected—with no intervening circuit—through the high-speed optical connection 1350.



FIG. 15

Claim 27 is representative of the asserted claims:

A communications infrastructure, comprising

two or more separate signal processing circuits,

each one of said two or more signal processing circuits including multiple ASIC devices that each itself includes a packet router,

said packet router of each one of said ASIC devices of each given one of said respective two or more signal processing circuits being coupled through respective first and second common interfaces and

an intervening high speed serial optical link to a respective packet router of each of the ASIC devices of each other of said two or more signal processing circuits

with ***no other processing device intervening between the high speed optical link and said ASIC devices of each of said two or more signal processing circuits***.

*Id*., cl. 27.  In sum, the claims require: (1) two or more separate signal processing circuits; (2) each of those signal processing circuits has "multiple ASIC devices"; (3) each of the ASIC devices includes a packet router and are connected via a common interface and a high-speed serial optical link; and (4) ***there are no other processing devices between the optical link and the ASIC devices***.

The bolded portion of the claims above (specifying that there is no processing device between the optical link and the ASIC devices) was added during prosecution to overcome a prior art rejection.  Ex. B (Nov. 1, 2010 Amendment and Remarks) at 13–14.[2]  Specifically, the Examiner relied on U.S. Patent No. 7,506,297 to Mukherjee ("Mukherjee") as the basis of an obviousness rejection.  In response, the applicant pointed the Examiner to Figure 2 of Mukherjee (reproduced below), explaining:

> [E]ach of the nodes of Mukherjee's network 12 requires an <span style="color:orange">intervening "host machine 22"</span> which connects the node to the network 12 (*see* Figure 2) and which further requires that "one of the nodes 22" functions as a <span style="color:red">master server 20</span> in that it provides the interconnection point between the network 12 and the SPM tool 14.



*Fig. 2*

Given this configuration, the applicants argued the prior art "teaches away" from the amended claim because the amended claim requires the ASIC devices be "*directly coupled* to the high bandwidth interconnection medium *with <u>no other processing device intervening between</u> the high bandwidth interconnection and the respective ASIC devices*."

---

[2] *See Integrated Technological Sys., Inc. v. First Internet Bank of Indiana*, No. 2:16-cv-417, 2017 WL 631195, at * 2 (E.D. Tex. Jan. 30, 2017) ("Courts evaluating patent-eligibility at the pleading stage nevertheless consider the asserted patent and relevant prosecution history as matters of public record appropriate for judicial notice.").

*Id.*, 20–21 (emphasis in original).  This added limitation, thus, was material to the alleged novelty of the claimed invention.  And, at least one court has held, in such cases "a higher level of detail in pleading infringement may . . . be demanded for elements clearly 'material' to novelty and non-obviousness."  *Vervain, LLC v. Micron Technology, Inc.*, No. 6:21-cv-487, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022).

### B.    The Accused Products

In its Amended Complaint (Dkt. 53), Lionra asserts that the "Aruba 5400R and 2930F CX 6200, 6300M, 6300F, 6400, and 8000 (e.g., 83xx and 8400) Switch Series and Aruba OS-CX 10.00 or newer" ("Accused Switches") infringe claims 27, 28, 31, and 33 of the '323 patent.  Am. Compl., ¶ 24.  Unlike the FPGA/integrated circuit systems for computation-specific applications (like medical imaging and special effects) disclosed in the '323 patent, the documents cited in the Amended Complaint show that the Accused Switches are configurable network switches used to distribute data traffic through a computer network—like the internet.  *See* Am. Compl., ¶ 26, citing to https://www.arubanetworks.com/assets/ds/DS_8400Series.pdf, which is attached as Ex. C hereto ("Aruba CX 8400 Switch Series") at 1.  The "exemplary" CX 8400 Switch[3] supports multiple line cards in a single switch; the line cards include network ports that handle normal network traffic using network cables.  *See id.* at 2.  In addition, the Accused Switches support multiple card slots.  *See id.* at 7.  As explained below, the



---

[3] Lionra contends the CX 8400 switch is "exemplary of the infringement of the '323 Patent."  Am. Comp., Ex. 4, at 1.  Defendants explicitly disagree that the CX 8400 is exemplary.  This conclusory contention is contrary to the Local Patent Rules.  *See, e.g., UltimatePointer, LLC v. Nintendo Co.*, No. 6:11-CV-496, 2013 WL 12140173, at *3 (E.D. Tex. May 28, 2013); *Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-CV-00042-RWS-RSP, 2017 WL 6559256, at *5 (E.D. Tex. Dec. 21, 2017).

line cards are connected to the fabric cards, and this connection undermines the plausibility of Lionra's infringement allegations.

