**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LIONRA TECHNOLOGIES LIMITED <br><br> v. <br><br> FORTINET, INC. | CASE NO. 2:22-cv-00322-JRG-RSP <br> (Lead Case) |
| LIONRA TECHNOLOGIES LIMITED <br><br> v. <br><br> CISCO SYSTEMS, INC. | CASE NO. 2:22-cv-00305-JRG-RSP <br> (Member Case) |
| LIONRA TECHNOLOGIES LIMITED <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY, et al. | CASE NO. 2:22-cv-00319-JRG-RSP <br> (Member Case) |
| LIONRA TECHNOLOGIES LIMITED <br><br> v. <br><br> PALO ALTO NETWORKS, INC. | CASE NO. 2:22-cv-00334-JRG-RSP <br> (Member Case) |

**<u>DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.    FACTUAL BACKGROUND ...................................................................................2

        A.    The Accused Products Have Historically Been Developed by HPE or Its
Predecessor Company. .............................................................................................2

        B.    Aruba Networks, LLC Plays No Role in the Development and
Management of the Accused Products. .....................................................................3

        C.    The Relevant Witnesses and Evidence Are Located in or Near EDCA—
Not in Texas. ............................................................................................................4

III.    LEGAL STANDARDS ...........................................................................................6

IV.    ARGUMENT ...........................................................................................................6

        A.    This Action Could Have Been Brought in EDCA. .....................................................6

        B.    The Private Factors Weigh Strongly in Favor of Transfer. ......................................7

                1.    Physical Sources of Proof Are in EDCA. ....................................................7

                2.    Key Third-Party Witnesses Are Within EDCA's Subpoena Power. ...........9

                3.    EDCA Is More Convenient for Willing Witnesses.....................................11

                4.    Other Practical Considerations Are at Worst Neutral...............................13

        C.    EDCA's Localized Interest Strongly Favors Transfer............................................14

V.    CONCLUSION......................................................................................................15

██████████████████████████████

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ..................................................................................9

*In re Apple*,
  No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022) ..................................14

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
  No. 4:13-CV-705, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015).................................12

*In re DISH Network L.L.C.*,
  No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021).....................................13

*Farmobile LLC v. Farmer's Edge*,
  No. 2:21-cv-411, 2022 WL 2653893 (E.D. Tex. July 7, 2022) ........................7, 8, 9

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)..............................................................................7, 9, 11

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
  No. 2:17-cv-00100-JRG-RSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017).......................8

*In re Google LLC*,
  No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ..................................15

*In re Hoffman-La Roche, Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009).............................................................................9, 13

*In re HP Inc.*,
  826 F. App'x 899 (Fed. Cir. 2020) ..........................................................................15

*Jawbone Innovations, LLC v. Amazon.com, Inc. et al.*,
  No. 2:21-cv-435, Dkt. No. 60, slip op. (E.D. Tex. Sept. 21, 2022) ........................12

*Jawbone Innovations, LLC v. Samsung Elecs. Co.*,
  No. 2:21-cv-186-JRG-RSP, 2022 WL 4004195 (E.D. Tex. Aug. 31, 2022)...........12

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ................................................................................15

*Kleiner v. Southwest Airlines Co.*,
  No. 5:08-cv-218, 2008 WL 4890590 (W.D. Tex. Nov. 4, 2008) .............................10

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)..................................................................................6

███████████████████████████████████████████████

**TABLE OF CITATIONS (*continued*)**

**Page(s)**

*Omni MedSci Inc. v. Apple Inc.*,
    No. 2:18-cv-00429-RWS, Dkt. No. 163, slip op. (E.D. Tex. Aug. 14, 2019) ........................10

*Oyster Optics, LLC v. Coriant Am. Inc.*,
    No. 2:16-CV-1302, 2017 WL 4225202 (E.D. Tex. Sept. 22, 2017).......................................15

*Roberts v. Paris Regional Med. Center*,
    No. 2:18-cv-191-JRG-RSP, 2018 WL 4221861 (E.D. Tex. Sept. 5, 2018).......................9, 10

*In re Samsung Elecs. Co., Ltd.*,
    2 F.4th 1371 (Fed. Cir. 2021) .........................................................................................13, 14

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).................................................................................................6

