**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LIONRA TECHNOLOGIES LTD., <br><br> v. <br><br> FORTINET, INC., | ██████████████ <br><br> Case No.  2:22-cv-00322-JRG-RSP <br><br> (Lead Case) <br><br> **JURY TRIAL DEMANDED** |
| LIONRA TECHNOLOGIES LTD., <br><br> v. <br><br> CISCO SYSTEMS, INC., | Case No.  2:22-cv-00305-JRG-RSP <br><br> (Member Case) |
| LIONRA TECHNOLOGIES LTD., <br><br> v. <br><br> PALO ALTO NETWORKS, INC., | Case No.  2:22-cv-00334-JRG-RSP <br><br> (Member Case) |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**TO ENFORCE *SOTERA* STIPULATIONS (IPR ESTOPPEL)**

### TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF UNDISPUTED FACTS ........................................................ 2

    A.   IPR Timeline ............................................................................................ 2

    B.   Defendants' Invalidity Defenses ............................................................. 4

        1.   '436 and '612 Patents................................................................ 4

        2.   '323 Patent ............................................................................... 5

    C.   Defendants' Experts Reliance on Printed Publications ......................... 5

III.   STATEMENT OF ISSUES TO BE DECIDED .............................................. 6

IV.   LEGAL STANDARD........................................................................................ 6

    A.   Summary Judgment ................................................................................ 6

    B.   IPR Estoppel ........................................................................................... 7

V.    ARGUMENT .................................................................................................... 9

    A.   The '436 and '612 Patents ..................................................................... 10

        1.   ██████████████████ ..................................................... 11

        2.   ████████████████ .......................................................... 13

        3.   ███████████████ ............................................................. 14

    B.   The '323 Patent ...................................................................................... 15

        1.   ████████████████ .......................................................... 15

        2.   ███████████████████ ...................................................... 15

VI.    CONCLUSION............................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................. 6

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-CV-1015, 2017 WL 2526231 (E.D. Tex. May 11, 2017)................................... 7, 8, 9

*Boston Sci. Corp. v. Cook Grp. Inc.*,
  653 F. Supp. 3d 541 (S.D. Ind. 2023) ................................................................... 8, 9

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
  No. CV 16-3714 GW, 2018 WL 7456042 (C.D. Cal. Dec. 28, 2018)...................................... 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................ 7

*Geiserman v. MacDonald*,
  893 F.2d 787 (5th Cir. 1990)............................................................................... 7

*Hafeman v. LG Elecs., Inc. et al.*,
  No. 6-21-cv-00696, 2023 WL 4362863 (W.D. Tex. Apr. 14, 2023) ..................................... 8

*Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*,
  No. 15 C 1067, 2019 WL 861394 (N.D. Ill. Feb. 22, 2019) ............................................. 8

*Star Envirotech. Inc. v. Redline Detection, LLC*,
  No. SACV 12-01861, 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015)....................................... 8

*Vaporstream, Inc. v. Snap, Inc.*,
  No. 2:17-cv-00220, 2020 WL 136591 (C.D. Cal. Jan. 13, 2020) ....................................... 8

*Wasica Fin. GmbH v. Schrader International, Inc.*,
  432 F. Supp. 3d 448 (D. Del. 2020) ................................................................ 8, 9, 10

*Wirtgen America, Inc. v. Caterpillar, Inc.*,
  No. 1:17-cv-00770, 2024 WL 51010 (D. Del. 2024)...................................................... 9

**Statutes**

35 U.S.C. § 102.............................................................................................. 4

iii

35 U.S.C. § 103 ...................................................................................................... 4

35 U.S.C. § 315(e)(2) ............................................................................................ 7

35 U.S.C § 315(b) .................................................................................................. 3

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................. 6

**Other Authorities**

37 C.F.R. 1.14(a)(1)(v) ......................................................................................... 12

Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2002)

(codified at 37 C.F.R. pt. 42) ........................................................................... 7

S. Rep. No. 110–259 (2008) ................................................................................. 7

## I.    INTRODUCTION

Plaintiff Lionra Technologies Limited has asserted that Defendants Fortinet, Inc., Cisco Systems, Inc., and Palo Alto Networks, Inc. infringe certain claims of U.S. Patent Nos. 7,685,436 ("the '436 Patent") and 8,566,612 ("the '612 Patent"). Lionra has also asserted that Cisco infringes certain claims of U.S. Patent No. 7,921,323 ("the '323 Patent").

