**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LIONRA TECHNOLOGIES LTD., <br><br> v. <br><br> FORTINET, INC., | Case No. 2:22-cv-00322-JRG-RSP <br><br> (Lead Case) <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED UNDER SEAL** <br><br> Case No. 2:22-cv-00305-JRG-RSP <br><br> (Member Case) |
| LIONRA TECHNOLOGIES LTD., <br><br> v. <br><br> CISCO SYSTEMS, INC., | |
| LIONRA TECHNOLOGIES LTD., <br><br> v. <br><br> PALO ALTO NETWORKS, INC., | Case No. 2:22-cv-00334-JRG-RSP <br><br> (Member Case) |

**PLAINTIFF'S RESPONSE TO DEFENDANT PALO ALTO NETWORKS, INC.'S**
**MOTION FOR SUMMARY JUDGMENT OF LIMITATION ON DAMAGES**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 4

II.   RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS.......................... 4

      A.    Response to PAN's Statement of Undisputed Material Facts ................................ 4

      B.    Lionra's Statement of Additional Undisputed Material Facts ................................ 4

III.  ARGUMENT.......................................................................................................... 5

      A.    PAN Waived Its License Defense by Failing to Plead It or Otherwise Disclose Its Intent to Pursue It .................................................................... 6

            1.    PAN's License Motion is Barred by Rule 8 .............................................. 6

            2.    PAN Cannot Amend to Add a License Defense Now Because It Cannot Satisfy Rule 16 ................................................................ 8

      B.    PAN Has Not Met Its Burden to Show that its Accused Products are Unambiguously Entitled to a License Under the RPX Agreement....................... 10

            1.    PAN's Motion Misinterprets and Misapplies the "Licensed Product" Definition ................................................................ 11

            2.    PAN's Motion Misinterprets and Misapplies "Combined Licensed Product" ................................................................ 12

IV.   CONCLUSION....................................................................................................... 17

i

## TABLE OF AUTHORITIES

**Cases**

*Bardy Diagnostics, Inc. v. Hill-Rom, Inc.*,
No. CV 2021-0175-JRS, 2021 WL 2886188 (Del. Ch. July 9, 2021) .............................. 15

*Cut–Heal Animal Care Prods., Inc. v. Agri–Sales Assocs., Inc.*,
2009 WL 305994 (N.D. Tex. Feb. 9, 2009) ................................................................... 9

*DirecTV, L.L.C. v. WNK Assocs., Inc.*,
No. 6:22-CV-00423-JDK, 2023 WL 3612351 (E.D. Tex. May 4, 2023) ......................... 6

*Drummond Am. Corp. v. Share Corp.*,
No. 4:08-cv-393, 2009 WL 3677167 (E.D. Tex. Oct. 30, 2009) ..................................... 8

*Firemen's Ins. Co. of Washington, D.C. v. Birch Point Condo. Assoc., Inc.*,
No. 4313-VCP, 2009 WL 1515550 (Del. Ch. May 29, 2009) ........................................ 16

*Guzman v. Allstate Assurance Co.*,
18 F.4th 157 (5th Cir. 2021) ....................................................................................... 11

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
No. 2:16-CV-00055-JRG-RSP, 2017 WL 4619791 (E.D. Tex. Oct. 16, 2017) ................ 7

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
203 F. Supp. 3d 755 (E.D. Tex. 2016) .......................................................................... 6

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
725 F. Supp. 712 (S.D.N.Y. 1989) ............................................................................... 16

*Members Only Dental, PA v. State Farm Lloyds*,
No. 4:19-CV-00437, 2022 WL 609147 (E.D. Tex. Mar. 1, 2022) ................................. 9

*Murphy v. Smith*,
583 U.S. 220 (2018) .................................................................................................... 13

*Rayamajhi v. Whitaker*,
912 F.3d 1241 (9th Cir. 2019) ..................................................................................... 16

*S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*,
315 F.3d 533 (5th Cir. 2003) ....................................................................................... 8

*Sky Harbor Air Serv., Inc. v. Reams*,
491 F. App'x. 875 (10th Cir. 2012) .............................................................................. 8

*Woodfield v. Bowman*,
193 F.3d 354 (5th Cir. 1999) ....................................................................................... 6

**Statutes**

35 U.S.C. §§ 286–288....................................................................................................... 7

**Federal Rules**

Fed. R. Civ. P. 16........................................................................................................ 7, 8, 9

