# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| LIONRA TECHNOLOGIES LIMITED<br><br>v.<br><br>FORTINET, INC. | Case No. 2:22-cv-00322-JRG-RSP<br>(Lead Case)<br>**JURY TRIAL DEMANDED** |
| LIONRA TECHNOLOGIES LIMITED<br><br>v.<br><br>CISCO SYSTEMS, INC. | Case No. 2:22-cv-00305-JRG-RSP<br>(Member Case) |
| LIONRA TECHNOLOGIES LIMITED<br><br>v.<br><br>PALO ALTO NETWORKS, INC. | Case No. 2:22-cv-00334-JRG-RSP<br>(Member Case) |

**PLAINTIFF LIONRA TECHNOLOGIES LTD.'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PORTIONS OF THE INFRINGEMENT EXPERT REPORT OF DR. HUGH SMITH FOR FORTINET, INC. (ECF 279)**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. LEGAL STANDARD ............................................................................................................ 1

III. ARGUMENT ......................................................................................................................... 2

    A. Dr. Smith's Noninfringing Alternative Analysis Apportions ..................................... 2

    B. Fortinet's Apportionment Criticisms Go to Weight, Not Admissibility ..................... 7

IV. CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Alacritech Inc. v. CenturyLink, Inc.*,
  No. 216CV00693RWSRSP, 2023 WL 6553832 (E.D. Tex. Oct. 8, 2023) .............................. 10

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ................................................................................... 1, 6

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015) ................................................................................... 7, 8

*Bryan v. John Bean Div. of FMC Corp.*,
  566 F.2d 541 (5th Cir. 1978) ........................................................................................... 4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ......................................................................................................... 1

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  No. 6:11-CV-00201-JRG, 2017 WL 1322555 (E.D. Tex. Apr. 6, 2017) ..................... 10

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
  879 F.3d 1332 (Fed. Cir. 2018) ....................................................................................... 6

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
  744 F. Supp. 2d 870 (E.D. Wis. 2010) ............................................................................ 6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ..................................................................................... 10

*Genband US LLC v. Metaswitch Networks Corp.*,
  No. 2:14-CV-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016) ........................ 5

*Hammers v. Mayea-Chang*,
  No. 2:19-CV-00181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019) ..................... 4

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ........................................... 1, 4

*Lawrence v. Raymond Corp.*,
  No. 3:09 CV 1067, 2011 WL 3418324 (N.D. Ohio Aug. 4, 2011) .................................. 6

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-CV-00126-JRG-RSP, 2022 WL 4492403 (E.D. Tex. Sept. 27, 2022) ............. 5

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*,
    382 F.3d 546 (5th Cir. 2004) .................................................................................................. 1

*Realtime Data, LLC v. Oracle Am., Inc.*,
    No. 6:16-CV-00088-RWS-JDL, 2017 WL 11574028 (E.D. Tex. Mar. 30, 2017) ...................... 6

*Riles v. Shell Expl. & Prod. Co.*,
    298 F.3d 1302 (Fed. Cir. 2002) ............................................................................................... 5

*Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*,
    760 F. App'x 977 (Fed. Cir. 2019) .......................................................................................... 9

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) ........................................................................................ 1, 8

*VLSI Tech. LLC v. Intel Corp.*,
    87 F.4th 1332 (Fed. Cir. 2023) ............................................................................................... 4

**<u>Rules</u>**
Fed. R. Evid. 702 ............................................................................................................................ 1

iii

I. INTRODUCTION

Plaintiff Lionra Technologies Limited ("Lionra") respectfully files this response to Defendant Fortinet, Inc.'s ("Fortinet") motion to exclude the infringement expert report of Dr. Hugh Smith (Dkt. No. 279). Fortinet fails to discuss the bases of Dr. Smith's noninfringing alternative methodology, which is grounded in Federal Circuit law. Dr. Smith's opinions are therefore admissible, and Fortinet's disagreement with his methodology's inputs or outputs are for the jury to consider. The motion should be denied.

