**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LTD., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 2:22-cv-0322-JRG-RSP |
| | § | (Lead Case) |
| FORTINET, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**REPORT AND RECOMMENDATION**

Before the Court are Defendant Palo Alto Networks, Inc.'s ("PAN") Motion for Summary Judgment of Limitation on Damages (Dkt. No. 254); Defendant Fortinet, Inc.'s Motion for Partial Summary Judgment Regarding License, or in the Alternative, Non-infringement (Dkt. No. 261); and Defendant Cisco Systems, Inc.'s Motion for Partial Summary Judgment as to Cisco's License Defense and Noninfringement with respect to patent Nos. 7,685,436 and 8,566,612 (Dkt. No. 264). As each motion concerns the same license and similar underlying circumstances, the Court addresses them together.

After consideration, the Court recommends the motions should be **GRANTED** as provided below.

## I.   BACKGROUND

The parties have stipulated that on June 30, 2022 RPX and Lionra entered into a Patent License Agreement which has been disclosed in this case[1]. (Dkt. No. 210.) The parties have further stipulated that both Intel Corporation and Advanced Micro Devices, Inc. are "Initial Licensee[s]" under the Patent License Agreement. (*Id*.)

The Patent License Agreement grants Initial Licensees "(i) sublicenses under the Patent License, as well as (ii) an irrevocable unconditional release from all Claims relating to any Patent including those

---

[1] For ease of reference, the Court will refer to the copy of the agreement at Dkt. No. 254-2.

for damages for past, present and future infringement of the Patents." (Dkt. No. 254-2 at 5.) A "Patent License" means a "perpetual, royalty-free, fully paid-up, irrevocable, nonexclusive worldwide license under the Patents to directly or indirectly make, . . . any Licensed Product and Service . . ." (*Id*. at 3.)

The Agreement further provides "[t]he sublicense (and release) granted … to any Entity under the Patent License shall include an automatic further sublicense (and release) under the Patents to that Entity's Affiliates …, and such RPX Licensees' … direct and indirect customers … solely to the extent such third parties make … any Licensed Product and Service, and solely with respect to such Licensed Products and Services (each, a 'Covered third Party')." (*Id*. at 5.)

"Licensed Product and Service" means "any past, present or future product . . . at any time, made, have made, . . . or otherwise disposed of or exploited by or on behalf of an RPX Licensee or an RPX Licensee Affiliate, alone or in combination with other products … of which would result in infringement (direct, indirect, or otherwise) of one or more Patents. … Licensed Product and Service will include any Combined Licensed Product and Service."(*Id*. at 2-3.)

"Combined Licensed Product and Service" means "any past, present or future combination or use, whether by an RPX Licensee, any RPX Licensee Affiliate, or any Covered Third Party, of a Licensed Product and Service with any other product, service, technology, or material, only if: (i) a portion of such Licensed Product and Service … satisfies (or is alleged by Licensor or its Affiliates to satisfy), one or more material elements or steps of a claim in any Patent…" (*Id*. at 1-2.)

Additionally, the Agreement provides a covenant not to sue: "neither Licensor nor any of its Affiliates will Assert or allege that any product, software, technology, material and/or service of any RPX Licensee or any RPX Licensee Affiliate satisfies an element or step of a claim in any Patent against any Entity." (*Id*. at 8.)

On November 27, 2023, the Court issued its claim construction order construing "packet engine," "cryptographic core," and "intrusion detection system" to be "hardware, or a combination of hardware and [variously configured] software." (Dkt. No 162 at 35-45.)

## II.    APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

## III.    ANALYSIS

In each of their motions, defendants contend that certain of their products contain processors provided by Intel or AMD that Lionra accuses of meeting one of the "packet engine," "cryptographic core," and "intrusion detection system" limitations. (*See* Dkt. No. 254 at 7.) Defendants contend this either renders their products licensed as "Combined Licensed Product and Service," or that Lionra's

assertion of infringement is barred under the covenant not to sue contained in the license.

