IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LIMITED, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:22-cv-00322-JRG-RSP (LEAD CASE) |
| FORTINET, INC., | § § | |
| *Defendant*. | § § | |

## MEMORANDUM ORDER

Before the Court is Palo Alto Networks, Inc.'s Motion to Exclude Non-Infringing Alternatives Testimony of Dr. Smith under *Daubert* (Dkt. No. 277). After consideration, the Court **GRANTS IN PART** and **DENIES IN PART** the motion as provided below.

### I.   APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified

various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. ANALYSIS
### A. NON-INFRINGING ALTERNATIVES

PAN argues that Dr. Smith's discussion of Cisco Catalyst 6500 and Fortinet Products as non-infringing alternatives should be stricken because Dr. Smith never performs an analysis to

show that they do not infringe. (Mot. at 3-4.) PAN cites Dr. Smith's deposition where he testified that he did not "have an opinion whether it is infringing or is not infringing" as to the Catalyst 6500 product. (*Id*. at 5.) Instead, Dr. Smith testified he did not need such an opinion because if "it's determined that the 6500 does not invalidate the patent … then it became a non-infringing alternative." (*Id*. at 6.)

PAN contests this position, arguing it is no better than arguing a product not pursued for infringement is by that token, a non-infringing alternative. (*Id*.) PAN contends there will be no determination whether the Catalyst 6500 invalidates the Asserted Patents and PAN's invalidity expert never addresses the product. (*Id*.)

PAN argues the Fortinet products should be similarly excluded because Dr. Smith does not analyze them. (*Id*. at 8.) Further, PAN argues the only identified reasons they might not infringe, using two or fewer processing devices, Dr. Smith rejects, and other reasons are not in his report. (Mot. at 8.)

Lionra responds that Dr. Smith analyzed PAN's interrogatory response where PAN identified certain categories of non-infringing alternatives, including "Any prior art system relied on by defendant in its Invalidity Contentions or Invalidity Report and that Plaintiff contends does not anticipate or render obvious the '436/'612 Patents." (Opp. at 3.) Lionra contends PAN's invalidity contentions identify the "Cisco Catalyst 6000 Series" and separately that the Catalyst 6500, per Cisco, has the packet engine separated from the cryptographic core, rendering it non-infringing. (*Id*. at 3-4.) Lionra contends it is the admission of PAN that the "Cisco Catalyst 6000 Series" is a non-infringing alternative, and the separated hardware components are the basis for Dr. Smith's testimony. (*Id*. at 5-6.) Lionra emphasizes that the fact "that PAN opted not to pursue an invalidity case with the Cisco Catalyst 6500 it disclosed in its invalidity contentions is telling…"

3

(*Id*. at 6.)

Lionra contends the same is true of the Fortinet products as they were identified in Fortinet's interrogatory response when Fortinet provided "they already perform the accused functionality using two or fewer processing devices." (*Id*. at 7-8.) Lionra contends this is in accordance with PAN's non-infringing alternative proposal that "[a] system that includes only one packet engine" is a non-infringing alternative. (*Id*. at 8.)

The Court finds PAN has provided insufficient evidence for the Court to conclude Dr. Smith's opinions as to the Cisco systems that PAN originally identified as prior art are unreliable or irrelevant. Lionra is not out of line in accepting PAN's contention that the Cisco systems are prior art and concluding from there that they are non-infringing[1]. While Dr. Smith does not articulate this reasoning as succinctly, PAN appears to have conceded that they Cisco systems are prior art in its contentions.

As to the Fortinet, PAN is correct. Dr. Smith provides no basis for his assertion that the Fortinet products are non-infringing. Unlike the Cisco products, PAN has not conceded to their status as non-infringing. While Dr. Smith attempts to suggest otherwise, his showing is flawed. First, Dr. Smith concludes an equivalence between Fortinet's interrogatory response with PAN's response but does not offer any explanation for this conclusion. Second, Dr. Smith expressly disagrees with the portion of PAN's response he relies upon. Dr. Smith is not permitted to both disagree with a position and rely upon it. As such the Court strikes Dr. Smith's discussion of the Fortinet products as non-infringing alternatives.[2]

---

[1] A piece of prior art by its nature of being *prior* cannot infringe a later patent, or if it does, that patent is invalid by the maxim "[t]hat which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537, 9 S. Ct. 389, 392, 32 L. Ed. 738 (1889).

[2] The Court further strikes Mr. Bergman's, Lionra's damages expert, discussion of the same as similarly unsupported.

### B.  ENCRYPTION THROUGHPUT EFFICIENCY

PAN further contends that the "encrypted throughput efficiency" measure of benefit used by Dr. Smith is not tied to the claims. (Mot. at 8.) PAN argues this violates the Federal Circuit's instruction that "the invention to be valued is only the practicing of the entirety of [the asserted claims]." (*Id*. at 8-9.) PAN contends Dr. Smith cannot contend that "[c]omparing the encryption throughput efficiency of the Accused Products with that of the next-best noninfrining alternatives demonstrates the benefits of the '436/'612 patents to the Accused Products" without expressly tying "encryption throughput efficiency" to the language of the claims. (*Id*.)

Lionra argues Dr. Smith performs apportionment here by a non-infringing alternative analysis. (Opp. at 8.) Lionra contends whether it is in price, functionality, or market share, a non-infringing alternative analysis looks to what using the covered technology provides the accused infringer. (*Id*. at 9.) Lionra contends that Dr. Smith's identification of this advantage in the "encrypted throughput efficiency" is entirely in line with Federal Circuit caselaw. (*Id*. at 9-10.) Lionra further points to Dr. Smith's report where he provides such is an appropriate accused product feature to value. (*Id*. at 10-11.)

The Court agrees with Lionra. A non-infringing alternative analysis is one accepted apportionment analysis. It is by analyzing the benefits the accused product enjoys over a non-infringing alternative, that the portions of the accused product that do not make up the accused technology are accounted for and apportioned out of the damages valuation. As Dr. Smith has provided testimony supporting why he chose a particular feature to measure, the Court leaves it to the jury with the aid of PAN's cross-examination to determine whether that feature is appropriately considered.

### C.  CATEGORICAL ANALYSIS

Last, PAN complains of Dr. Smith's analysis of the encryption throughput efficiency of the Fortinet products. (Mot. at 10.) PAN contends that to compare such efficiency between infringing products and non-infringing alternatives, Dr. Smith should have compared the highest efficiency that can be obtained by the non-infringing product with the Accused Products. (*Id*. at 11.) But Dr. Smith averaged both. (*Id*.) PAN contends this is particularly problematic when several of the non-infringing products have greater efficiencies than those of the accused products. (*Id*.)

Lionra responds that PAN's criticism goes to weight not admissibility as it addresses the correctness of the facts used, not the Dr. Smith's methodology. (Opp. at 12.) Lionra contends that how data variances are taken into consideration is for Lionra's damages expert, and Dr. Smith's opinions should not be excluded on this point. (*Id*. at 13.)

The Court does not find PAN's attorney argument as to how an expert should consider data convincing. While PAN has presented some rationale in support of its preferred procedure, so has Lionra. Whether variance in the efficiency of dissimilar models is best addressed through averaging or taking the highest performance, is a question best left to the jury, not *Daubert*.

### III.  CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** PAN's motion to strike as provided above.

**SIGNED this 15th day of May, 2024.**

                                                  ROY S. PAYNE
                                              UNITED STATES MAGISTRATE JUDGE