IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LIMITED, | § § § | |
| *Plaintiff*, | § | |
| v. | § § | CIVIL ACTION NO. 2:22-cv-00322-JRG-RSP (LEAD CASE) |
| FORTINET, INC., | § § § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER**

Before the Court is Palo Alto Networks, Inc.'s Motion to Exclude to Exclude Portions of Jim W. Bergman's Opinions Regarding Damages (Dkt. No. 278). After consideration, the Court **DENIES** the motion as provided below.

**I.     APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified

various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. ANALYSIS
### A. "ENCRYPTED THROUGHPUT EFFICIENCY"

PAN argues that Dr. Smith's and Mr. Bergman's damages opinions rely on the difference in "encrypted throughput efficiency" between the Accused PAN Products and alleged non-

infringing alternatives inappropriately. (Mot. at 4-10.)

First, PAN argues that the "encrypted throughput efficiency" is different from the accused technology, creating a misalignment in damages. (*Id*. at 4-7.) In sum, PAN contends that because "(1) the inventors did not invent encrypted throughput efficiency; (2) the claimed technology improves throughput generally but does not necessarily affect encrypted throughput efficiency; and (3) other factors unrelated to the claimed technology and unanalyzed by Dr. Smith might also affect encrypted throughput efficiency," it should not be considered. (*Id*. at 6.)

Second, PAN argues it is not the "encrypted throughput efficiency" that drives demand but threat prevention. (*Id*. at 7-8.) PAN contends Mr. Bergman testified that it is threat prevention that drives sales but threat prevention is broader than encrypted throughput. (*Id*.) PAN argues "[i]solating encrypted throughput efficiency and attaching some value to it does not tell the fact-finder anything at all about the claimed invention, and it does not tell the factfinder anything at all about economic demand for the accused products." (*Id*. at 8.)

Third, PAN complains that no Lionra expert has analyzed the difference between the accused products and non-infringing alternatives to determine if it is the asserted patent that accounts for their differences. (*Id*. at 9-10.) PAN points to a lack of analysis that the alleged non-infringing alternatives are not infringing. (*Id*.)

In all, PAN contends this issue is comparable to that faced in *Apple v. Wi-LAN*. (*Id*. at 10-11.) PAN contends that just as in *Apple,* Lionra uses encrypted throughput efficiency as a starting point despite not having invented such and despite the patented technology driving raw throughput instead. (*Id*. at 11.)

Lionra responds to each point in turn. First, Lionra contends its non-infringing alternative analysis properly apportions value to the patented technology. (Opp. at 2-6.) Lionra contends the

3

difference in value expressed as increased performance, profits, or market share between the accused devices and non-infringing alternatives apportions the value of the asserted patent. (*Id*. at 4.) Lionra contends it need not have invented "encrypted throughput efficiency" when its invention contributes to its improvement. (*Id*. at 4-5.) Lionra further contends that elimination of the value of all conventional elements is not required when the invention is a novel combination of conventional elements as here. (*Id*. at 6.)

Second, Lionra argues encryption throughput efficiency is relevant here because when analyzed as Mr. Bergman has, it appropriately relates to threat prevention. (*Id*. at 7-8.) Lionra contends Mr. Bergman's regression analysis appropriately analyzes the relationship between the raw input, encryption throughput efficiency, and the consumer concern, threat prevention. (*Id*. at 8.)

Third, Lionra contends that Dr. Smith properly analyzed the non-infringing alternatives referencing its opposition to PAN's *Daubert* motion against Dr. Smith. (*Id*. at 8-9.)

Last, Lionra contends *Apple v. Wi-LAN* is unlike this case. (*Id*. at 9-10.) Lionra contends *Apple* did not address the issue of a novel arrangement of known components. (*Id*.) Further, Lionra contends there is no "much broader statement about the value of the patented technology" upon which *Apple* relied. (*Id*.)

The Court agrees with Lionra. While it is clear that the patented invention is not "encrypted throughput efficiency," Lionra has put forth credible evidence in the form of testimony from both Dr. Smith and Mr. Bergman that it is an appropriate measurement of the advantages gained through use of the patented invention. Likewise, Mr. Bergman provides testimony that his analysis accounts for the difference between "encrypted throughput efficiency" and the market driver threat prevention. The Court finds that PAN's issue with Mr. Bergman's analysis of "encrypted

throughput efficiency" is a question of his correctness as to his statistical analysis for the jury to decide at trial, not the Court to decide at *Daubert*.[1]

Last, the Court finds that *Apple v Wi-LAN* inapplicable here. There, the technical expert compared "systems that use VoLTE against the best purported noninfringing alternative, Skype." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 966 (Fed. Cir. 2022). The Court faulted this analysis because the technical expert "used VoLTE as a starting point to determine the benefits of the patented invention, despite an admission that the inventors of the patented technology did not invent VoLTE … relied on testing comparing the voice call quality of VoLTE with Skype, a purported noninfringing alternative that did not utilize VoLTE technology, and attributed the difference to the benefit of the asserted patents… [and] connected VoLTE generally with the benefits of the asserted patents." *Id*. at 975. Here, Lionra uses a product it contends infringes as a starting point not an entire standard, comparing only a limited technical feature related to the purported invention, and, to the Court's understanding, makes no greater claim to the benefit of the accused product.

