IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LIMITED, | § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 2:22-cv-00322-JRG-RSP (LEAD CASE) |
| FORTINET, INC., | § § | |
| *Defendant.* | § § | |

**MEMORANDUM ORDER**

Before the Court is Lionra's Motion to Strike Testimony by Defendants' Damages Experts Ambreen Salters, Nisha Mody, and Laura Stamm[1] (Dkt. No. 285). After consideration, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motions as provided below.

I.  APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

---

[1] In light of Lionra's and Cisco's joint motion to stay pending settlement, the Court does not address Cisco's expert, Ms. Stamm.

1

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. ANALYSIS

### A. SETTLEMENT AGREEMENTS

Lionra contends that the Defendants' damages experts improperly analyze various settlement agreements and such testimony should be excluded. (Mot. at 2.) Lionra points to *Prism Techs. LLC v. Sprint Spectrum L.P.,* 849 F.3d 1360, 1368 (Fed. Cir. 2017) as governing the use of settlement agreements. (*Id*. at 3.) Lionra contends settlement agreements must have a commonality of technology between the settled case and the current action, a valuation of that technology, and adversarial testing of the valuation, and contends that does not exist in the complained of agreements. (*Id*.)

### I. RPX AGREEMENT

First, Lionra contends its agreement with the RPX Corporation is a settlement agreement as it settled several cases but Defendants' experts perform no analysis of the underlying technology. (Mot. at 3-4.) Lionra further contends the underlying settled cases involved entirely different technology than the case at hand. (*Id*. at 4.)

Lionra also argues Defendants have not established comparability of the RPX agreement for purposes of the hypothetical negotiation even outside the particularized concerns regarding the use of settlement agreements. (*Id*. at 7.) In particular, Lionra argues Defendants never establish a royalty base and instead merely cite the lump sum number in the RPX license to argue Lionra's current damages number is too great. (*Id*. at 7-9.)

Defendants respond that the RPX agreement is not properly considered a settlement agreement because, while it settled three litigations, it involved several more licensees. (Opp. at 4-5.) Defendants note that even those litigations involved only a small subset of the actually licensed patents. (*Id*. at 4.) In light of this, Defendants argue it should be clear that the RPX agreement is an arms-length transaction, not a settlement agreement. (*Id*. at 5.) From this, Defendants contend

the application of *Prism Techs* is not appropriate. (*Id*.)

As to Lionra's second argument, Defendants contend it goes to weight not admissibility. (*Id*. at 7.) Defendants contend their analysis of this agreement is merely a part of their respective *Georgia-Pacific* analysis as broadly providing a benchmark on the monetization value of the asserted patents. (*Id*. at 8.)

The Court finds Defendants have sufficiently demonstrated comparability of the RPX Agreement to the case at hand. When considering past patent licenses under *Georgia Pacific* factors 1 and 2 the proffering party "must account for differences in the technologies and economic circumstances of the contracting parties." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010). Here, Dr. Mody and Ms. Salters have sufficiently made such a showing to survive *Daubert*. It is undisputed that the patents asserted in this litigation were included in the RPX license.

Dr. Mody explains Mr. Bergman was overly focused on the few cases that the RPX agreement settled and that use of the Asserted Patents was considered. (Dkt. No. 285-3 at ¶¶94-96.) Dr. Mody explains that the RPX license does not provide a precise value for the Asserted Patents but the license does demonstrate a willingness to pay for a license and an order of magnitude for that willingness. (*Id*.) As such, Dr. Mody "account[s] for differences in the technologies and economic circumstances of the contracting parties."

Likewise, Ms. Salters' report provides the kind of analysis contemplated in *Finjan*. First, Ms. Salters notes "at least 4 of the RPX Initial Licensees offered firewall-related products and services," establishing some technological comparability to the case at hand. (Dkt. No. 349-1 at ¶63.) Second, she notes a broad range considering a royalty base from public information that, while limited, provides some background to understand how the dollar value of the RPX agreement

4

might relate to this action. (*Id*. at ¶64.) Further, Ms. Salters uses this analysis only to provide context to Lionra's damages valuation and does not suggest some ability to derive an exact damages calculation here. While this discussion accounting for the differences between the RPX agreement and the current case is limited, that goes to weight not admissibility and Ms. Salters discussion of the RPX agreement goes to weight not admissibility.

