IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LIMITED, | § § § | |
| *Plaintiff*, | § | |
| v. | § § | CIVIL ACTION NO. 2:22-cv-00322-JRG-RSP (Lead Case) |
| FORTINET, INC., | § § § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER**

Before the Court are Fortinet, Inc.'s Motion to Exclude Portions of the Infringement Expert Report of Dr. Hugh Smith (Dkt. No. 279), Motion to Exclude Portions of the Expert Report of Dr. Eric Cole (Dkt. No. 282)[1], and Motion to Strike the Damages Opinions of Jim W. Bergman (Dkt. No. 283). After consideration, the Court **DENIES** Fortinet's motions as to Dr. Smith and Mr. Bergman and **GRANTS** Fortinet's motion as to Dr. Cole as provided below.

**I.     APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow*

---

[1] Lionra filed a notice of non-opposition to this motion. (Dkt. No. 342.) As such the Court **GRANTS** Fortinet's motion to strike Dr. Cole as unopposed.

1

*Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461

2

(5th Cir. 2002).

## II. ANALYSIS
### A. DR. SMITH

Fortinet contends Dr. Smith's technical apportionment analysis fails to tie the "encryption throughput efficiency" metric Dr. Smith measures to the claims and fails to apportion any value to the non-accused aspects of the Accused Products. (Dkt. No. 279. at 1.)

First, Fortinet contends Dr. Smith's non-infringing alternative analysis fails to evaluate the incremental improvements of the patents. (*Id*. at 3.) Instead, Fortinet contends Dr. Smith offers only conclusory opinions that the "encryption throughput efficiency" is associated with the patented technology. (*Id*. at 4.)

Second, Fortinet argues Dr. Smith fails to apportion any value to non-infringing features. (*Id*. at 6.) Fortinet asserts that Dr. Smith agrees that many factors impact the throughput of the accused devices. (*Id*. at 7.) However, Fortinet argues, Dr. Smith does not apportion any value to these other factors. (*Id*.) Fortinet contends this is particularly problematic here because all of the claim elements are conventional, well-known components. (*Id*. at 8-9.)

Lionra responds that Dr. Smith performs apportionment by a non-infringing alternative analysis. (Dkt. No. 352. at 2.) Lionra contends that Dr. Smith analyzed the non-infringing alternatives to determine that the increased "encryption throughput efficiency" can be attributed to the inventions. (*Id*. at 3-4.) Lionra contends that whether it is in price, functionality, or market share, a non-infringing alternative analysis looks to what using the covered technology provides the accused infringer. (*Id*. at 5-6.) Thus, Dr. Smith's identification of this advantage in the "encrypted throughput efficiency" is entirely in line with Federal Circuit caselaw. (*Id*.)

The Court agrees with Lionra. A non-infringing alternative analysis is one accepted apportionment analysis. It is by analyzing the benefits the accused product enjoys over a non-

3

infringing alternative, that the portions of the accused product that do not make up the accused technology are accounted for and apportioned out of the damages evaluation. As Dr. Smith has provided testimony supporting why he chose a particular feature to measure, the Court leaves it to the jury with the aid of Fortinet's cross-examination to determine whether that feature is appropriately considered.

### B.  MR. BERGMAN

Fortinet argues that Mr. Bergman[2] failed to consider other explanations for the pricing of the accused products than the Asserted Patents. (Dkt. No. 283 at 1-2.) Fortinet contends that Mr. Bergman's regression analysis is deficient in that he did not address any other explanatory values than the throughput increase. (*Id*. at 4.) Fortinet contends this violates the guidance of Federal Judicial Center's Reference Guide on Multiple Regression. (*Id*.) Fortinet contends that had Mr. Bergman considered "NGFW, IPS, and threat protection throughput" he would have found a better explanation for the pricing of the accused products. (*Id*. at 6.)

Lionra responds that it would be improper in light of *Bazemore v. Friday* to exclude Mr. Bergman's regression analysis for omitting certain variables. (Dkt. No. 354 at 5.) Lionra contends that such omissions ultimately go to weight rather than admissibility of the regression analysis. (*Id*. at 5-6.) In particular, Lionra points to Mr. Bergman's testimony that it is proper to exclude very highly correlated variables and that is what he did here. (*Id*. at 7-9.)

The Court agrees with Lionra. Mr. Bergman's choice of what variables to consider is not arbitrary but rather is supported by his analysis of the available variables. While Mr. Bergman may have only considered a limited set of variables, this ultimately goes to the weight to be given his opinion rather than its admissibility. See *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("While

---

[2] Fortinet initially objected to Mr. Bergman's qualifications but subsequently withdrew that objection. (*See* Dkt. No. 404 at 1n1.)

the omission of variables from a regression analysis may render the analysis less probative than it otherwise might be, it can hardly be said, absent some other infirmity, that an analysis which accounts for the major factors 'must be considered unacceptable . . . .' Normally, failure to include variables will affect the analysis' probativeness, not its admissibility.").