### C.     Lionra's Allegations

Lionra attached its Patent Local Rule 3-1 disclosure for the '323 patent as Exhibit 4 to its Amended Complaint, making them part of the pleadings.  Defendants recognize that the standard for pleading infringement in a complaint is lower than what would be required by Rule 3-1, but the allegations in Exhibit 4 are even ***more ambiguous*** than Lionra's Original Complaint.[4]  Best as Defendants can tell, Lionra appears to conflate two contradictory theories, both of which fail for the reasons explained below.

Lionra's first possible theory is that the Accused "CX 8400 includes two or more separate signal processing circuits. . ."  Am. Comp., Ex. 4, at 5. Lionra then appears to point to the line cards housed within the CX 8400 as the required signal processing units and the ASICs on the line cards as the required multiple ASIC devices.  *Id*., 5–11 ("The 8400 provides carrier class high availability with industry-leading line rate 10GbE/25GbE/40GbE/100GbE connectivity in a compact *8 slot chassis*.") (emphasis added). The claim requires that the signal processing circuits be connected; as the Line Card Figure above shows, the line cards, i.e., the claimed signal processing circuits under this theory, which fit in the


Line Card Figure

---

[4] Lionra's Rule 3-1 disclosure is deficient because it fails to identify "specifically where each element of each asserted claim is found within each Accused Instrumentality."  Patent L.R. 3-1(c).

slots in the chassis, are connected to one another via fabric cards.   Compl., ¶ 30 (https://www.youtube.com/watch?v=UF5b2o5o6RE), at 5:40.

Alternatively, and although Lionra contends that the CX 8400 itself "includes two or more separate signal processing circuits," Lionra appears to allege that the CX 8400 switch—not the line cards included in the switch—is the claimed signal processing circuit.  This interpretation of Lionra's allegation arises from the VSX Figure to the right, which shows two switches (symbolized by the  icon) connected by a VSX (virtual switch extension) link.  Am. Compl., Ex. 4, at 16.  According to Lionra, the VSX link can be an optical link, although Lionra fails to provide any support for that assertion.  Apparently, in this alternative theory, the line

**VSX Figure**

cards are not the claimed signal processing circuits but are instead the claimed "multiple ASIC devices."  *Id.*, 11–14.  In any case, this theory is inconsistent with the allegation that the switch itself includes two or more separate signal processing circuits.

The claims also require "that each [ASIC device] itself includes a packet router."  *See* '323 claim 27.  In its Original Complaint, Lionra pointed to an Aruba patent to support its allegation that the ASIC devices each include a packet router.  Notably, in its Amended Complaint, and in apparent response to Defendants' explanation that the Aruba patent had no connection to the Accused Products (*see* Dkt. 27 at 7), Lionra removed all references to that Aruba patent.  With that flawed citation removed, Lionra is simply silent regarding this claim requirement—demonstrating further the implausibility of its claim.  *Id.*, 6–11.  Such is also the case with respect to the claimed

requirement that there be no other processing device intervening between the high-speed optical link and the ASIC devices.  Other than to parrot the claim language, Lionra is silent.  *Id.*, 14–20.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state facts making the plaintiff's claim to relief plausible on its face.  *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads enough facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The court accepts well-pleaded facts as true, views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true.  *Id.*  The court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  However, documents attached to a defendant's motion to dismiss are considered a part of the pleadings if they are referred to in the complaint and are central to the claim.  *Id.* at 498–99.

According to the Federal Circuit, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken a true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8*, 4 F.4th at 1353.  In *Bot M8*, the court explained that to support a "plausible claim," "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  *Id.* Furthermore, "[w]here, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim."  *Id.* at 1354; *Qwikcash LLC*,

2020 WL 6781566, at *3 ("While the 'fair notice' standard is lenient, litigants may nonetheless 'plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.") (quoting *Bennett v. Schmidt,* 153 F.3d 519 (7th. Cir. 1998) and citing *McKeown v. City of Chicago*, 20 F. App'x 856, 858 (Fed. Cir. 2001)); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556, 2020 WL 5640233, at *4–5 (C.D. Cal. Sept. 3, 2020); *Arsus, LLC v. Tesla Motors, Inc.*, No. 20-cv-00313, 2020 WL 5552868, at *2 (N.D. Cal. Aug. 14, 2020); *see also In re Electronic Data Systems Corp.*, 305 F. Supp. 2d 658, 678 (E.D. Tex. 2004) ("When a court construes those facts as true and finds that the facts affirmatively pled preclude plaintiffs' recovery, the court may appropriately find that 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'") (quoting, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14 (2002)); *Vervain, LLC v. Micron Technology, Inc.*, No. 6:21-cv-487, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022).

## IV.   ARGUMENT

Lionra's factual allegation as to the '323 patent, including the documents cited in the Amended Complaint, are inconsistent with and contradict the requirements of asserted claims, 27, 28, 31, and 33 of the '323 patent.  Lionra's allegations are therefore insufficient to state a plausible claim under Federal Circuit precedent and Count 2 as to the '323 patent should be dismissed with prejudice.

## A.      Lionra's First Infringement Theory Contradicts the Claim Language

As explained above, in its Amended Complaint Lionra's first possible theory alleges that

the line cards in the CX 8400 are the claimed signal

processing circuits and the ASICs on those line cards are the

claimed ASIC devices.  This is illustrated in the figure to the

right, and the red box around the ASIC chip.  Compl., ¶ 30.[5]

Lionra attributes this figure to a YouTube video

(https://www.youtube.com/watch?v=UF5b2o5o6RE)      and

identifies the time at which this image appears (3:27).  *Id.*



Although the diagram refers to both line and fabric cards

(somewhat covered by the red box), Lionra focuses its allegations on only the line cards, which

(again) Lionra contends include the ASICs required by the claim.  *See* Am. Compl., Ex. 4, at 12.

But Lionra fails to refer the Court to what the video discloses a few minutes later, wherein the

connection between the line cards—the alleged signal processing circuits containing the claimed

ASIC devices—and the fabric cards is explained.  Indeed, at time 5:40 of the YouTube video, the

Line Card Figure shown above appears.  As the figure shows, the line cards (again, the alleged

signal processing circuits containing the claimed ASIC devices) are all connected to one another

***through the fabric cards***.  This point is reinforced from the figure below, which appears later in

the video.  The image below shows the line cards of a switch (seen on the left in blue) are connected

to other the line cards (shown in beige on the right) through fabric cards (shown in green).

---

[5] Lionra included the red box in the Original Complaint but omitted it from the Amended Complaint.  Am. Compl., ¶ 26.



https://www.youtube.com/watch?v=UF5b2o5o6RE at 8:09.  Thus, no line card, i.e., no ASIC, is

connected to another line card *without* an intervening processing device therebetween as the claim

requires.  The fabric card sits between each of the line cards.  In fact, the narrator explains that the

fabric cards "provide and allow traffic to move from one line card to another . . . [the fabric cards]

ensure high performance communication between line cards."  YouTube video at time 5:50–6:00.

In other words, the fabric cards, contrary to the claims, process the traffic between line cards.

### B. Lionra's Second Infringement Theory Contradicts the Claim Language

As also explained above, claim 27 of the '323 patent requires a "high speed optical link"

to connect each of the ASIC devices of each of the signal processing circuits.  In its Amended

Complaint, Lionra's second possible theory asserts that a VSX link, shown in the VSX Figure

above, ***between two switches***, satisfies the optical-link requirement of the claim.[6]  Am. Compl.,

Ex. 4, at 16.  But this allegation and this figure also contradict the language of the claim: Asserted

claim 27 requires that "an intervening high speed optical link" couple "***each*** of the ASIC devices

of each of other of said two or more signal processing circuits."  '323 patent, cl. 27 (emphasis added).

---

[6] Lionra removed detail from its Complaint in its Amended Complaint.  In its Original Complaint,
Lionra identified the switches in red boxes and added a blue arrow pointing to the VSX link.
Compl., ¶ 33.  In its Amended Complaint, Lionra points to a similar picture but removes the boxes.
Here again, Lionra cannot avoid dismissal removing detail and making its claim ambiguous.  *See
Bot M8*, 4 F.4th at 1357.

In other words, the intervening high-speed optical link connects **all** of the ASIC devices of **all** of the signal processing circuits together.  As the documents cited by Lionra in the Amended Complaint show, the VSX links do no such thing.

As the figure below shows, a VSX link connects one line card of one switch to one line card of another switch; there is no VSX link that connects **each** of the line cards (again, the alleged signal processing circuits containing the claimed ASIC devices) **to every other line card** (an alleged



"ASIC device") of every other switch (an alleged "signal processing circuit").  This is demonstrated by the line cards shown in the documents cited by Lionra, which depict the individual ports into which links can be plugged.  Am. Compl., Ex. 4, at 13, citing to https://community.arubanetworks.com/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=3c68a1fb-ec95-46bf-88bf-caa7a4728dc9, which is attached as Ex. D hereto ("Aruba Campus Switches") at 16.[7]  Each port permits a single point-to-point connection of one line card of one switch to one line card of another switch—not a common connection between all line cards.

Stated differently, contrary to the claim language, these documents cited by Lionra show that **no** link (optical or otherwise) couples each one of the line cards (alleged ASIC devices) of one switch (in this alternative theory the alleged "signal processing circuit") to "each of the ASIC devices of each other of said two or more signal processing circuits" (other line cards of other

---

[7] Yet again, Lionra removed detail from its Original Complaint.  In its Amended Complaint, Lionra omitted citation to a document cited in the Original Complaint that Defendants used in their first motion to dismiss.  Compl., ¶ 33.  Despite Lionra's effort to bury the facts, the same information still appears in the documents cited in the Amended Complaint.

switches).  Instead, and as the '323 patent credits to the prior art, connections between Accused Products use a "point-to-point or bussed parallel wiring configuration[]."  '323 patent, 1:19–21; *see also* 1:33–50 ("Additional parallel wiring is typically employed when a FPGA array is used to implement multiple card-level interfaces and embedded processor nodes, further increasing circuit complexity.").  At bottom, the documents cited by Lionra in its Amended Complaint show that the Accused Products operate like the prior art.  Lionra has pleaded itself out of Court.

### C.    Lionra Has Plead Itself Out of Court

The Federal Circuit recently affirmed the dismissal of a complaint on strikingly similar facts.  In *Bot M8*, the claims of one patent required two programs to "be stored together, ***separately*** from the motherboard," but documents cited in the complaint showed that one of those programs was, contrary to the claim, located on the motherboard.  4 F.4th at 1354.  The Federal Circuit explained that, "[w]here, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim."  *Id*.  That is the case here.  The claims require that (1) there be no intervening devices between the ASIC device and the optical link and (2) that the optical link connect each of the ASIC devices of the signal processing circuits to each of the ASIC devices of the other signal processing circuits.  The documents cited by and therefore incorporated into the Complaint show neither requirement satisfied.  Lionra has failed to present a plausible claim of infringement, and like *Bot M8*, Lionra's infringement allegations as to the '323 patent should be dismissed.  Lionra's efforts, through amendment, to avoid dismissal by adding ambiguity do not work.  *See id.* at 1357.

Furthermore, because the lack of an intervening processing device was the alleged point of novelty during prosecution, some courts have required "a higher level of detail in pleading infringement."  *See, e.g., Vervain, LLC*, 2022 WL 23469, at *5.  In *Vervain*, the court dismissed a complaint that simply attached photos of the accused products and summarily alleged that each

limitation was met, including the limitation that lay at the point of novelty.  The *Vervain* court reasoned that: "[a] plaintiff cannot establish why it is plausible that the accused product infringes the patent claim, by merely articulating why it is plausible that the accused product practices the prior art.  Pleading only the latter begs the obvious alternative explanation that the accused infringer is merely practicing the prior art."  *Id*. (citing *Bot M8*, 4 F. 4th at 1353).

The same reasoning applies here.  Lionra cannot plausibly plead infringement when the documents it cites show that Defendants are practicing the prior art.  *See id*.  For example, here, (under at least one theory) Lionra accuses the switches themselves of being connected.  This configuration is the same as the prior art Mukhurjee reference that the applicant distinguished.  In Mukhurjee, the "host machines 22" (which included ASIC devices 24) were connected and the applicant argued that the host machines 22 were the intervening processing device.  Ex. B (Nov. 1, 2010 Amendment and Remarks) at 20–21.  Similarly, here, within each Accused Switch, the fabric cards are intervening processing devices between each of the line cards, i.e., ASIC devices.

Any further amendment by Lionra, moreover, would be futile.  Lionra cannot escape what the documents show.  Lionra has twice presented this Court with documents that it has represented show the operation of the accused device.  It cannot now take back those representations and attempt to refer to different documents that lack the images that contradict the patent. As explained multiple times, instead of adding clarity to its infringement allegations, Lionra has attempted to remove detail in its Amended Complaint, but the same contradictions still exist.  Lionra has therefore "pleaded itself out of court" for the second time.  *Id.*  Defendants therefore respectfully request dismissal of Count 2 as to the '323 patent with prejudice.

## V.   CONCLUSION

For the reasons above, Defendants respectfully ask that the Court hold that Lionra failed to state a claim as to the '323 patent and dismiss Count 2 of the Amended Complaint with prejudice.

15

Date: December 2, 2022

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Mark N. Reiter*
Veronica Smith Moyé (24000092)
VMoye@gibsondunn.com
Mark N. Reiter (16759900)
mreiter@gibsondunn.com
Ashbey N. Morgan (24106339)
anmorgan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
Telephone: (214) 698-3100
Facsimile: (214) 571-2900

**HALTOM & DOAN**

Jennifer Haltom Doan
jdoan@haltomdoan.com
Kyle Randall Akin
kakin@haltomdoan.com
6500 Summerhill Road
Crown Executive Center Suite 100
Texarkana, Tx 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800

*Attorney for Defendants Hewlett Packard
Enterprise Company and Aruba Networks,
LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2022, the foregoing was electronically in compliance with Local Rules and served via the Court's electronic filing system on all counsel who have consented to electronic service.

*/s/ Mark N. Reiter*
**Mark N. Reiter**

17