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................................6, 7, 10

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    No. 2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ....................................7

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................................2

**Other Authorities**

https://www.arubanetworks.com/company/contact-us/ ...................................................................4

████████████████████████████████████████ .................................................................8

https://www.hpmuseum.net/divisions.php?did=15.........................................................................3

**Rules**

Fed. R. Civ. P. 45(c)(1)(A)–(B)......................................................................................................9

Fed. R. Civ. P. 45(c)(1)(B)(ii)......................................................................................................10

## I.       INTRODUCTION

Roseville, California, which sits in the Eastern District of California, has long been home to the products—and the personnel responsible for those products—that Plaintiff Lionra Technologies Limited ("Lionra") accuses of infringing the two asserted patents in this case. Defendant Hewlett Packard Enterprise Company ("HPE") inherited that facility, and the products originating out of that facility, in 2015 when Hewlett Packard Company split into HPE and Hewlett Packard, Inc.  In fact, since the 1980s, senior management, technical engineers and marketing and finance personnel responsible for the types of products accused—networking products—have all worked out of Roseville, California.  Although some management and engineering occurs nearby in the Bay Area of the Northern District of California, Roseville continues to serve as the center for HPE's networking product teams.  Given this, with respect to the accused products, none of the teams responsible for those products resides or works in this District—or the State of Texas.

Defendant Aruba Networks, LLC ("Aruba") is a wholly owned subsidiary of HPE and is what remains of Aruba Networks, Inc., which was acquired by Hewlett Packard Company in 2015. Unlike HPE, Aruba does not design or manufacture products; it has less than 300 personnel spread around the country, including at least six associated with Roseville, the vast majority of whom are involved directly or indirectly in sales of products developed by HPE.  When it comes to the products accused in this case, the Aruba personnel look to Roseville for support and, in fact, travel to Roseville for training and to demonstrate products to potential customers.  As part of a national sales force, Aruba personnel in Texas hold no unique knowledge or information regarding the products accused.  That unique knowledge and information sits in Roseville.

Finally, as an Irish company, with no identified office or personnel in the United States, Lionra has no connection to this District.  Rather, Lionra acquired the asserted patents from two different original owners, one of whom is located in Europe, in the past year.

**DEFENDANTS' MOTION TO TRANSFER** – Page 1

This District has no connection to this case.  No witnesses, documents or physical evidence—nothing—is here.  Lionra could have and should have filed this case in the Eastern District of California ("EDCA").  HPE and Aruba thus respectfully request that the Court transfer this case to EDCA for the convenience of parties and witnesses pursuant to 28 U.S.C. § 1404(a).

## II.     FACTUAL BACKGROUND

### A.     The Accused Products Have Historically Been Developed by HPE or Its Predecessor Company.

Lionra asserts two patents against Defendants:   U.S. Patent No. 7,916,630 ("the '630 patent") and U.S. Patent No. 7,921,323 ("the '323 patent").   In its P.R. 3-1 Disclosure, Lionra alleges the following products infringe the '630 patent:  "CX 6200, 6300, 6400, 8320, 8325, 8360, 8400, 10000 switches and AOS-CX 10.08 or later."  Morgan Decl. Ex. 1 at 2.  With respect to the '323 patent, Lionra accuses the following:  "Aruba 5400R and 2930F, CX 6200, 6300M, 6300F, 6400, and 8000 (e.g., 83xx and 8400) Switch Series and ArubaOS-CX 10.00 or newer."  *Id.*  Each of these products (collectively, the "Accused Products") belongs to HPE's Aruba "Intelligent Edge" business unit.  Declaration of Scott Koster ("Koster Decl.") ¶ 2.  The products are generally referred to as networking products.  *Id.*

Although the Accused Products carry the "Aruba" brand, HPE (or its predecessor Hewlett Packard Company ("HP Company")) designed and developed, or managed the design and development, for the Accused Products.  Declaration of Mark Gooch ("Gooch Decl.") ¶¶ 5–6; Koster Decl. ¶ 8.  For example, HP Company released the accused Aruba 5400R in May 2014. Koster Decl. ¶ 8.  Thus, while HPE markets and sells the Accused Products with the "Aruba" brand, the research, development, and day-to-day product management of these products is done by the HPE networking group, primarily from its facility in Roseville, California.  *Id.* ¶¶ 4, 6–7, 9–10, 12–13, 16; Gooch Decl. ¶¶ 5, 12, 15.

Starting in the early 1980s, the center of HP Company's—and now HPE's—networking group has been Roseville.  Gooch Decl.¶ 5; Koster Decl.¶¶ 9-10; https://www.hpmuseum.net/divisions.php?did=15.   The HP Company networking group was previously called the Roseville Networks Division.  Gooch Decl. ¶ 5.  Roseville remains the center of HPE's networking group, which includes the ASIC, hardware, and software groups responsible for HPE's networking products.  Koster Decl. ¶¶ 9–10; Declaration of Chris Smith ("Smith Decl.") ¶ 12.

Roseville is home to 365 engineers and employees who work on the research and development of the networking products—this makes up approximately 65% of all U.S.-based engineers and employees who work on the networking products.  Koster Decl. ¶ 10.  The next largest concentration of U.S.-based engineers (121) responsible for these products is located nearby in San Jose, California.  *Id.*  Indeed, while Roseville is the center of these efforts, the majority of the U.S.-based HPE engineers and employees who have worked on the Accused Products are located in California.  For example, of the 563 U.S.-based engineers and employees who work on the research and development of the networking products, 498 are located in California.  *Id.*  Additionally, senior management for the networking products is concentrated in Roseville, and the president of the business unit is located in San Jose.  *Id.* ¶ 16; Gooch Decl. ¶¶ 5, 16.

**B.    Aruba Networks, LLC Plays No Role in the Development and Management of the Accused Products.**

Aruba is a wholly owned subsidiary of HPE.  Smith Decl. ¶ 4.  After HP Company acquired Aruba Networks, Inc. in 2015, HP Company was split into HPE and Hewlett Packard, Inc., with many of the former Aruba Networks, Inc. employees moving to HPE and becoming part of HPE's Aruba Intelligent Edge business.  *Id.*  Some employees remained with Aruba Networks, which is now Aruba Networks, LLC and employs 266 employees in the United States.  *Id.*  Aruba does not

design or manufacture products; rather, Aruba employees are involved directly or indirectly with the sales of HPE products, including products that are sold using the Aruba brand. *Id.* Aruba has no offices within the Eastern District of Texas. *Id.* ¶ 5.

Of the 266 Aruba employees in the United States, only seven were located in this District when the lawsuit was filed.[1] *Id.* ¶ 8. None of these employees is involved in the design, development, manufacturing, or product management of the Accused Products. *Id.* ¶ 10.

## C. The Relevant Witnesses and Evidence Are Located in or Near EDCA—Not in Texas.

As explained, Roseville is the epicenter of development and management for the Accused Products. The employees involved in, and most knowledgeable about, the design, research, development, function, and operation of the Accused Products are located in EDCA (Gooch Decl. ¶ 15; Koster Decl. ¶ 12), as are employees knowledgeable about the marketing and finances of the Accused Products. Koster Decl. ¶ 12. The senior management teams that make the day-to-day decisions regarding the Accused Products are located in Roseville, including several vice presidents. Gooch Decl. ¶¶ 5, 16. Additionally, nearby San Jose is the headquarters for the Aruba Intelligent Edge business unit of HPE. https://www.arubanetworks.com/company/contact-us/.

Specific to this case, the asserted claims of the '323 patent require multiple signal processing circuits, with each signal processing circuit including multiple ASIC devices. *See, e.g.*, Dkt. No. 53-3, '323 patent, Cl. 27 ("A communications infrastructure, comprising two or more separate signal processing circuits, each one . . . including multiple ASIC devices."). ████████ designed the ASICs used in the accused CX 8400, CX 8320, CX 8325, and CX 10000 products and ██████████████████████. Gooch Decl. ¶ 8. Similarly, ██████████████████████

---

[1]  Since the filing date, one employee has moved outside of the District. Smith Decl. ¶ 8 n.3.

█████████████████████████████████████████████████████████████

████████████, designed the overall architecture for the CX 10000, which is manufactured by

████████████████████████████████.  *Id.* ¶ 10.  In addition to the Roseville and Bay Area HPE

employees who worked on these products (*Id.* ¶¶ 5, 12, 15; Koster Decl. ¶¶ 4, 6–7, 9–10, 12–13,

16), the employees from ████████████████████ with whom HPE interacts are located in the Bay

Area, as is the employee from ████████████████████████, the company that designed the

architecture for the CX 8320 and CX 8325.  Gooch Decl. ¶¶ 8–10.  Likewise, HPE employees that

designed the ASICs and overall architecture of the accused 5400R, 2930F, and CX 6200, CX

6300M, CX 6300F, CX 6400, and CX 8360 switches are predominately from Roseville and the

Bay Area.  Gooch Decl. ¶ 7.

For the '630 patent, Lionra accuses a feature called "ERPS."  Morgan Decl. Ex. 1 at 13.

Scott Koster, a technical Product Line Manager located in Roseville, was responsible for the first

implementation of ERPS into an Accused Product.  Koster Decl. ¶ 17.

Physical sources of proof, including the hardware and software source code as well as

technical documents and design specifications, are located in Roseville.  Gooch Decl. ¶¶ 13–14.

Additionally, the Roseville facility includes multiple laboratories for designing, testing and

demonstrating networking products, including the Accused Products and the ProCurve 5300.  *Id.*

¶ 12; Koster Decl. ¶ 6.

By contrast, none of the design or development for the Accused Products takes place, or

has ever taken place, in the Eastern District of Texas.  Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 11,

16; Smith Decl. ¶¶ 10–12.  None of the employees most knowledgeable about the Accused

Products works or resides in this District.  Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 11, 16; Smith

Decl. ¶¶ 10–12.  And while HPE has an office in this District, that office has never been involved

in the research, design, or development of the Accused Products, nor has any other HPE office in Texas.  Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 11, 16.

Nor does Lionra—a foreign company based in Dublin, Ireland—have any connections to this District.  Dkt. No. 53, FAC ¶ 1.  Lionra does not make or sell any products that practice the asserted patents, and it acquired the asserted patents less than a year ago.  Dkt. No. 53, FAC ¶¶ 12, 23; Morgan Decl. Exs. 2, 3.

## III.   LEGAL STANDARDS

28 U.S.C. § 1404 allows a district court to transfer a case to any other district where it could have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice." The Fifth Circuit considers "private" and "public" factors in determining whether to grant a transfer under Section 1404(a).  The private factors are:  (1) the relative ease of access to evidence; (2) the availability of compulsory process; (3) the cost of attendance for willing witnesses; and (4) "all other practical problems that make a trial easy, expeditious and inexpensive."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").  The public factors are:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in the case; (3) the familiarity of the forum with the relevant law; and (4) the avoidance of conflicts-of-laws problems.  *Id.*  "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

## IV.   ARGUMENT

### A.   This Action Could Have Been Brought in EDCA.

Venue is proper in EDCA as to both HPE and Aruba.  HPE—through its office located at 8000 Foothills Boulevard, Roseville, CA 95747 (Koster Decl. ¶ 5; Gooch Decl. ¶ 4)—has a regular

and established place of business in EDCA.  Aruba, with six employees associated with the Roseville office (Smith Decl. ¶ 13), also has a regular and established place of business in EDCA.

**B.      The Private Factors Weigh Strongly in Favor of Transfer.**

       **1.      Physical Sources of Proof Are in EDCA.**

This factor focuses on where sources of proof such as documents, source code and other physical evidence are located. *Volkswagen II*, 545 F.3d at 314; *Farmobile LLC v. Farmer's Edge*, 2022 WL 2653893, at *2–3 (E.D. Tex. July 7, 2022).  As the Federal Circuit has repeatedly recognized, "the bulk of the relevant evidence usually comes from the accused infringer," particularly where, like here, the plaintiff is a foreign entity who does not make or sell any products and only acquired the asserted patents a year ago. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Wireless Recognition Techs. LLC v. A9.com, Inc.*, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012) ("[T]he Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analyses.").  "Notwithstanding well-known advances in technology and the digitization of data, courts nonetheless continue to consider the relevance and importance of the physical location of these sources." *Farmobile*, 2022 WL 2653893, at *2.

Roseville is—and always has been—the hub of activity for the research, development, and management of the Accused Products and therefore is home to many physical sources of proof. Laboratories for research and development work associated with the Accused Products span almost one-and-a-half floors of the Roseville facility. Koster Decl. ¶ 6; Gooch Decl. ¶ 12.  Engineers and other employees use the equipment in these laboratories to perform testing of prototypes and other products.  Koster Decl. ¶ 6.  In addition to R&D work, sales personnel (from both HPE and

Aruba) often travel to these labs in Roseville to demonstrate the products for customers and for training. Smith Decl. ¶ 12. Moreover, although employees use electronic repositories to store documents, to the extent there are physical documents related to the Accused Products, including technical documentation and research and development documents, they are located in Roseville. Koster Decl. ¶ 6.

Other relevant, physical sources of proof are also located in Roseville, including (1) the software and hardware source code for the Accused Products; (2) technical documents for the Accused Products; and (3) the source code and technical documentation for the ProCurve 5300 switch, including the physical switch itself.[2] Gooch Decl. ¶¶ 14–15; *see also Farmobile*, 2022 WL 2653893, at *2.

Relevant third-party discovery is also located near EDCA. For example, the accused CX 8400 uses ASICs designed by ██████████████████████████████ *Id.* ¶ 9; ████████████████████████████████. The ██████ team that supports the architecture for that Accused Product is located in the Bay Area. Gooch Decl. ¶ 9. Similarly, the hardware architecture of the CX 10000 was primarily designed by ██████, and the employees responsible are located in the Bay Area. *Id.* ¶ 11. The CX 10000 is also ████████████████ ██████████████████. Discovery from these third parties will be more accessible from EDCA than this District. *See Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017) (finding that interactions with third parties involved in the design and manufacturing of accused products is "particularly compelling").

Finally, Defendants are unaware of any physical sources of proof that are located within this District. None of the design and development of the Accused Products has taken place in this

---

[2]  The ProCurve 5300 is prior art to the '323 patent.

District.  Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 10, 15; Smith Decl. ¶¶ 10–12.  Moreover, Lionra, with its headquarters in Ireland, has no presence in this District.  FAC ¶ 1.

The presence of multiple sources of proof in or near EDCA combined with the absence of any sources of proof within this District weighs heavily in favor of transfer.  *See Farmobile*, 2022 WL 2653893, at *3.

### 2.   Key Third-Party Witnesses Are Within EDCA's Subpoena Power.

The second private factor also weighs in favor of transfer because EDCA has subpoena power over relevant non-party witnesses.  "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses [than the transferor district]."  *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013); *see also In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d at 1345.  A district court's subpoena power extends to:  (1) a witness that lives or works within 100 miles of the courthouse, (2) a party or a party's officer that lives or works within the state, and (3) a non-party witness who similarly resides or works in the state so long as his or her attendance would not result in "substantial expense."  Fed. R. Civ. P. 45(c)(1)(A)–(B).

EDCA would have absolute subpoena power over several relevant third-party witnesses who work within 100 miles of the Eastern District of California courthouse in Sacramento.[3]  As discussed above, employees from at least three third-party companies that develop or manufacture the Accused Products are located in the Bay Area, including ███████████████████.  Gooch Decl. ¶¶ 9–11.  The ██████ team responsible for the CX 8400 switch was initially led by ███████████ and is now led by ██████████.  According to LinkedIn, ██████ is in

---

[3]  "As the crow flies," the distance between San Jose to Sacramento is approximately 88 miles, and the distance between San Francisco and Sacramento is approximately 78 miles.  Morgan Decl. ¶¶ 10–11.  *Roberts v. Paris Reg. Med. Center*, 2018 WL 4221861, at *4 (E.D. Tex. Sept. 5, 2018).

██████████████████████████████████████████████

Sunnyvale, and ██████████ is in San Jose.  Morgan Decl. ¶¶ 5–6.  Similarly, the hardware director from ██████ responsible for the design of the CX 10000—████████—is located in the Bay Area.  Gooch Decl. ¶ 11; Morgan Decl. ¶ 7.  And ██████, the ██████ product manager responsible for ███████████████████, is located in San Mateo. Gooch Decl. ¶ 11; Morgan Decl. ¶ 8.

Given the proximity of the Bay Area to the courthouse in Sacramento, it is likely that several of these witnesses would be subject to EDCA's absolute subpoena power.  And even if they fell outside of EDCA's absolute subpoena power, they would still be subject to EDCA's compulsory power because travelling from the Bay Area to EDCA is unlikely to incur substantial expense.  Fed. R. Civ. P. 45(c)(1)(B)(ii); *Roberts*, 2018 WL 4221861, at *4–5.  Because these witnesses live and work in California, they would not be subject to EDTX's compulsory power.

In addition to the entities directly involved in the design and manufacturing of the Accused Products, given that the design and development activities have always been concentrated in Roseville, "[i]t is foreseeable that a number of former [] officers and employees, many of whom likely reside in or near [Roseville], may be called upon to testify."  *See Kleiner v. Southwest Airlines Co.*, 2008 WL 4890590, at *4 (W.D. Tex. Nov. 4, 2008).  The potential for testimony from former officers and employees is even greater here because Lionra has accused products that were released as early as May 2014, and development work started at least by 2011.  Koster Decl. ¶ 8; Gooch Decl. ¶ 7.

This factor strongly favors transfer.  *See Omni MedSci Inc. v. Apple Inc.*, No. 2:18-cv-00429-RWS, Dkt. No. 163, slip op. at 6 (E.D. Tex. Aug. 14, 2019) ("The number and relevance [of] witnesses in California greatly outweighs that of the possible . . . witnesses located in Texas, and thus, this factor weighs in favor of transfer."); *see also Volkswagen II*, 545 F.3d at 316.

### 3.    EDCA Is More Convenient for Willing Witnesses.

"The convenience of the witnesses is probably the single most important factor in [a venue] transfer analysis." *In re Genentech*, 566 F.3d at 1343.  Because Roseville has been the long-standing hub for the networking division, the employee-witnesses most knowledgeable about the Accused Products are located in or near Roseville, and more generally, the Bay Area.  For example, at least 13 knowledgeable witnesses are located in Roseville:

- **Scott Koster** (Manager – PLM):  product management of the Accused Products and knowledge of ERPS255 (Koster Decl. ¶¶ 3–5);
- **Ed Kurata** (Product Line Manager):  technical product management of the Accused Products (*id.* ¶ 12);
- **Steve Brar** (Director for Product Marketing):  marketing of the Accused Products (*id.*);
- **Sue Gillespi (**Global Product Manager):  marketing of the Accused Products (*id.*);
- **Keith Nham** (Strategic Finance):  finances, sales, and revenue for the Accused Products (*id.*);
- **Mark Gooch** (Distinguished Technologist):  knowledge of the Accused Products, including the ASICs used in the Accused Products, as well as prior art products such as the ProCurve 5300 (Gooch Decl. ¶¶ 3–4);
- **Keith Richardson** (R&D Switch Development Manager):  development and design of the CX 8320 and CX 8325 (*id.* ¶ 15);
- **Michael Patmon** (Distinguished Technologist):  test engineer with responsibility over the Roseville test lab, including the 5300 switch and the Accused Products (*id.*);
- **Norbert Vicente** (R&D Solution Architect):  maintenance and storage of the software source code (*id.*);
- **Joseph Gleason** (ASIC Design Engineer):  maintenance and storage of the hardware source code and the HPE-designed ASICs used in some of the Accused Products (*id.*);
- **Frank Reichstein** (Senior Director of Software Engineering):  development and design of ArubaOS-CX and ArubaOS-Switch operating systems (*id.*);
- **Joe Curcio** (ASIC Engineering Manager):  lead packet forwarding engineer for the CX 6200, CX 6300M, CX 6300F, and CX 6400 (*id.*); and
- **Jacky Chang** (Senior Distinguished Engineer):  hardware systems and board designs for the Accused Products (*id.*).

For all of these witnesses, travel from the Roseville office to the Eastern District of California courthouse in Sacramento is approximately 30 minutes.  Morgan Decl. ¶ 9.  To travel to Marshall,

the witnesses would have to travel approximately 1,900 miles, which would be expensive, inconvenient and disruptive to business. *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 2015 WL 123852, at *6 (E.D. Tex. Jan. 7, 2015) (finding the additional travel time for employee-witnesses would be disruptive to the party's business).   Lionra does not "share this concern" because it has no office in the United States.  *See id.*

The convenience of witnesses who are outside of the transferee forum is also considered under this factor.  *See Jawbone Innovations, LLC v. Amazon.com, Inc. et al*., No. 2:21-cv-435, Dkt. No. 60, slip op. at 12–13 (E.D. Tex. Sept. 21, 2022) (finding that the employee-witnesses in Seattle "would have more convenient travel from Seattle to the NDCA than to the EDTX"); *see also Jawbone Innovations, LLC v. Samsung Elecs. Co.*, 2022 WL 4004195, at *4 (E.D. Tex. Aug. 31, 2022) (discussing convenience of witnesses located outside of the proposed transferee district and EDTX).  Witnesses with knowledge of the Accused Products located near Roseville include:

- **Eric Pelletier** (Fellow):  knowledge regarding the hardware architecture for the CX 8400, CX 8320, CX 8325, and CX 10000 (Gooch Decl. ¶¶ 9–11);
- **Val Oliva** (Product Line Manager):  product management of the CX 83xx and CX 8400 switches (Koster Decl. ¶ 13);
- **Anup Mehta** (Product Line Manager):  product management of the CX 6300 switches (*id.*);
- **Todd McDole** (Director-PLM):  product management of the CX 10000 switch (*id.*); and
- **Rayan Fakhro** (Senior Product Marketing Manager):   product management and marketing of one or more of the Accused Products (*id.*).

For these five witnesses—all of whom work and reside in California—travel to the Eastern District of California courthouse in Sacramento would be far more convenient than travel to Marshall.  In fact, many of these witnesses already regularly travel to the Roseville office, which is indicative of how easy this travel is.  *Id.* ¶ 18; Koster Decl. ¶ 14.

By contrast, none of the employee-witnesses is located in this District or Texas.  Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 10, 15; Smith Decl. ¶¶ 10–12.  None of the design or development

of the Accused Products has ever taken place in this District or Texas.  Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 10, 15; Smith Decl. ¶¶ 10–12.   None of the product management occurs in Texas, including from HPE's Texas offices.  Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 10, 15; Smith Decl. ¶¶ 10–12.

The Aruba employees located in this District are involved in sales of HPE products, including products not accused in this case.  Smith Decl. ¶ 10.  These products, however, are sold nationwide; that sales personnel are located in this District does not give rise to a substantial interest in this District.  *In re Hoffman-La Roche*, 587 F.3d at 1338.  Neither HPE nor Aruba has centralized sales teams; there is no sales team with particular knowledge in this District or EDCA.

At bottom, Defendants are unaware of a single relevant (willing or not) witness located in this District, which strongly favors transfer to EDCA.

### 4.    Other Practical Considerations Are at Worst Neutral.

While this suit has been consolidated with three other suits filed by Lionra in this District, this case involves only two patents compared to the five total that are asserted across the four cases; it also involves different defendants and different products with different hardware and different software.  The Federal Circuit "has rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor." *In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (collecting cases). Particularly where, like here, the other factors favor transfer, any judicial economy that may be gained by keeping the cases together is minimal and cannot outweigh the benefits of transfer.  *See id.* at *4 ("Applying the same analysis we applied in *Samsung* here requires that we conclude that any judicial economy considerations in keeping this case in Texas are insufficient to outweigh the clear benefits of transfer in light of the imbalance in the parties' respective presentations on the other private-interest and public-interest factors."); *see also In re Samsung Elecs. Co., Ltd.*, 2 F.4th

1371, 1380 (Fed. Cir. 2021) ("[T]he incremental gains in keeping these cases in [the district] simply are not sufficient to justify overriding the inconvenience to the parties and witnesses.").

Moreover, the Court only recently held the Case Management Conference, and the Court has not invested significant resources in the merits of the case. Thus, to the extent there is any judicial economy to be gained from the co-pending cases, given the infancy of the case, it is minimal and more administrative than substantive.

## C.    EDCA's Localized Interest Strongly Favors Transfer.

The second public interest factor—localized interest—strongly favors transfer. As explained above, EDCA has a significant connection to the events giving rise to the suit—HPE designed and developed, or managed the design and development of, the Accused Products in Roseville. *In re Apple*, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022); *In re Samsung*, 2 F.4th at 1380. Employees with relevant information about the Accused Products are based in EDCA or close to it; additionally, senior management with responsibility over the Accused Products are also located in Roseville or San Jose. Gooch Decl. ¶¶ 15–16; Koster Decl. ¶ 11. The Accused Products are currently tested and demonstrated from laboratories in Roseville. Gooch Decl. ¶ 13; Koster Decl. ¶¶ 6, 14. And while HPE has an office in this District, that office has never been involved in the research, design, or development of the Accused Products, nor has any other HPE office in Texas. Gooch Decl. ¶ 17; Koster Decl. ¶¶ 7, 10, 15. HPE's unrelated presence in the District does not offset EDCA's substantial localized interest stemming from the decades-long research and development efforts in Roseville. *In re Apple*, 2022 WL 1676400, at *2 (finding the district court's reliance on the defendant's in-district offices "amount[ed] to a clear abuse of discretion" when the offices had no connection to the accused products).

By contrast, Lionra—a foreign defendant headquartered in Dublin, Ireland—has *no* connection to Texas, much less the Eastern District of Texas. Lionra has no offices or employees

within this District or the United States.  With Defendants' strong ties to EDCA and Lionra's lack of ties to this District, this factor weighs in favor of transfer.  *See Oyster Optics, LLC v. Coriant Am. Inc.*, 2017 WL 4225202, at *8 (E.D. Tex. Sept. 22, 2017) (finding local interest factor favors transfer when defendant has facilities in the transferee forum and plaintiff has no employees or facilities within the District and its place of business is in Virginia); *In re HP Inc.*, 826 F. App'x 899, 902 (Fed. Cir. 2020) ("Given this suit was brought by a foreign plaintiff, HP's presence in the transferee venue, and no readily apparent connection with the Eastern District of Texas, we conclude that this is [a case where the district court abused its discretion].").

The first, third, and fourth factors are largely neutral as both districts are familiar with patent law and have active dockets.  Indeed, with respect to the first factor, the administrative difficulties flowing from court congestion, the Federal Circuit has repeatedly held that the speed at which a case may proceed is largely speculative and "insufficient to warrant keeping th[e] case in the Texas forum given the striking imbalance favoring transfer based on the other factors." *In re Google LLC*, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021).  Moreover, because Lionra does not make or sell any products that practice the asserted patents, it cannot "suggest it is [in] need of a quick resolution because its position in the market is being threatened," thereby minimizing any weight that can be attributed to the court congestion factor.  *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021).

On balance, all of the private factors and one of the public factors—localized interested—strongly favors transfer, and the rest of the public factors are neutral.  Accordingly, this Court should transfer this case to EDCA pursuant to Section 1404.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the motion and transfer this case to the Eastern District of California.

**DEFENDANTS' MOTION TO TRANSFER** – Page 15

Dated:  December 2, 2022

By:  */s/ Mark N. Reiter*
Veronica Smith Moyé
Texas State Bar No. 24000092
vmoye@gibsondunn.com
Mark N. Reiter
Texas State Bar No. 16759900
mreiter@gibsondunn.com
Ashbey N. Morgan
Texas State Bar No. 24106339
anmorgan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Ave., Suite 2100
Dallas, TX  75201-6912
Telephone:  214.698.3360
Facsimile:  214.571.2907

**HALTOM & DOAN**
Jennifer Haltom Doan
jdoan@haltomdoan.com
Kyle Randall Akin
kakin@haltomdoan.com
6500 Summerhill Road
Crown Executive Center, Suite 100
Texarkana, TX  75503
Telephone:  903.255.1000

ATTORNEYS FOR DEFENDANTS
HEWLETT PACKARD ENTERPRISE
COMPANY AND ARUBA NETWORKS, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

*/s/ Mark N. Reiter*
Mark N. Reiter

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h).  On December 1, 2022, Mark Reiter, counsel for Defendants, spoke with Plaintiff's counsel Brett Cooper concerning the relief requested herein.  At that time, Plaintiff's counsel indicated that Plaintiff opposes this motion.

*/s/ Mark N. Reiter*
Mark N. Reiter

**DEFENDANTS' MOTION TO TRANSFER – Page 17**