Cisco filed IPRs on all three patents, which have been instituted. Fortinet and Palo Alto jointly filed two IPRs and seek to join Cisco's IPRs on the '436 and '612 patents. The Patent Trial and Appeal Board (PTAB) will decide whether to grant joinder and institution with respect to Fortinet and Palo Alto's petitions by May 22, 2024.

In their assertions of invalidity in this Court, all three Defendants claim to rely on "system art" to avoid what they have raised or could have raised in their IPRs:



- With respect to the '436 and '612 Patents, all three defendants rely on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Cisco and Fortinet also point to an additional product, ▮▮▮▮▮▮▮ and Cisco also relies on ▮▮▮▮▮▮▮▮▮▮▮▮▮.
- With respect to the '323 Patent, Cisco relies on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Various experts testifying on behalf of Defendants have acknowledged that their opinions are based on publicly available documents describing the various products, and not any operation or testing of a physical device that they conducted, to arrive at their conclusions regarding anticipation and obviousness. Defendants' attempt in this Court to disguise printed publications as "system art" should be rejected. Because invalidity based on these printed publications about the products could have been raised in the IPRs, the so-called "system art" invalidity grounds are

subject to IPR estoppel through the Defendants' *Sotera* stipulations. This Court should therefore grant Lionra's motion for partial summary judgment barring the Defendants from asserting their invalidity defense based on anticipation or obviousness based on IPR estoppel.

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   IPR Timeline

1.     The Defendants have each requested *inter partes* review with the PTAB on the asserted patents.

2.     Cisco filed IPRs on the '436 Patent and '612 Patent (Nos. IPR2023-00673 and IPR2023-00703, respectively) (collectively, the "Cisco IPRs") on March 9, 2023. *See* Dkt Nos. 132, 133.  These IPRs were instituted on October 18, 2023. *See* Ex. 1, IPR2023-00673, Paper 9, *Institution Decision*; Ex. 2, IPR2023-00703, Paper 8, *Institution Decision*. Cisco filed an IPR on the '323 Patent (IPR2023-01047) on June 12, 2023, which was instituted on January 19, 2024. *See* Ex. 3, IPR2023-01047, Paper 11, *Institution Decision*.

3.     Cisco filed a *Sotera* stipulation in this Court and with the PTAB that states: "Defendant stipulates that if the PTAB institutes IPR on the ground presented in the petition, Petitioners will not pursue in the co-pending district court litigation the specific ground asserted in the petition, or any other ground that was raised or could have been reasonably raised in an IPR (i.e., grounds that could have been raised under §§ 102 or 103 on the basis of prior art patent or printed publications)." *See, e.g.*, Dkt Nos. 128 ('323 Patent), 132 ('436 Patent), and 133 ('612 Patent).

4.     Fortinet and Palo Alto jointly filed IPR petitions on the '436 Patent and '612 Patent on November 9, 2023:  IPR2024-00099 for the '436 Patent and IPR2024-00158 for the '612 Patent. Ex. 4, IPR2024-00099, Paper 1, *Petition;* Ex. 5, IPR2024-00158, Paper 1, *Petition*. Because Fortinet and Palo Alto filed their IPR petitions more than one year after the filing of the present

case, they faced a statutory bar under 35 U.S.C. § 315(b) and could only "piggyback" the Cisco IPR. Therefore, Fortinet and Palo Alto moved to join the Cisco IPRs. *See* Ex. 6, IPR2024-00099, Paper 4, *Motion for Joinder*; Ex. 7, IPR2024-00158, Paper 4, *Motion for Joinder*.

5.     In their IPR Petitions, Fortinet and Palo Alto each stated that "if the present proceeding is instituted and joined with the Cisco IPR, it will 'not pursue in the co-pending district court litigation the specific ground asserted in the petition, or any other ground that was raised or could have been reasonably raised in an IPR (i.e., grounds that could have been raised under §§ 102 or 103 on the basis of prior art patent or printed publications).'" *See, e.g.*, Ex. 4, IPR2024-00099, Petition at 75-76; Ex. 5, IPR2024-00158, Petition at 65. The PTAB will decide the joinder and institution by May 22, 2024.

6.     In connection with its motion for a stay, Fortinet subsequently filed a stipulation with this Court that was not contingent on joinder and institution: "Fortinet will not pursue in this district court litigation the specific grounds asserted in the IPR petitions it has moved to join, or any other ground that was raised or could have been reasonably raised in an IPR (i.e., grounds that could have been raised under §§ 102 or 103 on the basis of prior art patents or printed publications)." Dkt. No. 230.

7.     While Palo Alto's stipulation to be bound by its IPRs on the '436 Patent and the '612 Patent, and consequently this motion as to Palo Alto, is contingent upon institution of those IPRs and joinder with the Cisco IPRs, the PTAB will make that decision prior to Palo Alto presenting its invalidity defenses to the jury in the present case.

**B.    Defendants' Invalidity Defenses**

8.    Defendants have asserted the defense of invalidity of all of the asserted patents based on anticipation and obviousness under 35 U.S.C. §§ 102 and 103. *See* Dkt. Nos. 30 (Fortinet); 41 (Palo Alto); 121 (Cisco).

9.    Each defendant has proffered one or more expert witnesses to support their invalidity claims based on what they call "system art."

### 1.    '436 and '612 Patents

10.    Various defendants have asserted different so-called systems to support their invalidity arguments: (1) all of the Defendants rely on the ███████████████ ██████████████████████████████████████ (2) Cisco and Fortinet point to the ████████████████████ and (3) Cisco alone relies on ████████████████ ████████

11.    ████████████████. Palo Alto's technical expert, Dr. Bill Lin, opines that the asserted claims are obvious based on ████████████████████████████████████ ████████ *See* Ex. 8, Lin Rpt., ¶ 121. Fortinet's technical expert, Dr. Kevin Almeroth, also relies on what he calls ████████████████████████████████████████████ ███. *See* Ex. 9, Almeroth Rpt., ¶¶ 358-473. Cisco's technical expert, Dr. Kevin Jeffay, like the other two experts, asserts invalidity based on ████████████████████████. *See* Ex. 10, Jeffay Rpt., ¶¶ 119, 255-323.

12.    ████████████████. Cisco expert Dr. Jeffay has a separate opinion of invalidity based on ████████████████████████. Ex. 10, Jeffay Rpt. ¶¶ 122-189. Fortinet expert Dr. Almeroth also relies on ████████████████. Ex. 9, Almeroth Rpt., ¶¶ 203-357.

13.       ███████████████████████. Dr. Jeffay also opines that the asserted claims

are obvious based on ███████████████. Ex. 10, Jeffay Rpt. ¶¶ 190-254.

### 2.    '323 Patent

14.       With respect to the '323 Patent, asserted only against Cisco, its expert Dr. Tajana

Rosing relies on ████████████████████████████████████████████████████

████████████████████████████████████████████████████. Ex. 11, Rosing Rpt., ¶¶

113, 154.[1]

### C.    Defendants' Experts Reliance on Printed Publications

15.       For each of the so-called prior art systems at issue, identified by Defendants in their

February 10, 2023 Invalidity Contentions, Defendants' technical experts have relied on publicly

available documents to describe the operation of the products. Various experts either relied entirely

on publicly available documents describing the products or relied on a combination of public

documents and internal documents but testified that the publicly available documents on their own

rendered the Asserted Claims invalid. That is the case for each of the alleged system art:

███████ Ex. 13, Lin Dep. at 144:1-6, 145:19-24, 182:22-183:2; Ex. 8, Lin Rpt., Ex. A

at 6 n.8; Ex. 14, Jeffay Dep. 249:17-250:17, 255:15-25, 275:21-276:2; Ex. 15, Almeroth Dep.

32:23-34:19.

██████████ Ex. 14, Jeffay Dep. 194:16-195:6; Ex. 15, Almeroth Dep. 32:23-34:19.

██████████: Ex. 10, Jeffay Rpt., ¶¶ 190-254; Ex. 14, Jeffay Dep. 234:17-235:3.

---

[1] In her report, Dr. Rosing had presented opinions regarding ████████████████████████
████ *see* Ex. 11, Rosing Rpt., ¶¶ 80-112, and ██████████████████████████
██████████ *see id.*, ¶¶ 192-259, but after the institution of the '323
IPR and the Court's ruling on a motion for leave to amend invalidity contentions, these opinions were
withdrawn.  Ex. 12, February 5, 2024 email from A. Yang.

████████████████████: Ex. 11, Rosing Rpt., ¶¶ 114-153; Ex. 16, Rosing Dep. 17:19-23, 18:17-21, 19:15-19; Ex. 17, Cole '323 Rpt., ¶¶ 59, 67, 69, 75, 82, 91.

████████████████████: Ex. 11, Rosing Rpt., ¶¶ 155-191; Ex. 16, Rosing Dep. 35:9-13, 36:2-6, 36:10-15; Ex. 17, Cole '323 Rpt. ¶ 100, 102, 107, 113, 115, 121, 128, 137.

16.     The opinions of Defendants' technical experts about these "systems" do not rely on their operation or testing of the products. In fact, many of Defendants' technical experts testified that they had not operated or tested the products upon which they rely.[2] *See* Ex. 13, Lin Dep. 139:22-25, 140:16-18 ████████; Ex. 14, Jeffay Dep. 244:13-18; 247:11-16 ████████, 125:10-18, 133:15-17 ████████; Ex. 15, Almeroth Dep. 76:7-12 ████████, 77:4-7 ████████.

## III.     STATEMENT OF ISSUES TO BE DECIDED

Whether Defendants are estopped based on their *Sotera* stipulations from relying on publicly available documents that could have been asserted in IPR for their anticipation and obviousness defenses.

## IV.     LEGAL STANDARD

### A.     Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence could lead a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and

---

[2] Dr. Jeffay testified that ████████████████████████ However, he was unable to say ████████████████████████████ Ex. 14, Jeffay Dep. 239:24-14.

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once that showing is made, the nonmoving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323).

## B.     IPR Estoppel

The 2011 Leahy-Smith America Invents Act (AIA) created inter partes review as "a quick, inexpensive, and reliable alternative to district court litigation." S. Rep. No. 110–259, at 20 (2008). In service of these efficiency goals, the AIA includes an estoppel provision:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision . . . may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

35 U.S.C. § 315(e)(2).

This provision "seeks to protect patent owners from harassment via successive petitions by the same or related parties, to prevent parties from having a 'second bite at the apple,' and to protect the integrity of both the USPTO and Federal Courts by assuring that all issues are promptly raised and vetted." Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48759 (Aug. 14, 2002) (codified at 37 C.F.R. pt. 42). As a result, parties are generally estopped from later raising a reference that a "skilled searcher conducting a diligent search reasonably could have been expected to discover" in IPR. *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-1015, 2017 WL 2526231, at *6 (E.D. Tex. May 11, 2017).

Only patents and printed publications may be raised in IPRs and not physical products on the market. However, system art can—and often does—embody inventions disclosed in patents

7

and printed publications that could have been raised in an IPR. Courts in this and other districts have therefore held that a party is estopped from asserting "system" prior art if its "purported system prior art relies on or is based on patents or printed publications that [it] would otherwise be estopped from pursuing at trial." *See id.* at *8.

Many courts, including this one, recognize that "[w]here there is evidence that a petitioner had reasonable access to printed publications corresponding to or describing a product that it could have proffered during the IPR process, it cannot avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation." *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, No. 15 C 1067, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019); *see also Hafeman v. LG Elecs., Inc. et al.*, No. 6-21-cv-00696, 2023 WL 4362863, at *1 (W.D. Tex. Apr. 14, 2023) ("Although [Defendant] uses two system references—[Plaintiff's] Retriever product and Apple's Find My iPhone—for its invalidity argument that it could not raise before the PTAB, estoppel still applies when the allegedly new references have 'materially identical' disclosures as the IPR art."); *Boston Sci. Corp. v. Cook Grp. Inc.*, 653 F. Supp. 3d 541, 594 (S.D. Ind. 2023) (applying IPR estoppel where there was "no substantive difference" between the references raised in the litigation and in the IPR); *Wasica Fin. GmbH v. Schrader International, Inc.*, 432 F. Supp. 3d 448, 453-54 (D. Del. 2020) (where printed publication "discloses all of the relevant features" of the physical device, IPR estoppel applies); *Vaporstream, Inc. v. Snap, Inc.*, No. 2:17-cv-00220, 2020 WL 136591 (C.D. Cal. Jan. 13, 2020) ("[I]f a patent challenge is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' its prior art ground and "skirt' estoppel," then § 315(e)(2) estoppel still applies"); *Star Envirotech. Inc. v. Redline Detection, LLC*, No. SACV 12-01861, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015) (determining that IPR estoppel could extend to systems if the system was not a "superior and

separate reference" that disclosed features not included in the printed publication). As this Court has noted, the party asserting invalidity "should be estopped from presenting those patents and printed publications at trial." *Biscotti*, 2017 WL 2526231, at *8.

After the patent owner shows that "each and every material limitation present in the physical device is disclosed in the estopped reference," the defendant must then "point[] to a material limitation that is disclosed in the physical device that is *not* disclosed in the estopped reference." *Id.*; *see also Wirtgen America, Inc. v. Caterpillar, Inc.*, No. 1:17-cv-00770, 2024 WL 51010, at *10 (D. Del. 2024); *Boston Sci. Corp.*, 653 F. Supp. 3d at 594.

The policy animating these holdings is clear. "[F]or IPR to fulfill its mission of streamlining patent litigation . . . a petitioner cannot be left with the option to institute a few grounds for IPR while holding some others in reserve for a second bite at the invalidity apple once in the district court." *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714 GW, 2018 WL 7456042, at *6 (C.D. Cal. Dec. 28, 2018). A contrary rule would allow defendants to "simply swap out publications that were available through a diligent search with the same prior art, only in a slightly different format or in a version that could not have been found in a search (such as public white papers, presentations, and data sheets that were not widely circulated)." *Wasica*, 432 F. Supp. 3d at 455 n.7.

## V.    ARGUMENT

The *Sotera* stipulations filed in this Court by Cisco and Fortinet preclude each of their alleged "system art" invalidity theories, which are based on publicly available printed publications. For each asserted patent, Cisco has expressly stipulated that it "will not pursue in the co-pending district court litigation … any other ground that was raised or could have been reasonably raised in an IPR (i.e., grounds that could have been raised under §§ 102 or 103 on the basis of prior art patent or printed publications)." Dkt Nos. 128 ('323 Patent), 132 ('436 Patent), and 133 ('612

9

Patent). Likewise, Fortinet expressly stipulated that it "will not pursue in this district court litigation … any other ground that was raised or could have been reasonably raised in an IPR (i.e., grounds that could have been raised under §§ 102 or 103 on the basis of prior art patents or printed publications)." Dkt No. 230. And Palo Alto's stipulation will similarly apply if the PTAB grants its request to join the Cisco IPRs.

The statutory framework establishing IPR distinguishes "grounds" from "evidence," including individual "patents and printed publications." *See Wasica*, 432 F. Supp. 3d at 454. Any "ground" that could have been raised in IPR is subject to estoppel under Defendants' stipulations. *Id.* Under the plain terms of the stipulations, anticipation or obviousness based on publicly available documents that could have been asserted in IPR is the same "ground" that could have been raised in IPR.

Here, each and every limitation present in the asserted physical devices ███████████ ████████████████████ is disclosed in the publicly available printed publications. Defendants cannot nullify their stipulations by simply asserting alleged physical devices that are identical to the printed publications that could have been raised in an IPR. To hold otherwise would render their stipulations with this Court meaningless.

## A.   The '436 and '612 Patents

All three "system art" products urged by the Defendants ██████████████████████ ████████████████████████████████████████ — are found in and based on publicly available documents. Allowing the Defendants to rely on finished products for what their experts have repeatedly agreed is found in publicly available documents would effectively nullify the IPR estoppel provided by their *Sotera* stipulations and

proliferate the very inefficiencies and duplicative proceedings the *Sotera* stipulation was meant to eliminate.

        1.         █████████████████████████████

Extensive information detailing how ████████████████████████████████████ operate was publicly available on █████████████████ well before the October 3, 2003 priority date. Given this trove of information, it is not surprising that Defendants' experts' evaluations of █████████████████████████████ rely on those publicly available publications rather than anything particular to the devices. A chart summarizing the documents relating to the ███████████████████████████ that Drs. Lin, Almeroth, and Jeffay relied upon is attached hereto as Appendix A. Notably, none of these documents, many of which were produced with Defendants' February 10, 2023 Invalidity Contentions, bear a confidentiality designation.

Dr. Lin stated in his report that he had "reviewed technical publications and web archives, regarding the design, development, implementation, and public disclosure and use of ██ ██████████████████████████████" *See, e.g.*, Ex. 8, Lin Rpt., Ex. A at 4. When asked at his deposition whether the documents on which he relied with respect to ██████████ ██████████████ were all available through web archived pages, Dr. Lin repeatedly responded that they were:



Ex. 13, Lin Dep. at 145:19-24.[3] Dr. Lin indicated his opinion on obviousness would not change without the ██████████████████████████ *Id.* at 183:22-184:2; Ex. 8, Lin Rpt., Ex. A at 6 n.8.

Dr. Lin added that all of these documents were readily available to a person of ordinary skill in the art:



Ex. 13, Lin Dep. at 144:1-6.

Dr. Lin also relied on provisional patent application 60/280,684 by ██████ that Dr. Lin says described ████████████████. *See* Ex. 8, Lin Rpt., Ex. A at ¶ 6. A non-provisional application was filed on September 27, 2001 claiming priority to the provisional application. *See id.* That non-provisional application was published on February 27, 2003 as 2003/0041266. *Id.* This application claimed priority to the earlier provisional application. The earlier provisional application became publicly available when the application was published on February 27, 2003. *See* 37 C.F.R. 1.14(a)(1)(v) (provisional applications whose benefit is claimed may be provided upon written request if the benefit of the application is claimed under certain provisions).

Similarly, Dr. Jeffay testified he relied on public documents for his opinion of obviousness based on ████████████████. *See* Ex. 14, Jeffay Dep. 249:17-250:17. Dr. Jeffay cited one Juniper-produced document that appears to be a press release, but his opinion that the Asserted

---

[3] Dr. Lin relied on two documents produced by Juniper that are duplicative of documents produced by Palo Alto based on ████████████████. Ex. 8, Lin Report Ex. A ¶ 5 ████████████████. But as Dr. Lin testified in his deposition, ████████████████████████████████████ Ex. 13, Lin Dep. 145:5-9.

Claims were obvious based on ██████████████ did not change even if he did not consider

that document. Ex. 14, Jeffay Dep. 255:15-25. And while one document was dated after the priority

date of October 2, 2003, his opinion was the same even if he did not consider this document. *Id.*

at 275:21-276:2.

Finally, Dr. Almeroth testified that while he looked at more than just publicly available

documents on ██████████████, if he limited his consideration to only the publicly available

documents, he did not █████████████████████████ of invalidity.

Ex. 15, Almeroth Dep. 32:23-34:19.

None of the experts referred to ██████████████████████

██████ to form the basis for their opinions. Dr. Lin, Dr. Jeffay, and Dr. Almeroth all testified that

they did not ██████ █████████████████. Ex. 13, Lin Dep. 139:22-25, 140:16-

18; Ex. 14, Jeffay Dep. 244:13-18; 247:11-16; Ex. 15, Almeroth Dep. 76:7-12.

**2.** ████████████████

Extensive information about █████████████ was available in printed

publications. A chart summarizing the documents relating to ██████████ that Drs. Jeffay and

Almeroth relied upon is attached hereto as Appendix B. While Drs. Almeroth and Jeffay cite to

some Cisco confidential material for ██████████████, these materials are either

cumulative of the printed publications they rely upon or are dated after October 2, 2003 (the

priority date for the '436 and '612 Patents).

Dr. Jeffay opined that even if he limited himself to the publicly available documents before

October 2, 2003, he does not think that it would change his opinion that the Asserted Claims are

anticipated or obvious based on ██████████. Ex. 14, Jeffay Dep. 194:16-195:6. As noted

above, Dr. Almeroth testified if he limited his consideration to only the publicly available

documents, he did not ████████████████████████████████████ of invalidity.
Ex. 15, Almeroth Dep. 32:23-34:19.[4]

    Moreover, the Defendants' technical experts did not operate or test ██████████00. Ex.
14, Jeffay Dep. 125:10-15 ████████████████████████████████████
████████████████████████████ 133:15-17 ████████████████████
██████████████████; Ex. 15, Almeroth Dep. 77:4-7 ████████████████████

          **3.**    ████████████████

    In his analysis of ████████████████████, Dr. Jeffay relied on four Intel
documents. Ex. 10, Jeffay Rpt., ¶¶ 190-254. These documents are:



None of these documents were endorsed with any confidentiality designation.

    Dr. Jeffay testified that his opinion of obviousness of the Asserted Claims based on the
████████████████████ was based on publicly available documents and not any
internal Intel documents:

                                                    

---

[4] Moreover, all of the printed publications were known to Fortinet no later than February 10, 2023, the date on which the invalidity contentions and related production were served, and before any IPR was filed.



Ex. 14, Jeffay Dep. 234:17-235:3.

**B.     The '323 Patent**

      **1.**

Cisco's expert Dr. Rosing, who was employed at Hewlett-Packard ("HP") and used the

, *see* Ex. 16, Rosing Dep 22:1-8, relied on three HP

documents. See, e.g., Ex. 11, Rosing Rpt., ¶¶ 114-153.  These documents are:



    None of these documents have any confidentiality designation. Dr. Rosing testified that

they look like publicly available documents. *See* Ex. 16, Rosing Dep. 17:19-23, 18:17-21, 19:15-

19. This is consistent with Lionra technical expert Dr. Cole's analysis that these are the types of

documents that would be publicly available. *See, e.g.*, Ex. 17, Cole '323 Rpt., ¶¶ 59, 67, 69, 75,

82, 91.

      **2.**

In her analysis of

, Dr. Rosing relied on three NetScreen documents. See, e.g., Ex. 11, Rosing Rpt.,

¶¶ 155-191.  These documents are:





None of these documents were produced with any confidentiality designation. The Internet Archive capture of ██████████████████████████████████████ Ex. 17, Cole '323 Rpt. ¶ 102. With respect to these documents, Dr. Rosing indicated that they are or look like publicly available documents. Ex. 16, Rosing Dep. 35:9-13, 36:2-6, 36:10-15. This is consistent with Dr. Cole's analysis that these are the types of documents that would be publicly available. Ex. 17, Cole '323 Rpt. ¶¶ 100, 102, 107, 113, 115, 121, 128, 137.

## VI.    CONCLUSION

For the foregoing reasons, Lionra respectfully submits that the Court should grant its Motion for Partial Summary Judgment based on the Defendants' *Sotera* stipulations to IPR Estoppel. The opinions by Defendants' experts on the so-called "system art" are based on printed publications that were available on public websites. They are not based on Defendants' experts operating or testing any of the products as part of their work on this case. Defendants could have raised these publications in their IPRs and chose not to. They are therefore estopped from raising them in the form of the products that they describe in this Court.

Dated: February 20, 2024                    Respectfully submitted,


                                            */s/ Brett E. Cooper*
                                            _____

                                            Brett E. Cooper (NY Bar No. 4011011)
                                            LEAD ATTORNEY
                                            Seth Hasenour (TX Bar No. 24059910)
                                            Jonathan Yim (TX Bar No. 24066317)
                                            Drew B. Hollander (NY Bar No. 5370896)
                                            BC LAW GROUP, P.C.
                                            200 Madison Avenue, 24th Floor

New York, NY 10016
Telephone: (212) 951-0100
bcooper@bc-lawgroup.com
shasenour@bc-lawgroup.com
jyim@bc-lawgroup.com
dhollander@bc-lawgroup.com

Andrea L. Fair (TX Bar No. 24078488)
Garrett Parish (TX Bar No. 24125824)
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
andrea@wsfirm.com
gparish@wsfirm.com

Glen E. Summers (CO Bar No. 30635)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com

Mark Levine (IL Bar No. 6276086)
Luke Beasley (IL Bar No. 6334359)
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
mark.levine@bartlitbeck.com
luke.beasley@bartlitbeck.com

Amy J. Wildermuth (IL Bar No. 6256999)
17811 Comstock Road
Wayzata, MN 55391
Telephone: (801) 913-4068
amy.wildermuth@gmail.com

***Attorneys for Plaintiff Lionra
Technologies Limited***

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on February 20, 2024, which will send a notification of such filing to all counsel of record.

*/s/ Brett E. Cooper*
Brett E. Cooper

**CERTIFICATE OF AUTHORIZATION TO SEAL**

I hereby certify that pursuant to the protective order in the above-captioned case, this motion contains confidential information.  Accordingly, this document is to be filed under seal.

*/s/ Brett E. Cooper*
Brett E. Cooper