Fed. R. Civ. P. 37............................................................................................................... 7

Fed. R. Civ. P. 8................................................................................................................. 6

Fed. R. Evid. 401 ............................................................................................................. 16

**Other Authorities**

Federal Practice and Procedure § 1522.1 (2d ed. 1990) ..................................................... 8

## I.    INTRODUCTION

In moving to limit Lionra's damages based on a license agreement to which Palo Alto Networks ("PAN") was not a party, PAN scrupulously avoids mention of one especially critical fact: that it never pleaded an affirmative defense of license. While PAN apparently believes that is no problem, since it has not styled its motion as one for summary judgment on that unpleaded defense, such transparent gamesmanship should not be countenanced. The rules require defendants to plead affirmative defenses for a reason, and PAN's failure to even acknowledge their pleading failure means it should not be excused.

Regardless, PAN's motion fails on the merits. To earn summary judgment, PAN must prove that the RPX Agreement unambiguously and undisputedly confers a license on the PAN Accused Products based on PAN's use of Intel and AMD processors. PAN misinterprets and misapplies the key contract provisions, and in so doing, fails to meet its burden on summary judgment.

## II.   RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

### A.    Response to PAN's Statement of Undisputed Material Facts

1.    Lionra does not dispute PAN's quotations of a stipulation, the RPX Agreement, and the Court's claim constructions, as set forth in paragraphs 1-14 of PAN's motion, for purposes of this motion.

### B.    Lionra's Statement of Additional Undisputed Material Facts

1.    In the related Lionra litigation against Cisco, Cisco pleaded an affirmative defense of license. Dkt. 121 at 10.

2.    In the related Lionra litigation against Fortinet, Fortinet did not initially plead a license defense, though it moved for leave to amend such a defense in December 2023, long after

the deadline to amend the pleadings had passed and right before the close of fact discovery. Dkt. 184. Lionra opposed that motion, and the motion remains pending.

3.    PAN did not plead a license defense, *see generally* Dkt. 41, nor has it ever sought the Court's leave to do so. PAN pleaded eight other affirmative defenses, and specifically "reserve[d] the right to raise and allege additional defenses pursuant to Rule 8 of the Federal Rules of Civil Procedure . . . any other defense at law in equity, that may exist or in the future may be available based on further investigations and discovery." Dkt. 241 at 7-10.

4.    On December 20, 2022, PAN served its paragraph 1 disclosures, which require disclosure of "the legal theories and, in general, the factual bases of the disclosing party's claims or defenses." Dkt. 65 at 1; Ex. 1, 12/20/2022 Palo Alto's Disclosures. PAN served amended disclosures on December 8, 2023. Ex. 2, 12/8/2023 Palo Alto's First Supplemental Disclosures. In neither of these disclosures did PAN disclose a license defense generally, or more specifically, a license defense based on the RPX Agreement it now relies on.

5.    On November 7, 2023, PAN issued a Request for Admission that stated: "Admit that a product using an Intel or AMD product that satisfies at least one material element or step of a claim in any Asserted Patent is a Combined Licensed Product and Service as defined in the Patent License Agreement between Lionra and RPX." Ex. 3, Palo Alto's First Requests for Admission (No. 7).

## III.    ARGUMENT

PAN never pleaded or disclosed a license defense, and it should not be permitted to manufacture that defense through its motion for summary judgment. If the Court nevertheless considers PAN's license defense on the merits, its motion still fails. To obtain summary judgment, PAN must show both (1) that its interpretation of the RPX Agreement is *unambiguously* correct and (2) that *undisputed* facts entitle it to summary judgment given that interpretation of the

Agreement. PAN fails on both grounds. PAN's interpretation of the Agreement is incorrect, and its application of the Agreement to the Accused Products is likewise flawed.

### A.   PAN Waived Its License Defense by Failing to Plead It or Otherwise Disclose Its Intent to Pursue It

PAN's attempt to manufacture a license defense it did not plead fails under the federal rules and the Discovery Order the Court entered in this case. First, the Court should find that PAN has waived the defense under Federal Rule of Civil Procedure 8, which requires a license defense to be pleaded affirmatively, not held in secret to be deployed at a time of PAN's choosing. At a bare minimum, PAN should have at least indicated its intent to pursue such a defense in its disclosures required under paragraph 1 of the Discovery Order. Second, even if the Court forgives PAN's threshold pleading and disclosure failure, PAN can only add a license defense now if it can show good cause to amend under Federal Rule 16. Half a year after the deadline to amend the pleadings, after the close of fact discovery, three months before trial, and having long known the facts related to the defense, PAN can show *no* cause for its belated amendment, much less good cause.

### 1.   PAN's License Motion is Barred by Rule 8

Federal Rule of Civil Procedure 8(c)(1) states: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." License is specifically identified as one such defense that must be pleaded. *Id.* A license defense must be pleaded with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *DirecTV, L.L.C. v. WNK Assocs., Inc.*, No. 6:22-CV-00423-JDK, 2023 WL 3612351, at *2 (E.D. Tex. May 4, 2023), *report and recommendation adopted*, No. 6:22-CV-423-JDK, 2023 WL 3605969 (E.D. Tex. May 23, 2023) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)). Thus, courts in this district have found a defendant waived a license defense even where they "have given a boilerplate, general license defense in its answer." *Imperium IP Holdings*

*(Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 760 (E.D. Tex. 2016). PAN did not plead even a boilerplate license defense; it did not mention the word license once in its answer.

Nor did PAN otherwise disclose the defense, which it was required to do under the Discovery Order entered in the case. That Order requires that "each party shall disclose" "the legal theories and, in general, the factual bases of the disclosing party's claims or defenses." Dkt. 65 at 1. PAN's disclosures, even after supplementation in December 2023, reveal nothing about the license defense it now pursues. SUMF ¶ 4. PAN's violation of the Court's own Order provides yet a further reason that the Court should not forgive PAN's Rule 8 violation and permit PAN's amendment-by-summary-judgment tactic. *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00055-JRG-RSP, 2017 WL 4619791, at *1 (E.D. Tex. Oct. 16, 2017) (noting that under Fed. Rule Civ. P. 37, a court "may impose any 'just' 'sanction'" for failure to obey a court order) (quoting Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(B)).

PAN seeks to dodge its pleading failure by styling its motion as one "for summary judgment of limitation on damages" rather than a motion for what it really is—a motion for summary judgment on a license defense it did not plead. The Court should reject this gambit, all the more so because the "Limitation on Damages" defense that PAN pleaded plainly does not encompass a license defense. That PAN defense asserts ***only*** that "Lionra's alleged damages are limited under 35 U.S.C. §§ 286–288"—provisions which would preclude Lionra from recovering damages for more than six years before the filing date, for failure to mark, or for an invalid claim, but which have nothing to do with a license. Dkt. 41 at 8-9. While the Court in its discretion may choose to construe PAN's motion for summary judgment as a request for leave to amend its answer and add a license defense, the Court should decline to do so, given that PAN has not honestly confronted its pleading failure.

7

### 2. PAN Cannot Amend to Add a License Defense Now Because It Cannot Satisfy Rule 16

"[I]f a party has not formally moved to amend its answer under Rule 15 (a) of the Federal Rules of Civil Procedure, a district court may allow the party to constructively amend [its] answer, such as by raising an affirmative defense in a motion for summary judgment." *Sky Harbor Air Serv., Inc. v. Reams,* 491 F. App'x. 875, 884 (10th Cir. 2012) (alteration in original) (internal quotation marks omitted). If the Court construes PAN's motion to include an implicit motion for leave to amend its answer and add a license defense, the Court must first determine whether PAN has shown good cause for such amendment under Federal Rule of Civil Procedure 16(b), given that the deadline to amend the pleadings was September 1, 2023. *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.* at 536. "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990).

The Court should deny PAN's implicit and untimely request to add a new license defense, because PAN has failed to show that it could not have sought to add a license defense prior to the deadline to amend the pleadings or at *any time* before filing its motion for summary judgment. Indeed, PAN has not even attempted to make such a showing, instead hoping to dodge the requirement that it do so by styling its motion as something other than what it is. That alone is sufficient reason to reject PAN's untimely amendment. *Drummond Am. Corp. v. Share Corp.*, No. 4:08-cv-393, 2009 WL 3677167, at *2 (E.D. Tex. Oct. 30, 2009) ("In short, Defendants have done nothing to show that despite their diligence they were unable to comply with the scheduling order

8

in this case. Therefore, under Rule 16(b), there is not 'good cause' to modify the scheduling order. In the absence of good cause to modify the scheduling order, this court need not consider whether leave to amend should be granted under Rule 15(a)."); *Members Only Dental, PA v. State Farm Lloyds*, No. 4:19-CV-00437, 2022 WL 609147, at *2 (E.D. Tex. Mar. 1, 2022) ("To the first factor, State Farm offers no explanation for its failure to timely amend. Good cause under Rule 16 requires a demonstration of due diligence.").

PAN likely made no diligence argument, because it has none. PAN cannot dispute that it knew, or should have known, of the RPX Agreement long before the September 1, 2023 deadline to amend the pleadings. Lionra had produced the Agreement long before then, in March 2023, and in July 2023 Lionra specifically identified the Agreement by Bates number in response to a PAN interrogatory asking Lionra to identify licenses. Ex. 4, 7/14/2023 Lionra Resps. & Objs. to PAN's 1st Rogs at 37 (Rog. No. 17). Nor can PAN dispute that it knew about this potential license defense and could have earlier moved to amend—before asserting it as a basis for summary judgment— given that PAN issued an RFA that was clearly intended to support such a defense in November 2023. SUMF ¶ 5. PAN simply has no excuse for breaking the well-settled rules of litigation. Because "[t]he 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order," *Cut–Heal Animal Care Prods., Inc. v. Agri–Sales Assocs., Inc.,* 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009), and because PAN can show none, the Court should not permit PAN to plead a new defense through its motion for summary judgment.[1]

---

[1] The Court need not even reach the question whether PAN's untimely addition of a license defense would prejudice Lionra given PAN's failure to provide *any* explanation for its failure to properly plead the defense. *Cut-Heal Animal Care Prods.*, 2009 WL 305994, at *1. In any event, PAN's gamesmanship would certainly prejudice Lionra. Indeed, it already has—as Lionra is spending time and resources litigating a motion predicated on an unpleaded defense.

**B.      PAN Has Not Met Its Burden to Show that its Accused Products are Unambiguously Entitled to a License Under the RPX Agreement**

PAN's motion correctly recognizes that, in order for the Accused Products to be licensed under the RPX Agreement, PAN must show two things: (1) that the *Intel and AMD processors* within some of the Accused Products qualify as "Licensed Products and Services", and (2) that the *PAN Accused Products* qualify as "Combined Licensed Products and Services."[2] But PAN nevertheless misconstrues and misapplies both of those provisions, and thereby fails to show it is entitled to summary judgment. Both terms are defined in relevant part as follows:

| "Licensed Product and Service" shall mean any past, present or future product . . . made, used, purchased, provided, hosted, sold . . . ***by or on behalf of an RPX Licensee or an RPX Licensee Affiliate***, alone or in combination with other products, software, technology, . . . the manufacture, use, purchase, provision . . . of which would result in infringement . . . of one or more [Lionra] Patents."<br><br>PAN Ex. A at 2-3 (emphasis added). | "Combined Licensed Product and Service" shall mean any past, present, or future combination or use, ***whether by an RPX Licensee, any RPX Licensee Affiliate, or any Covered Third Party***, of a Licensed Product and Service with any other product, service, technology, or material, only if: (i) a portion of such Licensed Product and Service provided by or on behalf of the RPX Licensee or RPX Licensee Affiliate satisfies (or is alleged by [Lionra] or its Affiliates to satisfy), one or more material elements or steps of a claim in any Patent."<br><br>PAN Ex. A at 1 (emphasis added). |
|---|---|

---

[2] This contrasts with Cisco's motion, which erroneously assumes that the Accused Products can qualify as licensed under either provision. As Lionra explains at greater length in response to Cisco's mistaken position, the "Licensed Product and Service" provision cannot be read to cover third-party products simply because they involve an Intel or AMD component, including because such an interpretation would render the "Combined Licensed Product" provision superfluous. Dkt. 300 at 8-9. Lionra submits, however, that the sheer fact of disagreement between the Defendants on how to interpret and apply the RPX Agreement underscores the impropriety of granting summary judgment on any of their motions.

**1. PAN's Motion Misinterprets and Misapplies the "Licensed Product" Definition**

PAN contends that the Intel and AMD processors used in some of its Accused Products meet the definition of "Licensed Product and Service." PAN Mot. at 9. Yet PAN fails to accurately describe the "Licensed Product" definition or correctly apply it. While PAN's motion correctly quotes a select portion of that provision—which provides that it covers a product made or sold by an RPX Licensee (Intel and AMD)—its quotation omits the provision's other key limiting principle. Specifically, as the Agreement states a couple lines after PAN's quotation stops, to be a "Licensed Product," the product must "result in infringement . . . of one or more [Lionra] Patents[.]" PAN Ex. A at 2-3. While it is true that this definition *could* apply to an Intel or AMD product, like the Intel or AMD processors that PAN identifies, that is only if that product would infringe a Lionra patent. PAN does not attempt to explain how the Intel or AMD processors do so, much less offer undisputed evidence showing that they do.

PAN's failure to accurately describe or apply the "Licensed Product" provision means that its motion must be denied. PAN has not identified, and Lionra is not aware of, any undisputed evidence that the Intel or AMD processors would infringe a particular Lionra patent. PAN has therefore failed to meet its burden on summary judgment to show that the RPX Agreement's "Licensed Product" provision unambiguously applies to the Intel and AMD Processors. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (the movant must "establish beyond peradventure *all* of the essential elements of the claim or defense"). That failure, in turn, dooms PAN's argument that the Accused Products (which incorporate the Intel and AMD processors) are "Combined Licensed Products and Services," because that combined product must contain, as a predicate matter, a "Licensed Product." PAN Ex. A at 1-2 (defining "Combined Product and Service" as "combination or use…of a Licensed Product and Service with any other product").

11

### 2.    PAN's Motion Misinterprets and Misapplies "Combined Licensed Product"

Yet, even had PAN shown by undisputed facts that the *Intel and AMD Processors* are "Licensed Products," its motion would still fail because it cannot establish undisputed facts showing that *PAN's Accused Products* are unambiguously licensed under the "Combined Licensed Products and Services" provision. That requires PAN to show by undisputed facts that the "portion of such Licensed Product and Service by or on behalf of the RPX Licensee or any RPX Licensee Affiliate **satisfies** (or is alleged by [Lionra] or its Affiliates to satisfy), one or more **material elements** or steps of a claim in any Patent." PAN Ex. A at 1 (emphasis added). PAN has not and cannot do so.[3]

PAN's argument starts with the Court's claim constructions of "packet engine," "cryptographic core," and "intrusion detection system," which as PAN notes, all require "hardware, or a combination of hardware and software." PAN Mot. at 10. PAN contends that because Lionra must identify *some* hardware to meet part of those claim limitations, and because Lionra has identified the Intel or AMD processors as that hardware in some of the PAN Accused Products, that means Lionra alleges that the Intel and AMD processors within those products "satisfy one or more material (and required) element[s]" of the claims—and thus that certain PAN Accused Products are "Combined Licensed Products." A fair reading of the RPX Agreement, and

---

[3] PAN begins its argument here by asserting that it is a "Covered Third Party" under the RPX Agreement, because it has purchased and used the Intel and AMD processors in its Accused Products. PAN Mot. at 10. But for that to render PAN a "Covered Third Party," PAN has to prove that the processors qualify as "Licensed Products and Services," because a third party is "Covered" under the Agreement "solely with respect to such Licensed Products and Services." PAN Ex. A at 5. While Lionra disputes that PAN has made such a showing, for the purposes of this alternative argument it assumes it has and focuses the analysis on whether PAN has proven by undisputed facts that its Accused Products are "Combined Licensed Products and Services."

an accurate understanding of Lionra's infringement contentions, reveals two fatal flaws in PAN's argument.

First, the "Combined Licensed Product" tag applies to the Accused Products *only if* the alleged "Licensed Product"—here, the Intel and AMD processors—"satisfies" "one more material elements or steps of a claim." The word "satisfies" unambiguously requires PAN to show that Lionra alleges the Intel or AMD processors *by themselves* fulfill a claim limitation, not merely part of such a limitation. Common usage dictates that to "satisfy" an obligation means to *fully* discharge it. The law consistently reflects this understanding of the term. Black's Law Dictionary, for example, states that "satisfy" "generally means to comply *actually and fully* with a demand; *to extinguish*, by payment or performance."[4] The Supreme Court, meanwhile, has held that "'to satisfy' an obligation . . . usually means to discharge the obligation in full." *Murphy v. Smith*, 583 U.S. 220, 220 (2018). In logical terms, a claim limitation can be satisfied only by a sufficient showing, not merely by a necessary one. PAN's motion improperly conflates the two.

Although PAN must show that the Intel or AMD processor satisfies (or is alleged to satisfy) a material element of an Asserted Claim, Lionra has alleged only that the processor in the Accused Products satisfies the *hardware requirement* for certain limitations in the Asserted Claims—or in other words, that the processor satisfies *just one part* of the claim terms requiring "hardware, or a combination of hardware and software." Lionra's infringement theory is not, and has never been, that these claim limitations are satisfied by hardware (i.e., the Intel or AMD processors) alone. Lionra instead seeks to prove these limitations are met under the "combination of hardware and

---

[4] https://thelawdictionary.org/satisfy/

software" portion of the Court's construction. To that end, Lionra has consistently maintained that the claim terms at issue are satisfied only by the *running of PAN's software* on the general-purpose Intel and AMD processors. *See* Ex. 5, Smith Rpt. ¶ 90 ("I have not identified the Intel or AMD processors independent of the PAN-supplied software as a 'material element' of any asserted claim. . . . As far as my infringement opinions are concerned, the brand of the processor is irrelevant because the processor is a generic, general-purpose processing unit that merely runs the PAN-supplied software."). Because PAN cannot show as a matter of unambiguous contract interpretation and undisputed fact that the Intel and AMD processors "satisfy" a claim element, PAN's motion must fail.

Second, on top of disputed facts regarding the "satisfies" requirement, PAN has not established the unambiguous meaning of "material element" as used in the RPX Agreement, and there are genuine disputes of fact as to whether the hardware component of the defined claim qualifies as such a "material element."

The inclusion of "material" to modify "element" in the "Combined Licensed Product" provision is crucial, because it shows that a combined product does not qualify for a license solely on the basis that the "Licensed Product" within the combined product satisfies (or is alleged to satisfy), *any* claim limitation in *any* Lionra patent.[5] That the parties added "material" before "element" in the "Combined Licensed Product" provision is strong evidence that they did not want

---

[5] It is reasonable to assume the inclusion of the word "material" was a considered choice, as elsewhere in the Agreement, there is no such materiality requirement. For example, while subsection (i) in the "Combined Licensed Product" provision requires satisfying a "***material element***," subsection (ii) in the same provision use the phrase "***any element***." PAN Ex. A at 2 (emphasis added). As another example, Lionra covenanted not to allege that "any product, software, technology, material and/or service of any RPX Licensee . . . satisfies ***an element*** or step of a claim in any Patent against any Entity." PAN Ex. A at 8 (emphasis added).

third-party products to enjoy a license any time an Intel or AMD component in that product fulfills a claim limitation—but instead only when that claim limitation is *material*. The modifier "material" must necessarily exclude some instances where the licensed product satisfies a claim limitation (or part of a claim limitation), or else there would be no work for it. *Bardy Diagnostics, Inc. v. Hill-Rom, Inc.*, No. CV 2021-0175-JRS, 2021 WL 2886188, at *35 (Del. Ch. July 9, 2021) ("Here again, well-settled canons of contract interpretation require that the Court give effect to every word in the contract in order to avoid 'surplusage.'").

PAN's reading of the contract—which basically equates "material" to "necessary to a finding of infringement"—cannot work. For one thing, if that's what the parties intended "material" to mean, then the parties easily could have used that word. "Necessary" is much less ambiguous than "material." For another thing, if "material" means "necessary," then the word "material" performs no work. The definition of "Combined Licensed Product" is met if the "Licensed Product" within the combined product is "satisfies" or "is alleged by [Lionra] to satisfy . . . one or more material elements or steps of a claim." Assuming "elements or steps of a claim" means claim limitations (which all the parties here seem to agree upon) there is no such thing as an *unnecessary* element, step, or limitation in a claim; all of them must be satisfied to find infringement. Thus, the word "material" must mean something more and different from "necessary," and PAN has failed to offer any argument or evidence to suggest otherwise. The centrality and ambiguity of the word "material"—combined with PAN's totally inadequate explanation of it—is reason enough to deny summary judgment. *Firemen's Ins. Co. of Washington, D.C. v. Birch Point Condo. Assoc., Inc.*, No. 4313-VCP, 2009 WL 1515550, at *2 (Del. Ch. May

15

29, 2009) ("Moreover, when the issue before the Court involves the interpretation of a contract, summary judgment is appropriate only if the contract in question is unambiguous.") (cleaned up).[6]

Moreover, whatever the precise meaning of "material," it remains a disputed issue of fact whether the *hardware* component of the "intrusion detection system" qualifies as a "material element." Lionra absolutely and unequivocally disputes that the "hardware" requirement comprises a "material element" of any claim here because, as Dr. Smith explained in his report, "the nature and characteristics of the processor is immaterial to the infringement analysis." Ex. 5, Smith Rpt. ¶ 90. That the generic, general-purpose processors could be interchanged with any number of such processors (whether Intel's or AMD's or any other company's) and the infringement analysis would not vary in the slightest is strong evidence that the "hardware" component of the claim limitations is not "material" to the Asserted Patents. *Id.*

Palo Alto's technical expert Dr. Lin, meanwhile, was unable to answer what was and was not a "material element" in the Asserted Claims. But he did say this:

> Q    In your opinion, are there any elements of Claim 1 of the '436 patent that are not material?
>
> A    So let's -- maybe we can up-level this a little bit because I speak to this in my report. I think we can up-level by saying that -- and correct me if I'm wrong -- the -- at the high level, the ***patent does not claim that the different processing is novel. The patent background specification itself talks about all of the processing that's in the claim to be something that's already been done in software by a CPU or what it calls a host processor***. And the patent specifically

---

[6] "Material" is ambiguous here—and, seemingly, most everywhere. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 739 (S.D.N.Y. 1989) (finding "material" in contract was ambiguous and considering extrinsic evidence to evaluate its meaning); *Rayamajhi v. Whitaker*, 912 F.3d 1241, 1246 (9th Cir. 2019) (concurrence in part) ("There are many other interpretations of 'material,' but none of them changes the fact that the word is ambiguous in most contexts."); Fed. R. Evid. 401, advisory committee's note (explaining that Rule 401's amendment to use "fact that is of consequence to the determination of the action" was preferable to "the loosely used and ambiguous word 'material.'").

cites to different examples of packet engines, cryptographic core, switching systems that it uses. ***So -- so the patent itself is very clear that the processing functions in the claim are not new because it -- it already said -- said that it was done in software in the generic CPU[.]***

Ex. 6, Lin Dep. at 36:17-37:10 (emphasis added). The import of Dr. Lin's testimony is clear: the "host processor"—the Intel or AMD processor that PAN hopes to use as its get-out-of-jail-free card—has almost nothing to do with the claimed invention or with Cisco's infringement. That supports Lionra's position that the hardware component of the claim limitations is *not* "material." But at the very least, this shows the existence of a genuine dispute of fact that cannot be resolved on summary judgment.

Because PAN has neither established the unambiguous meaning of "material element" nor shown by undisputed facts that the hardware component of the relevant claim limitations qualifies as such, PAN is not entitled to summary judgment that its Accused Products are licensed under the "Combined Licensed Product" provision.

## IV.    CONCLUSION

For the foregoing reasons, Lionra respectfully submits that PAN's motion for summary judgment should be denied.

17

Dated: March 5, 2024

Respectfully submitted,

*/s/ Glen E. Summers*
Brett E. Cooper (NY Bar No. 4011011)
LEAD ATTORNEY
Seth Hasenour (TX Bar No. 24059910)
Jonathan Yim (TX Bar No. 24066317)
Drew B. Hollander (NY Bar No. 5370896)
BC LAW GROUP, P.C.
200 Madison Avenue, 24th Floor
New York, NY 10016
Telephone: (212) 951-0100
bcooper@bc-lawgroup.com
shasenour@bc-lawgroup.com
jyim@bc-lawgroup.com
dhollander@bc-lawgroup.com

Andrea L. Fair (TX Bar No. 24078488)
Garrett Parish (TX Bar No. 24125824)
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
andrea@wsfirm.com
gparish@wsfirm.com

Glen E. Summers (CO Bar No. 30635)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com

Mark Levine (IL Bar No. 6276086)
Luke Beasley (IL Bar No. 6334359)
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
mark.levine@bartlitbeck.com
luke.beasley@bartlitbeck.com

Amy J. Wildermuth (IL Bar No. 6256999)
17811 Comstock Road
Wayzata, MN 55391
Telephone: (801) 913-4068

18

amy.wildermuth@gmail.com

***Attorneys for Plaintiff Lionra
Technologies Limited***

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on March 5, 2024, which will send a notification of such filing to all counsel of record.

*/s/ Glen E. Summers*
Glen E. Summers

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned case, this motion contains confidential information. Accordingly, this document is to be filed under seal.

*/s/ Glen E. Summers*
Glen E. Summers

19