II. LEGAL STANDARD

The admission of expert testimony is fully committed to the discretion of the Court. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 561 (5th Cir. 2004)) ("The Fifth Circuit reviews the admissibility of expert testimony for abuse of discretion"). The Court's inquiry "must be solely on principles and methodology, not on the conclusions that they generate." *Summit 6*, 802 F.3d at 1295 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)). "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). The Federal Circuit has cautioned that a "judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014). ("These tasks are solely reserved for the fact finder"). It has also emphasized the focus on methodology when evaluating damages expert opinion, not facts: "That the gatekeeping role of the judge is limited to excluding testimony based on unreliable principles and methods is particularly essential in the context of patent damages.

1

This court has recognized that questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are 'for the jury.'" *Id.* at 1315.

### III.  ARGUMENT

#### A.  Dr. Smith's Noninfringing Alternative Analysis Apportions

Dr. Smith's noninfringing alternative analysis achieved apportionment according to well-established damages law. Fortinet's motion cites inapplicable law and ignores the basis supporting Dr. Smith's opinions. These are not grounds to exclude Dr. Smith's testimony.

███████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████

Dr. Smith also considered Defendants' Invalidity Contentions, signed by Fortinet's counsel, which identified the Cisco Catalyst 6000 Series as a prior art system. Yim Decl. Ex. D (Defs.' Feb. 10, 2023 Invalidity Contentions) at 1, 29-30, 72. He explains this as the source of his noninfringing alternative opinion:

2



*Id.* ¶ 69. He further explains the noninfringing separate module configuration of the Cisco Catalyst 6500:



*Id.* ¶ 70 (emphasis added and citations omitted).



*Id.* ¶ 47. Dr. Smith supported his analysis of the Cisco Catalyst 6500 product with literature from Cisco itself. *Id.* ¶ 70 (citing Yim Decl. Ex. E (LIONRA-EDTX-00070038)).

In sum, Dr. Smith inspected the Cisco Catalyst 6500 device disclosed as prior art by Fortinet's invalidity contentions, and he cited Cisco literature in support of his analysis that the Cisco Catalyst 6500 had separate modules, contrary to the claims of the '436 and '612 Patents requiring a cryptographic core coupled to the packet engine, and in accordance with Fortinet's interrogatory response on noninfringing alternatives. He also considered Fortinet's interrogatory response identifying its own products as noninfringing alternatives. This is a more than sufficient

3

basis to admit Dr. Smith's noninfringing alternative opinions. *See* Fed. R. Evid. 702; *Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446, at *7 (E.D. Tex. Dec. 11, 2019) (quoting *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978) ("The modern view in evidence law recognizes that experts often rely on facts and data supplied by third parties")); *cf. i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) (approving of plaintiff's damages expert's choice of benchmark product "because it was the product [defendant] bought and used before developing its own").



Dr. Smith's analysis that compares the performance of the accused products with noninfringing alternatives comports with a long line of Federal Circuit cases approving of this methodology. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1346 (Fed. Cir. 2023) ("the core economic question is what the infringer in the hypothetical negotiation would have anticipated

4

the profit-making potential of use of the patented technology to be, compared to using non-infringing alternatives" (citation and quotation marks omitted)); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015) ("A key inquiry in the analysis is what it would have been worth to the defendant, as it saw things at the time, to obtain the authority to use the patented technology, considering the benefits it would expect to receive from using the technology and the alternatives it might have pursued"); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014) ("there may be more than one reliable method for estimating a reasonable royalty [for example based on] the value of the benefit provided by the infringed features by a comparing the accused product to non-infringing alternatives"); *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation").

The difference in value—whether expressed as increased performance, higher revenue, lower costs, or greater market share—between the accused products and noninfringing alternatives achieves apportionment of the patented invention. *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 125503, at *5 (E.D. Tex. Jan. 9, 2016) (denying motion to strike damages opinion that "reflects an attempt to directly calculate the 'incremental benefit' of each patent over the 'next-best' non-infringing alternative" because this "analysis attempts to directly apportion the royalty base to the precise value of the patented features"); *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-CV-00126-JRG-RSP, 2022 WL 4492403, at *3 (E.D. Tex. Sept. 27, 2022) (the requirement "to tie the proof of damages to the 'footprint' of the claimed invention" "may be met if the patentee adequately shows that the defendant's infringement allowed it to avoid taking a different, more costly course of action").

5

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

The cases cited by Fortinet do not suggest otherwise, as their fact patterns are materially different. Mot. at 3. *Realtime Data, LLC v. Oracle Am., Inc.*, No. 6:16-CV-00088-RWS-JDL, 2017 WL 11574028, at *6 (E.D. Tex. Mar. 30, 2017), involved a methodology where the expert "divides the number of patented 'features' of an accused product by an overall number of identified features in the product." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018), involved an expert who failed to "tie the relevant *Georgia-Pacific* factors to the 5% royalty or explain how she calculated the 5% royalty rate using these factors." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1318 (Fed. Cir. 2014), involved "comparable benchmark products" that had features the expert "contended were similar to the asserted features." *Lawrence v. Raymond Corp.*, No. 3:09 CV 1067, 2011 WL 3418324, at *1-2 (N.D. Ohio Aug. 4, 2011), is not a patent case but rather involved claims for defective design, defective warning, and punitive damages for personal injury. *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 874 (E.D. Wis. 2010), is also not a patent case but rather involved claims of unjust enrichment.

6

None of these cases address the noninfringing alternative methodology employed by Dr. Smith, nor do they support exclusion of his opinion.

### B. Fortinet's Apportionment Criticisms Go to Weight, Not Admissibility

The remainder of Fortinet's challenge to Dr. Smith's opinions is based on Fortinet's complaint that "there are numerous non-patented and/or conventional components within the Accused Products that impact both firewall throughput and IPsec VPN throughput." Mot. at 6. As Dr. Smith's noninfringing alternative analysis achieved apportionment as discussed above and is therefore admissible, Fortinet's quibbles with the correctness of his results are for the jury to weigh. But as shown below, Fortinet is incorrect on the law and also ignores Dr. Smith's explanation for how his encryption throughput efficiency analysis accounted for "differences in processor speed, processor quantity, interface speed and capacity, or software differences impacting data flow." *Id.* at 8.

First, this is not a legal basis to exclude Dr. Smith's opinion. For example, in *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338-39 (Fed. Cir. 2015), the Federal Circuit explained, "it has long been recognized that a patent that combines 'old elements' may 'give[ ] the entire value to the combination' if the combination itself constitutes a completely new and marketable article." This directly refutes Fortinet's argument, as "it is improper to assume that a conventional element cannot be rendered more valuable by its use in combination with an invention." *Id.* at 1338. The Federal Circuit elaborated on the various ways to determine that added value:

> Several of the factors set forth in the *Georgia–Pacific* case bear directly on this issue. *Georgia–Pacific* factors nine and ten refer to "the utility and advantages of the patent property over any old modes or devices that had been used" and "the nature of the patented invention, its character in the commercial embodiment owned and produced by the licensor, and the benefits to those who used it," respectively. Factor thirteen, which refers to the "portion of the realizable profit that should be credited to the invention," embodies the same principle. Thus, the standard *Georgia–Pacific* reasonable royalty analysis takes account of the

7

> importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation.

*Id.* Mr. Bergman's analysis of these very *Georgia-Pacific* factors is based on Dr. Smith's noninfringing alternative opinions. Yim Decl. Ex. I (Bergman Fortinet report) ¶¶ 257-59, 263.

Contrary to Fortinet's assertions, it is not the law that damages analysis must eliminate the value of every non-patented contribution to the accused product, as the Federal Circuit explained:

> It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages. For a patent that combines "old elements," removing the value of all of those elements would mean that nothing would remain. In such cases, the question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone.

*AstraZeneca*, 782 F.3d at 1339. And that question of "how much new value is created by the novel combination" is shown via the well-grounded methodology of comparing the accused products with noninfringing alternatives as discussed at length above.

Of course, Fortinet had the opportunity to show that other noninfringing alternatives might have been able to provide similar functionality with a smaller difference in encryption throughput efficiency, but it intentionally waived the ability to present such evidence, as noted in Dr. Smith's report: "Fortinet has decided that it will not pursue non-infringing alternatives." Yim Decl. Ex. A (Smith Fortinet report) ¶ 63 (quoting Yim Decl. Ex. J (Email from D. Dotson (Fortinet) to S. Hasenour (Lionra), dated December 20, 2023 at 3:17PM EST)). Indeed, the absence of noninfringing alternatives is indicative of the high value of the patented invention. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1297 (Fed. Cir. 2015) (approving of damages expert's testimony "that the [hypothetical] negotiation would concern the entire $0.56 benefit because Samsung had no non-infringing alternatives, and the entire benefit was therefore incremental profit from using the patent"); *Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977,

8

984 (Fed. Cir. 2019) ("Sprint introduced evidence from which the jury could conclude that Time Warner did not have available to it any reasonable non-infringing alternatives to Sprint's patented technology for connecting PSTN networks to IP networks. That factor also bears on the amount of the royalty that a jury could find would emerge from a hypothetical negotiation, as the absence of non-infringing alternatives would strengthen the patentee's hand in such a negotiation.").

But Dr. Smith did consider the effect of other improvements in throughput when designing his methodology for analyzing the incremental benefit of the patented technology in the Accused Products over noninfringing alternatives. Although Fortinet asked Dr. Smith this very question at his deposition, Fortinet conspicuously omits it from its motion:



9

Yim Decl. Ex. K (Smith Dep. Feb. 14, 2024) at 104:10-105:15 (emphasis added). Thus, as a factual matter, Dr. Smith controlled for the improvements in the non-patented processors etc. that Fortinet complains about.

Fortinet cites *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322555, at *5 (E.D. Tex. Apr. 6, 2017), but this case did not involve the noninfringing alternative methodology used by Dr. Smith to apportion, so it is inapplicable here. The same is true for Fortinet's reliance on *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309-10 (Fed. Cir. 2018). In any case, criticisms about the correctness of the noninfringing alternative analyzed are not for the Court to decide, but rather for the jury. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 216CV00693RWSRSP, 2023 WL 6553832, at *7 (E.D. Tex. Oct. 8, 2023) ("There may be questions regarding the correctness of Mr. Gunderson's apportioned royalty base, apportioned royalty rate, his opinions regarding non-infringing alternatives, and his reasonable royalty results, but assessments as to credibility and correctness are for the factfinder, not the Court").

### IV.    CONCLUSION

For these reasons, Fortinet's motion to exclude portions of Dr. Hugh's infringement report (Dkt. No. 279) should be denied in its entirety.

Dated: March 18, 2024

Respectfully submitted,

By: */s/ Brett Cooper*
Brett E. Cooper (NY SBN 4011011)
bcooper@bc-lawgroup.com
Seth Hasenour (TX SBN 24059910)
shasenour@bc-lawgroup.com
Jonathan Yim (TX SBN 24066317)
jyim@bc-lawgroup.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bc-lawgroup.com
**BC LAW GROUP, P.C.**
200 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 951-0100
Fax: (646) 293-2201

Andrea L. Fair (TX Bar No. 24078488)
Garrett Parish (TX Bar No. 24125824)
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
andrea@wsfirm.com
gparish@wsfirm.com

Glen E. Summers (CO Bar No. 30635)
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com

Mark Levine (IL Bar No. 6276086)
Luke Beasley (IL Bar No. 6334359)
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
mark.levine@bartlitbeck.com
luke.beasley@bartlitbeck.com

Amy J. Wildermuth (IL Bar No. 6256999)
17811 Comstock Road
Wayzata, MN 55391

11

Telephone: (801) 913-4068
amy.wildermuth@gmail.com

***Attorneys for Plaintiff Lionra Technologies Limited***

### CERTIFICATE OF SERVICE

Pursuant to Federal rules of Civil Procedure Local Rule CV-5, I hereby certify that a copy of the foregoing document was served via electronic mail on March 18, 2024.

*/s/ Brett Cooper*
Brett Cooper

### CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned case, this motion contains confidential information. Accordingly, this document is to be filed under seal.

*/s/ Brett E. Cooper*
Brett E. Cooper

12