Lionra responds on multiple fronts. First, as to PAN, Lionra argues that PAN never pleaded a license defense and thus it is waived. (*See* Dkt. No 301 at 6-9.) Second, Lionra contests both that summary judgment is an appropriate vehicle for this determination and whether the accused products can be "Combined Licensed Product and Service." (*See id*. at 10-17.)

The Court addresses each of the issues in turn.

### A.  PAN'S WAIVER

Lionra contends PAN waived its license defense by not raising it in its answer. (Dkt. No. 301 at 6.) Lionra contends that Rule 8 bars the instant motion and PAN's naming its motion as for "Limitation on Damages" does not encompass a license defense. (*Id*. at 6-7.)

Lionra further contends that should PAN's motion be considered as effectively including a motion to amend its answer, it should be denied because PAN can show no good cause. (*Id*. at 8.) Lionra contends PAN can show no diligence since the Agreement was produced in March of 2023 and Pan recognized its importance as early as November 2023 when it issued a Request for Admission directed to such defense. (*Id*. at 9.) Without diligence, Lionra contends PAN cannot amend its answer. (*Id*.)

PAN disagrees and contends that it effectively raised this defense in its answer. (Dkt. No. 330.) PAN contends in discovery, when asked about the basis for its affirmative defenses, it provided in a November 16, 2023 filing that it would seek to "limit damages to the extent Plaintiff accuses licensed components in the Accused products of performing one or more limitations of the Asserted Claims." (*Id*. at 1.) PAN further points to other discovery activity that put Lionra on earlier notice of its defense such as PAN's RFA and questions to Lionra's 30(b)(6) witness. (*Id*. at 2.) PAN contends Lionra was objectively aware of PAN's license defense as the parties filed a stipulation regarding the license agreement more than a month before the deadline

for summary judgment motions and Lionra provided an opening expert report addressing the defense around the same time. (*Id*. at 2.)

The Court finds, under all of the circumstances of this case, that PAN did not waive its license defense. The Court agrees with Lionra that "Limitations of Damages" does not sufficiently plead a license defense. However, it is clear that Lionra was well aware of PAN's license defense and is not surprised or unfairly prejudiced by this motion.

The Fifth Circuit has held that "an affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (internal citation removed). A failure to plead an affirmative defense in strict accordance with Rule 8 is "especially excusable where the law on the topic is not clearly settled." *Id*. (internal citation removed).  The Claim Construction Order in this case (Dkt. No. 162), which held that certain limitations required hardware rather than just software, issued on November 27, 2023, after PAN's discovery response referred to above.  Defendants contend that this construction made clear that the license for the Intel and AMD processors, relied upon for certain limitations of the infringement contentions, was a material defense.

In *Pasco* the defendant raised its affirmative defense in a summary judgment motion two months before the discovery deadline and six months before the pretrial conference. *Id*. Here, the first time PAN raised its license defense in a filing to the Court was February 20, 2024, more than 2 months before the pretrial conference and three months before trial. (*See* Dkt. No. 254.) Further, it is clear Lionra knew of the defense well before PAN's summary judgment motion and before the close of expert discovery since Lionra affirmatively addressed the license defense in

5

an opening expert report[2]. (*See* Dkt. No. 330-4.)[3]

The Court finds Lionra was not unfairly prejudiced in its ability to respond to PAN's license defense. Notably, Lionra identifies no discovery it would need to take to prepare for this defense and, as discussed below, the only arguments it raises against the license defense are based in contract interpretation, i.e. law, not fact. Such does not support an argument for prejudice. *See Allianz Versicherungs, AG v. Profreight Brokers Inc.,* 99 F. App'x 10, 12 (5th Cir. 2004) (finding an affirmative defense raised for the first time three months before trial based on the "applicability of a contract provision" does not support finding prejudice as "a pure question of law belies [plaintiff's] assertion that it needed more time for discovery.")

### B.  COVENANT NOT TO SUE

Fortinet[4] argues that the covenant not to sue portion of the Agreement, providing "neither Licensor nor any of its Affiliates will Assert or allege that any product, software, technology, material and/or service of any RPX Licensee… satisfies an element or step of a claim in any Patent against any Entity," precludes Lionra's claim. (Dkt. No. 261 at 7.) Fortinent contends that because Lionra accuses Intel or AMD processors running FortiOS as the claimed "intrusion detection system," Lionra has alleged a Licensee's product "satisfies an element or step of a claim." (*Id*.)

Lionra contends ambiguity prevents this issue from being decided by summary judgment. (Dkt. No. 302 at 4.) Lionra first contends Fortinet is arguing it has a license under the discussed provision but this is counter to the rest of the agreement. (*Id*. at 5.) Lionra points to the Patent License provision that provides for the possibility of a sublicense for certain "Covered Third

---

[2] While Lionra contends this was limited only to Cisco, it identifies no difference in how it might have addressed PAN's defense and indeed addresses all defendants in materially the same manner as set out below.
[3] This is in contrast to *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 759 (E.D. Tex. 2016), underlined_amended in part, No. 4:14-CV-00371, 2017 WL 1716589 (E.D. Tex. Apr. 27, 2017). There the license defense was not raised "until well beyond the deadline for summary judgment." *Id*. at 759-60.
[4] Cisco makes a similar argument in its larger argument addressed below. (Dkt. No. 264 at 9.)

Part[ies]," and argues that this applies "solely with respect to such Licensed products and Services." (*Id*.) Second, Lionra argues that the cited provision applies only to a product "of any RPX Licensee" not a product provided by Fortinet. (*Id*.) Lionra also argues that because "Lionra has not alleged that any Intel or AMD product by itself 'satisfies an element or step of a claim in any Patent against any Entity'" it cannot satisfy the cited provision. (*Id*. at 6.)

Lionra's first point is unconvincing. The covenant not to sue provision applies to Lionra, limiting its ability to assert infringement against "any Entity." As such, provisions discussing licenses granted to "Covered Third Part[ies]" do not alter the covenant not to sue.

Lionra's second point also fails to persuade. While the provision applies exclusively to the products of an RPX licensee, that is how Fortinet proposes to apply the provision. Fortinet contends Lionra has alleged that Intel or AMD processors meet the "intrusion detection system" limitation. Again, the "against any Entity" language forecloses Lionra's argument that Fortinet may not raise the provision as to its accusation of Fortinet's products.

Lionra's last argument that Intel or AMD processors do not themselves "satisfy" the element "intrusion detection system" because Fortinet provides the software to make the processors "intrusion detection systems" is not convincing. As construed by the Court, an "intrusion detection system" is "hardware, or a combination of hardware and software, that is configured for matching parts of a data stream against a stored set of patterns." (Dkt. No 162 at 46.) Under Lionra's theory, Intel or AMD processors satisfy the hardware component of the Court's construction of the "intrusion detection system" limitation. There is no reason why the hardware component of this limitation cannot be considered an "element or step of a claim."

As such, Lionra is barred from asserting a theory of infringement that identifies Intel or AMD processors as the requisite hardware that is claimed.

### C.  "COMBINED LICENSED PRODUCT AND SERVICE"

Next, the Defendants argue they are "Covered Third Part[ies]" with regard to their products including Intel and AMD processors because those products are "Combined Licensed Product[s] and Service[s]." (Dkt. No. 254 at 10-11; Dkt. No. 261 at 7-9; Dkt. No. 264 at 9-11.)

In particular, Fortinet argues that its products are "Licensed Products and Services" because they are "Combined Products and Services." (Dkt. No. 261 at 8.) First, Fortinet contends Intel and AMD processors are "Licensed Products and Services" since they are products of RPX Licensees and are used in combination with other components to create the Accused Products. (*Id*.) Second, Fortinet argues that because an Intel or AMD processor "satisfies (or is alleged by Licensor or its Affiliates to satisfy), one or more material elements or steps of a claim in any patent," Fortinet's accused products are "Combined Licensed Product[s] and Service[s]" and thus "Licensed Products and Services." (*Id*.) Fortinet contends the "intrusion detection system" is unquestionably a "material" element. (*Id*. at 9.)[5]

Lionra first contests that Fortinet's products or the Intel and AMD processors can be "Licensed Products" under the Agreement's definition. (Dkt. No. 302 at 7.) Lionra contends the definition applies only to "products provided 'by or on behalf of an RPX Licensee.'" (*Id*.) Lionra contends that only the "Combined Licensed Product and Service" definition mentions third parties and that because Fortinet does not explain its understanding and application of "Licensed Product," Fortinet's motion should be denied. (*Id*.)

Lionra also argues Fortinet has not shown that the Intel or AMD processors "satisfy" a "material element." (*Id*. at 8-12.) Lionra contends Fortinet has only shown "that the processor in the ForiGate products satisfies the *hardware requirement* for a limitation in the Asserted Claims" or "just one part of the claim terms requiring 'hardware, or a combination of hardware and

---

[5] PAN and Cisco make similar arguments. (*See* Dkt. No. 254 at 10-11; Dkt. No. 264 at 9-11.)

software.'" (*Id*. at 9-10.) Lionra contends Fortinet does not show the Intel or AMD processors "satisfy" a claim element. (*Id*.)  It bears noting that "element" is this context is not a precise term.  It generally refers to any limitation of a claim, in other words any requirement of the claim.  *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259-60 (Fed. Cir. 1989).

Lionra further contends that Fortinet cannot show the Intel or AMD processors meet a "material" element because they are not "material." (*Id*. at 10-12.) Lionra argues that the inclusion of "material" here indicates that the negotiating parties believed some limitations to be immaterial and thus some elements, while necessary for infringement, would not be material. (*Id*.) Lionra contends this is what the processors should be considered as "the nature and characteristics of the processor is immaterial to the infringement analysis." (*Id*. at 12.)

The Court is unconvinced by Lionra's arguments. First, the Agreement clearly provides "an automatic further sublicense" to "direct and indirect customers" as "Covered Third Part[ies]" to "make … any Licensed Product and Service." (Dkt. No. 254-2 at 5.) "Licensed Product and Service" clearly includes "Combined Licensed Product and Service." (*Id*. at 2-3.) A "Combined Licensed Product and Service" means a combination by a "Covered Third Party" of a "Licensed Product and Service[6] provided by … the RPX Licensee … satisfies (or is alleged by Licensor or its Affiliates to satisfy), one or more material elements or steps of a claim in any Patent." (*Id*. at 1.) Second, Lionra practically concedes that an Intel or AMD processor "satisfies the *hardware requirement* for a limitation in the Asserted Claims." (*See* Dkt. No. 302 at 9-10.) Third, while the Court agrees that the term "material" must be given meaning in the Agreement, the Court cannot agree that the only hardware cited to meet a hardware limitation is immaterial.

---

[6] The Intel and AMD processors are Licensed Products as they are made by RPX Licensees and, according to Lionra, would in combination, as in the Defendants' products, infringe Lionra's patents. (*See id*. at 2-3.)

The Court finds the accused products incorporating Intel and AMD processors are licensed as "Combined Licensed Product[s] and Service[s]."

## IV.     NON-INFRINGEMENT

Fortinet also argues in the alternative that if the Accused products incorporating Intel and AMD processors are not licensed, they are non-infringing. (Dkt. No. 261 at 10-11.)[7]

As the Court finds they are licensed, the Court does not reach this further argument.

## V.      CONCLUSION

The Court recommends that the Defendants' Motions that products incorporating Intel or AMD processors are Licensed be **GRANTED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 23rd day of April, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[7] Cisco also makes a further non-infringement argument. However, because it appears that the license issue is dispositive of the infringement case against Cisco and PAN as to the '436 and '612 Patents, the non-infringement argument is moot. The Parties are **ORDERED** to advise the Court if this is not the case within one week of this Report.