### B.  APPORTIONMENT BETWEEN PAN AND LIONRA

PAN further argues that Mr. Bergman inappropriately assigned Lionra the entire incremental benefit with none going to PAN. (Mot. at 11-13.) PAN contends Mr. Bergman does this without any material explanation or analysis and should be stricken per *VLSI Technology LLC v. Intel Corp.* (*Id*. at 12.) PAN argues Mr. Bergman must perform a cost-and-contribution analysis to determine how the parties would have split the profits during a hypothetical negotiation. (*Id*. at 12-13.)

Lionra points the Court to *Bayer Healthcare LLC v. Baxalta Inc.* and argues *VLSI* was

---

[1] As to PAN's third point, the Court finds this is best addressed in PAN's separate motion against Dr. Smith.

5

decided on other issues and should not be read as PAN contends. (Opp. at 10-13.) First, Lionra contends what PAN cites from *VLSI* is only dicta and actually addresses disgorgement. (*Id*. at 10.) Second, Lionra contends Mr. Bergman's method has been endorsed by the Federal Circuit in *Bayer Healthcare LLC v. Baxalta Inc*. (*Id*. at 10-11.) Last, Lionra contends that Mr. Bergman analyzes *Georgia-Pacific* factor 6, in particular contending that PAN receives significant additional benefits beyond those quantified in an income approach. (*Id*. at 12-13.)

The Court finds this question is best left for the jury. First, the Court agrees with Lionra that *VLSI Technology LLC v. Intel Corp.* is not determinative here. There, the Federal Circuit provided "we similarly do not adjudicate the merits of Intel's other challenges to VLSI's damages-calculation methodology. We note … VLSI has not adequately elucidated how the last-step cost-and-contribution analysis [] reasonably establishes the choice Intel and VLSI would have made…" *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1349 (Fed. Cir. 2023). The Court reads this as fact specific guidance to VLSI, as was also provided to Intel, so upon retrial, fewer issues arise. *See id*. Without further discussion of what would be needed, the Court cannot apply this discussion in *VLSI* to do more than suggest that a party's proposed division of profits must be supported by the evidence, which neither party seems to dispute.

Likewise, *Bayer Healthcare LLC v. Baxalta Inc.* does not elucidate a standard here and indeed, does not appear to grapple with the division of profits. Rather it address the propriety of presenting multiple royalty rates. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 983-85 (Fed. Cir. 2021).

The Court finds that Mr. Bergman's discussion of how the division of additional benefits, beyond the profits of just the accused devices, would support his proposed division of the incremental benefits, is sufficient to survive *Daubert*.

6

### C. RUNNING ROYALTY

Last, PAN complains that Mr. Bergman suggests a running royalty without any support and in the face of evidence to the contrary. (Mot. at 13.) PAN only points to a prior order from this Court in *Netlist, inc. v. Micron Tech., Inc.* in support. (*Id.*)

Lionra contends Mr. Bergman opines a reasonable royalty rate is appropriate because the only quantitative evidence he found relevant supports such. (Opp. at 13.) Lionra contends a non-infringing alternative analysis necessarily involves multiplying the determined benefit by the damages base to reach a running royalty. (*Id.* at 14.)

The Court finds PAN has not demonstrated there is sufficient evidence to exclude Mr. Bergman's running royalty analysis. In particular, PAN has entirely misread *Netlist, Inc. v. Micron Tech., Inc.*, No. 2:22-CV-203-JRG-RSP, 2024 WL 326563, at *4 (E.D. Tex. Jan. 27, 2024). This Court did not address the sufficiency of the expert's support in choosing a running royalty model over a lump sum model, only the propriety of considering future sales of an unreleased product in a running royalty model. *Id*. Thus without any legal support for the notion that an opposing expert should be barred from testifying that a running royalty is appropriate despite the defendant's preference for lump sum, the Court will not rule as such when the expert finds other factual support for the choice.

### III. CONCLUSION

The Court **DENIES** PAN's motions to strike as provided above.

**SIGNED this 15th day of May, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

7