## II.   ADC/CAT SETTLEMENT AGREEMENT

Second, Lionra argues that while the ADC/CAT Settlement Agreement covers the asserted patents, Dr. Mody and Ms. Salters do not properly analyze it under *Prism Techs*. (Mot. at 5.) Lionra argues no expert demonstrates any commonality in the technology at issue in that settlement and this action. (*Id*.)

Defendants respond that their experts accounted for distinguishing facts and ultimately concluded that the ADC/CAT Settlement demonstrated a lump sum royalty fee structure for the patents in suit was appropriate. (Opp. at 8-10.)

The Court is again not convinced. Defendants concede that there is limited comparability here and provides the principal use of the ADC/CAT Settlement is to demonstrate a fee structure. That is an accounting for the differences between the ADC/CAT agreement and the case here.

## III.   HPE SETTLEMENT AGREEMENT

Third, Lionra argues that the HPE Settlement Agreement, cited by Salters and Mody, addresses patents not at issue for Fortinet and PAN. (Mot. at 5-6.) Lionra further notes both side's experts concur the agreement is not comparable to the hypothetical negotiation. (*Id*. at 6.)

Defendants represent that they expect the HPE agreement will not be introduced at trial and thus do not discuss the HPE agreement. (Opp. at 2 n2.)

The Court **GRANTS** Lionra's request to strike reference to the HPE Settlement Agreement as unopposed.

### IV. APPLE AGREEMENT

Last, Lionra argues that while the Apple Settlement Agreement, cited by Salters and Mody, covers the asserted patents, the underlying settled case related to technology having nothing to do with this case. (Mot. at 6.)

Defendants contend the relevance here is that the Apple agreement covered the asserted patents though they were not asserted against Apple. (Opp. at 10-11.) Defendants argue Apple was granted a license to the patents-in-suit for far less consideration than is being asked in this action and thus this difference is relevant. (*Id*.)

The Court finds Dr. Mody and Ms. Salters have accounted for the technological and economic differences as to the Apple License. Just as with the RPX and ADC/CAT agreements, both experts concede these agreements are not exactly the same as the case at hand but do demonstrate that some use was considered and some of the value of the licenses should be attributed to the asserted patents. This is sufficient to survive *Daubert*.

### B. UNPRODUCED THIRD-PARTY AGREEMENTS

Next, Lionra contends Dr. Mody's testimony referencing an assignment of the '436 patent from Corrent Corporation to ITT Manufacturing enterprises, Inc. should be stricken because she relies not on the agreement, which was never produced, but on deposition testimony. (Mot. at 11.) Lionra is particularly concerned with reference to an estimated purchase price provided by the deponent. (*Id*. at 11-12.)

Lionra also argues Dr. Mody's complaint that "plaintiff's failure to produce all licenses to the patents-in-suit" should be struck. (*Id*. at 12.) Lionra contends this and a complaint that a L3Harris-Lionra "patent purchase agreement identifies a set of encumbrances which Mr. Bergman has seemingly not reviewed" should be excluded under the Court's Standing *Limine* order No. 1

as discussing discovery disputes. (*Id*.)

Defendants' respond that there is no argument the underlying deposition testimony is inadmissible and any speculative nature of it would go to the weight, not admissibility of Mody's testimony. (Opp. at 12.) Defendants withdraw the testimony underlying Lionra's second concern. (*Id*. at 13 n4.)

The Court agrees with Defendants. Mody is entitled to rely on the testimonial evidence just as on documentary evidence. While it may be preferable to rely on a formal record over the fallible memory of a deponent, this does not render reliance on such testimony improper. Nor does it raise the spectre of airing discovery disputes before the jury. The Court thus **DENIES** Lionra's motion as to this request. As to complaints about what was or was not produced, as Defendants have withdrawn this testimony, the Court **DENIES** Lionra's motion here as moot.

### C.  RELIANCE ON JEFFAY AND ROSING

Lionra's last point relates only to Cisco but Lionra and Cisco have since notified the Court of a settlement between these parties. (*See* Dkt. No. 511.) As such, this portion of Lionra's motion is **DENIED** as moot.

### III.  CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Lionra's motions to strike as provided above.

**SIGNED this 29th day of May, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

7