Fortinet also complains that Mr. Bergman relies on testimony from Dr. Smith that Fortinet contends is improper. (Dkt. No. 283 at 7-8.) As the Court has denied the requested relief as to Dr. Smith, the Court denies the requested relief as to Mr. Bergman.

Further, Fortinet contends that Mr. Bergman improperly attributes the entire incremental profit he found to Lionra. (*Id*. at 8.) Fortinet contends Mr. Bergman does this without any material explanation or analysis and this testimony should be stricken per *VLSI Technology LLC v. Intel Corp.* (*Id*. at 8.) Fortinet argues that Mr. Bergman must perform a cost-and-contribution analysis to determine how the parties would have split the profits during a hypothetical negotiation. (*Id*. at 8-9.)

Lionra points the Court to *Bayer Healthcare LLC v. Baxalta Inc.* and argues *VLSI* was decided on other issues and should not be read as Fortinet contends. (Dkt. No. 354 at 10-13.) First, Lionra contends that what Fortinet cites from *VLSI* is only *dicta* and actually addresses disgorgement. (*Id*. at 11.) Second, Lionra contends that Mr. Bergman's method has been endorsed by the Federal Circuit in *Bayer Healthcare LLC v. Baxalta Inc*. (*Id*. at 12-13.) Last, Lionra contends that Mr. Bergman analyzes *Georgia-Pacific* factor 6, in particular, contending that Fortinet receives significant additional benefits beyond those quantified in an income approach. (*Id*. at 12-14.)

The Court finds that this question of the weight of the evidence is best left for the jury. First, the Court agrees with Lionra that *VLSI Technology LLC v. Intel Corp.* is not determinative

here. There, the Federal Circuit stated that "we similarly do not adjudicate the merits of Intel's other challenges to VLSI's damages-calculation methodology. We note … VLSI has not adequately elucidated how the last-step cost-and-contribution analysis [] reasonably establishes the choice Intel and VLSI would have made…" *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1349 (Fed. Cir. 2023). The Court reads this as fact-specific guidance to the parties in that case, to guide them upon retrial. *See id*. The Court cannot apply this discussion in *VLSI* to do more than hold that a party's proposed division of profits must be supported by the evidence.

Likewise, *Bayer Healthcare LLC v. Baxalta Inc.* does not provide a standard applicable here and indeed, does not appear to grapple with the division of profits. Rather it addressed the propriety of presenting multiple royalty rates. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 983-85 (Fed. Cir. 2021).

The Court finds that Mr. Bergman's discussion of how the division of additional benefits, beyond the profits of just the accused devices, would support his proposed division of the incremental benefits, is sufficient to survive *Daubert*.

Finally, Fortinet complains of Mr. Bergman's running royalty analysis and reference to large numbers. (Dkt. No. 283 at 8-11.) Fortinet contends there is no support for a running royalty and that a portion of the running royalty is speculative as discussed in *Netlist, Inc. v. Micron Tech., Inc.* (*Id*. at 10.) Fortinet further contends that Mr. Bergman should be restricted from references to Fortinet's annual revenues under *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1301-02 (Fed. Cir. 2011). (*Id*. at 10-11.)

Lionra responds that Mr. Bergman opines a reasonable royalty rate is appropriate because the only quantitative evidence he found relevant supports that approach. (Dkt. No. 354 at 14-15.) Lionra contends that a non-infringing alternative analysis necessarily involves multiplying the

6

determined benefit by the damages base to reach a running royalty. (*Id*.) Lionra contends Fortinet has put these large numbers at issue in establishing that Fortinet is an innovator, and it offers to limit references to Mr. Bergman's substantive reliance if Fortinet does the same. (*Id*. at 15.)

The Court finds that Fortinet has not demonstrated there is sufficient basis to exclude Mr. Bergman's running royalty analysis. In particular, Fortinet misreads *Netlist, Inc. v. Micron Tech., Inc.*, No. 2:22-CV-203-JRG-RSP, 2024 WL 326563, at *4 (E.D. Tex. Jan. 27, 2024). This Court did not address the sufficiency of the expert's support in choosing a running royalty model over a lump sum model, only the propriety of considering future sales of an unreleased product in a running royalty model. *Id*. Thus without any legal support for the notion that an opposing expert should be barred from testifying that a running royalty is appropriate despite the defendant's preference for a lump sum, the Court will not so rule where, as here, the expert finds other factual support for the choice. The Court does find Mr. Bergman should limit his use of the large annual revenue numbers used in his substantive analysis but his opinions should not be excluded for this reason, rather his trial testimony should avoid putting total annual revenue numbers before the jury without requesting leave of court based on a showing that Fortinet has opened the door.

### III.     CONCLUSION

The Court **DENIES** Fortinet's motions as to Dr. Smith and Mr. Bergman and **GRANTS** Fortinet's motion as to Dr. Cole as provided above.

**SIGNED this 7th day of July, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE